THE HONORABLE TANA LIN

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

REALD SPARK, LLC,

    Plaintiff,

v.

MICROSOFT CORPORATION,

    Defendant.

Case No. 2:22-cv-00942-TL

**LOCAL RULE 37 SUBMISSION OF AGREEMENT REGARDING DISCOVERY OF ELECTRONICALLY STORED INFORMATION**

**NOTE ON MOTION CALENDAR: March 1, 2023**

LCR 37 SUBMISSION OF AGREEMENT REGARDING DISCOVERY OF ELECTRONICALLY STORED INFORMATION – Page i
(Case No. 2:22-cv-00942-TL)

**TOUSLEY BRAIN STEPHENS PLLC**
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

## I. PLAINTIFF'S INTRODUCTORY STATEMENT

Plaintiff RealD Spark, LLC ("Plaintiff" or "RealD") respectfully moves, pursuant to Federal Rule of Civil Procedure 26 and Western District of Washington Local Civil Rule 37, for entry of an order governing the discovery of electronically stored information ("ESI"), wherein the terms of that ESI Order incorporate those requested by Plaintiff below. While the parties have reached an agreement as to the majority of the proposed ESI terms, *see* Exhibit A, they remain unable to reach an agreement regarding: (i) the number of document custodians; (ii) the number of search terms; and (iii) clawback provisions. Accordingly, the Parties respectfully request that this Court resolve these remaining disputes.

As outlined below, the requested ESI discovery provisions are in accordance with the Federal Rules of Civil Procedure, the Federal Rules of Evidence, the Local Rules, and governing caselaw. Indeed, the terms proposed by Plaintiff herein seek simply to engage in an appropriate scope of discovery pursuant to Federal Rule of Civil Procedure 26 and to do so under the clawback protections of Federal Rule of Evidence 502. In contrast, Defendant asks this Court to ignore Rule 26 by ignoring the needs of this case—which involves multiple complex causes of action, dozens of individuals, and facts spanning almost seven years—and instead adopt overly stringent limitations on the number of custodians and search terms. Further, Defendant also asks this Court to ignore the wisdom and experience of the drafters of the Federal Rules of Evidence by rejecting Rule 502 and adopting a new procedure bespoke to Microsoft.

By way of background, in this action Plaintiff asserts causes of action for patent infringement (both directly and via inducement), breach of contract, and trade secret misappropriation arising from Microsoft's unauthorized use of Plaintiff's intellectual property. Back in 2016, Plaintiff began sharing its trade secret and patented technology with Microsoft

LCR 37 SUBMISSION OF AGREEMENT REGARDING
DISCOVERY OF ELECTRONICALLY STORED
INFORMATION – Page 1
(Case No. 2:22-cv-00942-TL)

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206.682.2992

pursuant to the terms of a Non-Disclosure Agreement ("NDA"). But after years of discussion, and despite Defendant's stated interest in the technology, Defendant abruptly ended talks with Plaintiff and instead, hired several of Plaintiff's former employees that had worked on the technology and began its own use of the technology—technology encompassed by Plaintiff's intellectual property. As expected in such a case, each cause of action is comprised of complex, fact intensive issues. Thus, to effectively adjudicate these claims, Plaintiff must have the opportunity to obtain adequate discovery. Yet Defendant's proposals herein are an attempt to bar Plaintiff from doing so. Again, Plaintiff asks nothing more than for the scope and protections afforded discovery by the Federal Rules of Civil Procedure and Federal Rules of Evidence, accordingly, Plaintiff requests the Court's assistance in insuring it has the opportunity to conduct discovery in the appropriate and just manner necessary to support each cause of action.

## II.  DEFENDANT'S INTRODUCTORY STATEMENT

Consistent with the very first Rule of Federal Civil Procedure, Microsoft seeks to conduct discovery in a just, speedy, and efficient manner in its many cases pending all over the country. One way that Microsoft does so is through the efficient use of automated tools to help streamline the e-discovery process and ensure discovery is reasonable and proportional to the needs of the case. Microsoft's proposed ESI Order provides for such efficiencies in this case. Conversely, RealD's proposals seek disproportional discovery for discovery's sake, even though it cannot articulate a particular need for such discovery or any benefit outweighing the imposed burden on Microsoft.

Nowhere is this more evident than in the parties' dispute regarding clawback language under Federal Rule of Evidence 502(d). Microsoft's proposed language provides robust privilege protections for both sides and avoids the need for disputes related to the production of privileged

LCR 37 SUBMISSION OF AGREEMENT REGARDING
DISCOVERY OF ELECTRONICALLY STORED
INFORMATION – Page 2
(Case No. 2:22-cv-00942-TL)

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206.682.2992

materials, saving judicial and party resources. RealD's proposal essentially invalidates the parties' agreement on using automated discovery tools. Without Microsoft's proposed clawback language, the parties lose most of the benefits and efficiencies gained through the use of automated discovery tools. RealD's positions are incongruous—on the one hand, RealD agrees to a search methodology using an automated approach, but on the other hand, RealD refuses to include language allowing Microsoft to actually use the automated approach with the appropriate assurances that its privileged information will be protected and without burdening the Court with unnecessary disputes. RealD's refusal to agree that Rule 502(d) applies in all circumstances contradicts the mandates of Rules 1 and 26, likely in hopes exploiting any privileged materials that may slip through the cracks of what will undoubtedly be a complex, high-volume document production.

### III. AGREED UPON ISSUES

The parties met and conferred as to the terms of the proposed ESI Order and have reached agreement on many of the terms therein. A copy of the proposed ESI Order is attached as Exhibit A. The terms in Exhibit A are agreed upon by the parties unless otherwise identified therein. The three terms which remain in dispute are identified in Exhibit A and the parties submit their proposals and arguments as to each below.

### IV. DISPUTED ISSUES

The three terms which remain in dispute are addressed below.

#### A. The Number of Document Custodians

##### i. *Plaintiff's Argument*

Plaintiff's Proposal (area in dispute emphasized):

The parties shall identify **the thirteen (13) custodians** most likely to have discoverable ESI in their possession, custody, or control. The custodians shall be

LCR 37 SUBMISSION OF AGREEMENT REGARDING
DISCOVERY OF ELECTRONICALLY STORED
INFORMATION – Page 3
(Case No. 2:22-cv-00942-TL)

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

identified by name, title, connection to the instant litigation, and the type of information under the custodian's control. If circumstances or discovery so merit, the parties either agree or seek Court intervention to add additional custodians.

Rule 26(b) sets forth the threshold requirement that information sought to be discovered must be "proportional to the needs of the case." In determining proportionality, courts consider factors such as "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1); *see also Erickson v. Biogen, Inc.*, No. 18-CV-1029 JCC, 2019 WL 2525424, at *2 (W.D. Wash. June 19, 2019). Here, the needs of the case weigh in favor of Plaintiff's proposed terms.  Plaintiff seeks an order stating the parties shall identify the thirteen (13) custodians most likely to have discoverable ESI in their possession, custody, or control. Plaintiff further seeks a clause stating, "If circumstances or discovery so merit, the parties will either agree or seek Court intervention to add additional custodians."[1] In contrast, Defendant asks this Court to limit the number if custodians to seven.

Plaintiff's proposed number of custodians is directly proportional to the needs of this case not only because of the inherent complexity of these intellectual property issues, but also because Plaintiff raises three separate and distinct causes of action – each requiring separate and distinct evidence across nearly seven years. Discovery on the key issues in this case will need to encompass *at least* the individuals at Microsoft that reviewed Plaintiff's confidential technology under the terms of the NDA, the individuals who were responsible for developing Defendant's allegedly infringing and misappropriating technology, Defendant's employees listed as inventors

---

[1] To the extent that Defendant raises concerns that this clause is an attempt to create a presumption that Plaintiff has the right to seek additional custodians, Defendant's concerns are unfounded under the plain language proposed by Plaintiff.

LCR 37 SUBMISSION OF AGREEMENT REGARDING DISCOVERY OF ELECTRONICALLY STORED INFORMATION – Page 4
(Case No. 2:22-cv-00942-TL)

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206.682.2992

on Microsoft patent application 62/908,363 that copies various RealD confidential information and inventions, and the former employees of Plaintiff who went to work at Microsoft on that technology. Thus, the number of relevant custodians known at the outset is no less than a total of thirteen: the 3 former RealD employees now employed by Microsoft, the additional Microsoft employee that is an inventor of Microsoft's application 62/908,363, the 6 Microsoft employees known to have participated in discussions with RealD about the technology, and 3 accused product custodians (one for each known accused product). These custodians are all listed in the parties' initial disclosures. And since Microsoft has not responded to any of RealD's discovery to date, it is possible that additional custodians may be needed as RealD uncovers others involved in Microsoft's theft. Given this, the thirteen custodial sources proposed by Plaintiff is actually on the low end, but in any event is far more appropriate than seven.[2]

        *ii.  Defendant's Argument*

Microsoft identified five individuals in its Initial Disclosures under Federal Rule of Civil Procedure 26(a)(1)(A) who will serve as document custodians in this action, two of whom are named inventors on the Patent-in-Suit and are the focus of RealD's allegations of trade secret misappropriation. *See, e.g.,* Dkt. No. 1 ¶ 86.  Beyond these two individuals, RealD has failed to identify with specificity who else at Microsoft may possess evidence critical to the allegations in the Complaint.  Microsoft has agreed to provide custodial data for any seven custodians that RealD identifies, but beyond these seven custodians, Microsoft should not assume the costs and enormous burden of collecting ESI for additional custodians unless RealD can make a compelling showing of good cause.

---

[2] Notably, the inclusion of thirteen (versus seven) custodians will in no way unduly burden Defendant, nor has Defendant raised this as a concern during the meet and confer process.

LCR 37 SUBMISSION OF AGREEMENT REGARDING
DISCOVERY OF ELECTRONICALLY STORED
INFORMATION – Page 5
(Case No. 2:22-cv-00942-TL)

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206.682.2992

Access to seven Microsoft custodians should provide RealD with the discovery it needs to pursue its claims, yet RealD maintains that it is entitled to a presumption of 13 Microsoft custodians. RealD has been unable to establish why such a high number of custodians is proportional to the needs of the case when Microsoft only identified five individuals in its Initial Disclosures. *See* Fed. R. Civ. P. 26(b)(2)(C) (requiring discovery, including electronic discovery, to be proportional to the needs of the lawsuit and not place an undue burden on the responding party, where proportionality requires a consideration of whether "the burden or expense of the proposed discovery outweighs the likely benefit"); *see also Lauris v. Novartis AG*, No. 16-CV-393, 2016 WL 7178602, at *4–5 (E.D. Cal. Dec. 8, 2016) (finding that Defendants appropriately identified the "appropriate document custodians to obtain relevant discovery" in its Initial Disclosures based on the allegations and Plaintiff's request for additional custodians was based on "mere speculation" that did not overcome the costs and burdens of e-discovery).

Moreover, this high number of custodians is more than twice the default number contemplated in this District's Model ESI Order prior to amendments made on February 1, 2023.[3] Microsoft's proposal of seven document custodians is proportional to the needs of the case and, if warranted through a showing of good cause, the parties can revisit the scope of discovery at a later point should the needs of the case change.

### B. The Number of Search Terms

#### i. *Plaintiff's Argument*

Plaintiff's Proposal (area in dispute emphasized):

The total or the producing party's Search Terms and the receiving party's Search Terms shall not exceed **50 total Search Terms**.

---

[3] *See* Redline Model ESI Agreement at 2, available at https://www.wawd.uscourts.gov/sites/wawd/files/ModelESIAgreement_Redlined.pdf (last visited Feb. 27, 2023).

LCR 37 SUBMISSION OF AGREEMENT REGARDING DISCOVERY OF ELECTRONICALLY STORED INFORMATION – Page 6
(Case No. 2:22-cv-00942-TL)

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

Plaintiff seeks an order stating that the total, or the producing party's Search Terms and the receiving party's Search Terms, shall not exceed 50 total Search Terms. In contrast, Defendant seeks to limit the total Search Terms to 25.

Mirroring many of the arguments made in the previous section, the requested number of search terms is proportional to the needs of this case. This number of search terms will allow Plaintiff to adequately search for evidence for *each* of the three causes of action across multiple accused products, over a dozen relevant employees, and the nearly seven years at issue. As stated above, each of these will require distinct evidence that will need separate avenues of discovery. Defendant's proposed 25 search terms will not allow Plaintiff the opportunity to fully develop the necessary facts. For example, simply running terms that list each of the 13 custodians in combination with each of the 3 known accused products exceeds Microsoft's proposed 25 terms. This does not even include additional search terms related to internal or code names for the accused products, the name of RealD's competing product, the names of RealD employees involved in the confidential technology discussions with Microsoft, or a single search term associated with each of the 5 enumerated categories of trade secrets alleged in Plaintiff's complaint. Further, running these searches and producing the resulting discovery based on this number of terms is not unduly burdensome task for Defendant, nor has Defendant claimed otherwise during the meet and confer process. And notably, the parties agree that "[t]here will be no 'individualized' search requests on a custodian-by-custodian basis unless agreed to by both sides," further limiting the burden on each side. *See* Exhibit A at p. 5. Thus, the multiple causes of action and complexity of the issues necessitates a minimum of 50 Search Terms to effectively adjudicate these claims.

LCR 37 SUBMISSION OF AGREEMENT REGARDING
DISCOVERY OF ELECTRONICALLY STORED
INFORMATION – Page 7
(Case No. 2:22-cv-00942-TL)

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

### ii. *Defendant's Argument*

In this complex action, the parties will necessarily have to work together to craft appropriate Search Terms. Based on the agreed definition for "Search Terms," each "Search Term" may be a string of key phrases joined together to probe the issues each side is interested in taking discovery on. Ex. A at 3. The parties already agree that "the producing party will first provide a good faith list of no less than ten (10) Search Terms to be run across Custodial and Non-Custodial data." *Id.* at 4. Upon receiving the producing party's ten (10) proposed Search Terms, the parties agree that the receiving party then has the opportunity to identify additional Search Terms. The parties dispute the scope of the receiving party's opportunity to propose its own Search Terms:

- Microsoft proposes that the receiving party should be permitted to propose fifteen (15) additional Search Terms following the initial ten (10) terms proposed by the producing party for a total of twenty-five (25) Search Terms. *Id.* at 5.
- RealD proposes that the receiving party should be permitted to propose forty (40) additional Search Terms following the initial ten (10) terms proposed by the producing party for a total of fifty (50) Search Terms. *Id.*

While Microsoft is willing to work with RealD to craft Search Terms that reflect all issues in the case and provide both parties with necessary discovery, Microsoft objects to RealD's proposed 50 overall Search Terms as: (1) rendering the negotiation of Search Terms an unwieldly process likely to result in astronomical "hit counts" when Search Terms are applied; (2) increasing the likelihood of disputes between the parties in finalizing the Search Terms to be run over each party's custodial data; and (3) inviting discovery into ancillary issues.

ESI protocols typically contemplate 20 total search terms (10 proposed by each party); in an effort to accommodate RealD, Microsoft has agreed to increase the total Search Terms to 25. However, allowing the receiving party to propose 40 additional Search Terms only invites overbroad requests not proportional to the needs of the case. Consistent with its proposal for

LCR 37 SUBMISSION OF AGREEMENT REGARDING
DISCOVERY OF ELECTRONICALLY STORED
INFORMATION – Page 8
(Case No. 2:22-cv-00942-TL)

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

document custodians, Microsoft proposes an upper limit of 25 Search Terms and—should additional searches prove necessary—the parties can agree to additional Search Terms after a showing of good cause as to why the additional searches are proportional to the needs of the case.

### C. Clawback Protections

#### i. Plaintiff's Argument

Plaintiff's Proposal (area in dispute emphasized):

Pursuant to Fed. R. Evid. 502(d), the production of any documents, electronically stored information (ESI), or information, in this proceeding shall not, for the purposes of this proceeding or any other federal or state proceeding, constitute a waiver by the producing party of any privilege applicable to those documents, including the attorney-client privilege, attorney work-product protection, or any other privilege or protection recognized by law.

Nothing contained herein is intended to or shall serve to limit a party's right to conduct a review of documents, ESI or information (including metadata) for relevance, responsiveness and/or segregation of privileged and/or protected information before production.  At the same time, a party shall not be obligated to conduct a document-by-document review of documents prior to its production; provided however, that a party shall utilize keyword search terms (e.g., the names of counsel and law firms for the producing party, a particular counsel or law firm as a keyword term shall not be construed as waiver), analytical software tools and/or other reasonable means to locate and exclude potentially privileged materials prior to the production.

**<u>Once discovered, the producing party must promptly notify the receiving party of any inadvertent disclosure of privileged material in writing, along with an explanation of why the material is privileged. If the receiving party does not contest the claim of privilege, it will make best efforts to promptly identify, return, or destroy the privileged materials and any copies thereof. If the receiving party contests the claim of privilege, it must move the Court to compel production of the challenged information within seven (7) days of the producing party's notice. Pending resolution of the motion, the receiving party must not use the challenged information or disclose it to any other person(s). The party claim privilege retains the burden of establishing privileged over the challenged information</u>**.

Plaintiff seeks an order adopting the clawback provision set forth in Fed. R. Evid 502. In contrast, Defendant proposes a new approach that rejects the Federal Rule (and the certainty inherent in having over a decade of legal authority interpreting that Rule) to instead propose a

LCR 37 SUBMISSION OF AGREEMENT REGARDING
DISCOVERY OF ELECTRONICALLY STORED
INFORMATION – Page 9
(Case No. 2:22-cv-00942-TL)

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206.682.2992

procedure wherein Defendant has no obligation to screen for privilege and can instead produce literally every document as being "subject to clawback", wait on the sidelines for Plaintiff to review and identify Defendant's privileged documents for them, and then shout "privilege" at their leisure. All of which occurs with no ability for Plaintiff to lodge a challenge. To be clear, the written proposal by Defendant contains no requirement to screen for privileged materials at all prior to production, nor any limitations on producing any or all documents without having conducted a screen, nor a time limitation by which Defendant would ever have to conduct a privilege screen. Further, when Plaintiff's counsel raised these specific concerns to Defendant and suggested that Defendant revise its proposal to address *any* of Plaintiff's concerns, Defendant refused.

Why would a party ever propose such a procedure? There is no compelling reason to alter the protections already provided by the Federal Rules nor can Microsoft provide such a reason. Microsoft should shoulder the burden to screen for privilege as it is best positioned to know whether the privilege exists. Again, as written, Defendant can dump unscreened documents on Plaintiff, which forces Plaintiff to review those documents and then notify Defendant that Plaintiff found such documents or worse, sit back and wait until Plaintiff attempts to use a document in a deposition or at trial and then claw that document back.[4] While Plaintiff acknowledges the reality that, given the nature of ESI discovery, there is the potential for inadvertent disclosures of confidential information, the rules provide protection for these exact

---

[4] Plaintiff's fears are well founded. For example, in *U.S. v. Wells Fargo Bank, N.A.*, No. 12-CV-7527 JMF, 2015 WL 5051679 (S.D.N.Y. Aug. 26, 2015), a protective order provided that "if, in connection with this litigation, a party . . . discloses information subject to a claim of [any applicable privilege] . . . such disclosure shall not constitute or be deemed a waiver or forfeiture of any claim of privilege." At the end of discovery, the court permitted the government to clawback, as privileged, all but two of approximately 1,000 documents, despite Defendant's arguments that the government waited more than six weeks to clawback these documents.

LCR 37 SUBMISSION OF AGREEMENT REGARDING
DISCOVERY OF ELECTRONICALLY STORED
INFORMATION – Page 10
(Case No. 2:22-cv-00942-TL)

**TOUSLEY BRAIN STEPHENS PLLC**
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

situations—and it is these very rules that Plaintiff seeks to rely on here. *See Potomac Elec. Power Co. & Subsidiaries v. United States*, 107 Fed. Cl. 725, 727–28, 730 (Fed. Cl. 2012). The rules merely require proper screening while providing protection for any inadvertent disclosures. As stated by the court in *Potomac*, "the standards set forth in FRE 502(b) are both fair and sufficiently definite to provide the parties with adequate protection against the consequences of any accidental disclosures of privileged information that may occur in the course of discovery." *Id.* at 730. And similar to the facts in *Potomac,* Defendant has failed to show good cause to stray from these principles. *Id.* ("The Court therefore finds that PEPCO has failed to show good cause why these standards should be altered for the purposes of this case."). Accordingly, Plaintiff seeks an order based on Federal Rule of Evidence 502 that prevents opportunities for such gamesmanship to ensure the just and timely resolution of any potential discovery issues, should they arise.

### ii. Defendant's Argument

The goal of a 502(d) order "is not to encourage disputes regarding waiver and inadvertent production [as can occur under 502(b)], but to prevent such disputes from arising in the first place." *Rajala v. McGuire Woods, LLP*, No. 08-CV-2638, 2010 WL 2949582, at *7 (D. Kan. July 22, 2010). Microsoft's clawback proposal accomplishes this goal, while RealD's undermines it by guaranteeing unnecessary discovery disputes. Microsoft intends to use an automated approach to identify requested materials through the use of Search Terms as set forth in the draft ESI Order. Importantly, RealD *does not object* to Microsoft's proposed search methodology and agrees that

> "a party *shall not be obligated to conduct a document-by-document review of documents prior to its production*; provided however, that a party *shall utilize keyword search terms* (e.g., the names of counsel and law firms for the producing party, a particular counsel or law firm as a keyword term shall not be construed

LCR 37 SUBMISSION OF AGREEMENT REGARDING
DISCOVERY OF ELECTRONICALLY STORED
INFORMATION – Page 11
(Case No. 2:22-cv-00942-TL)

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

as waiver), analytical software tools and/or other reasonable means to locate and exclude potentially privileged materials prior to the production."

Ex. A at 7–8 (emphasis added).

Though RealD does not object to an automated document production approach, RealD refuses to agree to a clawback regime that would provide *both parties* the protections available under Federal Rule of Evidence 502(d) to cure problems arising out of the production of privileged materials. *See Rajala*, 2010 WL 2949582, at *3–8 (entering 502(d) order over objection of party wishing to proceed under 502(b) because 502(d) affords more protection against waiver); *Klein v. Facebook*, No. 20-CV-8570 (N.D. Cal. June 3, 2021) ("the limitations on non-waiver in Rule 502(b), including that the disclosure was inadvertent, do not appear in Rule 502(d)"). RealD's proposal contemplates serial court intervention over the issue of waiver, wasting judicial resources and escalating litigation costs. *See* Ex. A at 8–9 (rejecting language that production may be "inadvertent or otherwise" while requiring "[i]f the receiving party contests the claim of privilege, it must move the Court to compel production of the challenged information within seven (7) days of the producing party's notice."). Moreover, the practical effect of RealD's proposal denies Microsoft the efficiencies gained through the use of automated production tools: absent clawback protections under Rule 502(d), Microsoft may be forced to use full-scale human review of documents, even where much more efficient automated procedures are completely appropriate.

As is its normal practice, Microsoft will take reasonable steps to prevent disclosure of privileged materials, including reviewing any documents hit by potentially privileged search terms prior to production and in accordance with the parties' agreement. Yet it remains foreseeable that in high volume document productions some privileged documents may be produced or that a particular counsel or law firm name may be missed in keyword searches.

LCR 37 SUBMISSION OF AGREEMENT REGARDING
DISCOVERY OF ELECTRONICALLY STORED
INFORMATION – Page 12
(Case No. 2:22-cv-00942-TL)

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

Microsoft should not face pro forma waiver challenges under Rule 502(b) when Rule 502(d) plainly states that privilege is not waived if the court enters a 502(d) order. *See, e.g., Rajala v. McGuire Woods, LLP*, No. 08-CV-2638, 2013 WL 50200 (D. Kan. Jan. 3, 2013) (502(d) order allows the parties and the court to "defeat the default operation" of Rule 502(b) in order to reduce costs and expedite discovery); *Brookfield Asset Mgmt., Inc. v. AIG Fin. Prods. Corp.*, 2013 WL 142503, at *1 (S.D.N.Y. Jan. 7, 2013) (under 502(d), party has the right to clawback documents "no matter what the circumstances giving rise to their production were"). Microsoft's proposed language aligns with Congressional Intent for Rule 502(d), allowing the parties to truly forego the burdens of a document-by-document review by eliminating waiver arguments. *Accord Rajala*, 2013 WL 50200, at *3 (noting Statement of Congressional Intent behind the rule was to "allow the parties to conduct and respond to discovery expeditiously, without the need for exhaustive pre-production privilege reviews" when ruling that 502(d) orders are "designed to reduce the time and costs attendant to document-by-document privilege review"); *Winfield v. City of N.Y.*, No. 15-CV-05236, 2018 WL 2148435, at *4 (S.D.N.Y. May 10, 2018) ("rule incentivizes parties to voluntarily agree to procedures that will alleviate the burdens of pre-production privilege reviews by offering protection from waiver of privilege to the producing party"). Courts in this District have routinely entered 502(d) orders that reject inadvertence and other 502(b) language, *see, e.g., Sibert v. King Cnty. Dep't of Cmty. & Human Health Servs. Behav. Health & Recovery Div.*, No. 19-CV-904, 2019 WL 5549617, at *1 (W.D. Wash. Oct. 28, 2019), and the Model Order for this District eschews inadvertence and 502(b) language in its 502(d) provision.[5] The Court should adopt Microsoft's proposal because it offers robust

---

[5] *See* Model ESI Agreement, Sec. E, Para. 5 ("Pursuant to Fed. R. Evid. 502(d), the production of any documents, electronically stored information (ESI) or information, whether inadvertent or otherwise, in this proceeding shall not, for the purposes of this proceeding or any other federal or state proceeding, constitute a waiver by the producing

LCR 37 SUBMISSION OF AGREEMENT REGARDING
DISCOVERY OF ELECTRONICALLY STORED
INFORMATION – Page 13
(Case No. 2:22-cv-00942-TL)

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

privilege protections to *both parties* as contemplated by the Federal Rules and will reduce the number of unnecessary disputes heard by this Court.

## IV.   CERTIFICATION

The parties certify, pursuant to FRCP 26(c) and LCR 37(a), that they have met and conferred regarding the relief requested in this motion. Such efforts included a telephonic meet and confer on February 23, 2023 wherein the participants included, *inter alia*, Jennifer Mauri on behalf of Plaintiff and Natalie Bennett on behalf of Defendant.

DATED: March 1, 2023

| **TOUSLEY BRAIN STEPHENS PLLC** | **MORGAN, LEWIS & BOCKIUS LLP** |
|---|---|
| By: */s/ Kaleigh N. Boyd*<br>Kaleigh N. Boyd, WSBA #52684<br>kboyd@tousley.com<br>1200 Fifth Avenue, Suite 1700<br>Seattle, WA 98101<br>Phone: (206) 682-5600<br><br>Ashley N. Moore<br>Michelman & Robinson, LLP<br>300 Crescent Court, Suite 1700<br>Dallas, TX 75201<br>Phone: (214) 273-4050<br>amoore@mrllp.com<br><br>Jennifer A. Mauri (admitted *Pro Hac Vice*)<br>Michelman & Robinson, LLP17901 Von Karman Ave, Suite 1000<br>Irvine, CA 92614<br>Phone: (714) 557-7990<br><br>*Attorneys for Plaintiff RealD Spark, LLC* | By: */s/ Molly A. Terwilliger*<br>Molly A. Terwilliger, WSBA #28449<br>Patty Eakes, WSBA #18888<br>1301 Second Avenue, Suite 2800<br>Seattle, WA 98101<br>Phone: (206) 274-6400<br>molly.terwilliger@morganlewis.com<br>patty.eakes@morganlewis.com<br><br>Natalie A. Bennett (admitted *Pro Hac Vice*)<br>1111 Pennsylvania Avenue, NW<br>Washington, DC, 20004-2541<br>Phone: (202) 739-3000<br>Natalie.bennett@morganlewis.com<br><br>Andrew V. Devkar (admitted *Pro Hac Vice*)<br>2049 Century Park East, Suite 700<br>Los Angeles, CA 90067-3109<br>Phone: (310) 907-1000<br>Andrew.devkar@morganlewis.com<br><br>Thomas R. Davis (admitted *Pro Hac Vice*) |

---

party of any privilege applicable to those documents, including the attorney-client privilege, attorney work-product protection, or any other privilege or protection recognized by law. This Order shall be interpreted to provide the maximum protection allowed by Fed. R. Evid. 502(d). The provisions of Fed. R. Evid. 502(b) do not apply. Nothing contained herein is intended to or shall serve to limit a party's right to conduct a review of documents, ESI or information (including metadata) for relevance, responsiveness and/or segregation of privileged and/or protected information before production. Information produced in discovery that is protected as privileged or work product shall be immediately returned to the producing party.") (updated Feb. 1, 2023).

LCR 37 SUBMISSION OF AGREEMENT REGARDING DISCOVERY OF ELECTRONICALLY STORED INFORMATION – Page 14
(Case No. 2:22-cv-00942-TL)

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington  98101
TEL. 206.682.5600 • FAX 206.682.2992

| | |
|---|---|
| 1 | Susan Stradley (admitted *Pro Hac Vice*) |
| 2 | 1000 Louisiana Street, Suite 4000<br>Houston, TX 77002 |
|   | Phone: (713) 890-1000 |
| 3 | thomas.davis@morganlewis.com<br>susan.stradley@morganlewis.com |
| 4 | |
|   | *Attorneys for Defendant Microsoft* |
| 5 | *Corporation* |
| 6 | |
| 7 | |
| 8 | |
| 9 | |
| 10 | |
| 11 | |
| 12 | |
| 13 | |
| 14 | |
| 15 | |
| 16 | |
| 17 | |
| 18 | |
| 19 | |
| 20 | |
| 21 | |
| 22 | |
| 23 | |
| 24 | |
| 25 | |
| 26 | |

LCR 37 SUBMISSION OF AGREEMENT REGARDING
DISCOVERY OF ELECTRONICALLY STORED
INFORMATION – Page 15
(Case No. 2:22-cv-00942-TL)

**TOUSLEY BRAIN STEPHENS PLLC**
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

CERTIFICATION

I certify that the full response by the responding party has been included in this submission, and that prior to making this submission the parties conferred to attempt to resolve this discovery dispute in accordance with LCR 37(a).

DATED this 1st day of March, 2023, at Seattle, Washington.

*/s/ Kaleigh N. Boyd*
Kaleigh N. Boyd

LCR 37 SUBMISSION OF AGREEMENT REGARDING
DISCOVERY OF ELECTRONICALLY STORED
INFORMATION – Page 16
(Case No. 2:22-cv-00942-TL)

**TOUSLEY BRAIN STEPHENS PLLC**
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992