THE HONORABLE TANA LIN

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| REALD SPARK, LLC,<br><br>Plaintiff,<br><br>v.<br><br>MICROSOFT CORPORATION,<br><br>Defendant. | CASE NO. 2:22-cv-00942-TL<br><br>**AGREEMENT REGARDING DISCOVERY OF ELECTRONICALLY STORED INFORMATION AND [PROPOSED] ORDER** |

The parties hereby stipulate to the following provisions regarding the discovery of electronically stored information ("ESI") in this matter:

**A.    General Principles**

1.    An attorney's zealous representation of a client is not compromised by conducting discovery in a cooperative manner. The failure of counsel or the parties to litigation to cooperate in facilitating and reasonably limiting discovery requests and responses raises litigation costs and contributes to the risk of sanctions.

2.    As provided in LCR 26(f), the proportionality standard set forth in Fed. R. Civ. P. 26(b)(1) must be applied in each case when formulating a discovery plan. To further the application of the proportionality standard in discovery, requests for production of ESI and related

responses should be reasonably targeted, clear, and as specific as possible. This agreement is intended to assist the parties in identifying relevant, responsive information that has been stored electronically and is proportional to the needs of the case. The agreement does not supplant the parties' obligations to comply with Fed. R. Civ. P. 34.

      **B.**      **ESI Disclosures**

Within 30 days of entry of this Order, or at a later time if agreed to by the parties, each party shall disclose:

      1.      <u>Custodial Data Sources.</u>

[**Microsoft Proposal**: The seven custodians most likely to have discoverable ESI in their possession, custody, or control. The custodians shall be identified by name, title, connection to the instant litigation, and the type of the information under the custodian's control. The parties can agree to adjust the number of custodians or seek Court intervention if good cause can be demonstrated and the circumstances require further custodial discovery.]

[**RealD Proposal**: The parties shall identify the thirteen (13) custodians most likely to have discoverable ESI in their possession, custody, or control. The custodians shall be identified by name, title, connection to the instant litigation, and the type of information under the custodian's control. If circumstances or discovery so merit, the parties either agree or seek Court intervention to add additional custodians.]

      2.      <u>Non-custodial Data Sources.</u> A list of non-custodial data sources (*e.g.*, shared drives, servers), if any, likely to contain discoverable ESI.

      3.      <u>Third-Party Data Sources.</u> A list of third-party data sources, if any, likely to contain discoverable ESI (*e.g.*, third-party email providers, mobile device providers, cloud

storage) and, for each such source, the extent to which a party is (or is not) able to preserve information stored in the third-party data source.

4. <u>Inaccessible Data.</u> A list of data sources, if any, likely to contain discoverable ESI (by type, date, custodian, electronic system or other criteria sufficient to specifically identify the data source) that a party asserts is not reasonably accessible under Fed. R. Civ. P. 26(b)(2)(B).

5. <u>Search Terms.</u>  For purposes of this Agreement, a "Search Term" may consist of a single word or phrase, or variants of a single word or phrase (such as those that have alternate suffixes or prefixes but relate to the same root or different spellings of the same word), and may be accompanied by terms intended to limit the search results via narrowing criteria (such as "AND" or "W/X"). Individual words or phrases separated only by a disjunctive term that broadens the search (such as "OR") will be considered separate Search Terms unless (1) the words or phrases are variants of each other or (2) the words or phrases are joined by other limiting terms, such as term1 and (term2 or term3). The producing party may identify each search term or query returning overbroad results, demonstrate the overbroad results, and offer a counter proposal correcting the overbroad search or query.

6. <u>Foreign data privacy laws.</u> Nothing in this Order is intended to prevent either party from complying with the requirements of a foreign country's data privacy laws, *e.g.*, the European Union's General Data Protection Regulation (GDPR) (EU) 2016/679.  The parties agree to meet and confer before including custodians or data sources subject to such laws in any ESI or other discovery request.

C. **ESI Discovery Procedures**

1. <u>On-site inspection of electronic media.</u> Such an inspection shall not be required absent a demonstration by the requesting party of specific need and good cause or by agreement of the parties.

2. <u>Search methodology.</u> The parties shall timely confer to attempt to reach agreement on appropriate Search Terms, file type and date restrictions, data sources (including custodians), and other appropriate computer- or technology-aided methodologies, before any such effort is undertaken. The parties shall continue to cooperate in revising the appropriateness of the search methodology.

   a. Prior to running searches:

      i. The producing party shall disclose the data sources (including custodians), search terms and queries, any file type and date restrictions, and any other methodology that it proposes to use to locate ESI likely to contain responsive and discoverable information.

      ii. Within fourteen (14) days of the producing party's disclosure, and consistent with each party's duty to perform a reasonable search for information responsive to discovery requests, the producing party will first provide a good faith list of no less than ten (10) Search Terms to be run across Custodial and Non-Custodial data. There will be no "individualized" Search Terms on a custodian-by-custodian basis unless agreed to by both sides. In other words, RealD will prepare one set of Search Terms for all of the RealD custodians and vice versa for Microsoft. The producing party may provide unique hit counts for each search query.

Within seven (7) days of receiving the producing party's proposed Search Terms, the receiving party may propose additional Search Terms to be run across all of the producing party's Custodial and Non-Custodial data. The total or the producing party's Search Terms and the receiving party's Search Terms shall not exceed [**Microsoft Proposal:** 25 total Search Terms]. [**RealD Proposal**: 50 total Search Terms]. There will be no "individualized" search requests on a custodian-by-custodian basis unless agreed to by both sides.

iii. Within seven (7) days of receiving the receiving party's Search Terms, the parties will engage in a meet and confer process to resolve any disputes. If the dispute(s) are not resolved within seven (7) days of the first meet and confer, the parties will submit the disputes to the Court for resolution.

3. Format.

a. ESI will be produced to the requesting party with searchable text, in a format to be decided between the parties. Acceptable formats include, but are not limited to, native files, multi-page TIFFs (with a companion OCR or extracted text file), single-page TIFFs (only with load files for e-discovery software that includes metadata fields identifying natural document breaks and also includes companion OCR and/or extracted text files), and searchable PDF.

b. Unless otherwise agreed to by the parties, files that are not easily converted to image format, such as spreadsheet, database, and drawing files, will be produced in native format.

c. Each document image file shall be named with a unique number (Bates Number). File names should not be more than twenty characters long or contain spaces. When a text-searchable image file is produced, the producing party must preserve the integrity of the

underlying ESI, *i.e.*, the original formatting, the metadata (as noted below) and, where applicable, the revision history.

          d.     If a document is more than one page, the unitization of the document and any attachments and/or affixed notes shall be maintained as they existed in the original document.

          e.     The full text of each electronic document shall be extracted ("Extracted Text") and produced in a text file unless the document is redacted, in which case, Optical Character Recognition text for the redacted image will be provided. The Extracted Text shall be provided in searchable ASCII text format (or Unicode text format if the text is in a foreign language) and shall be named with a unique Bates Number (*e.g.*, the unique Bates Number of the first page of the corresponding production version of the document followed by its file extension).

    4.    <u>De-duplication.</u> The parties may de-duplicate their ESI production across custodial and non-custodial data sources after disclosure to the requesting party, and the duplicate custodian information removed during the de-duplication process tracked in a duplicate/other custodian field in the database load file.

    5.    <u>Email Threading.</u> The parties may use analytics technology to identify email threads and need only produce the unique most inclusive copy and related family members and may exclude lesser inclusive copies. Upon reasonable request, the producing party will produce a less inclusive copy.

    6.    <u>Metadata fields.</u> If the requesting party seeks metadata, the parties agree that only the following metadata fields need be produced, and only to the extent it is reasonably accessible and non-privileged: document type; custodian and duplicate custodians (or storage location if no custodian); author/from; recipient/to, cc and bcc; title/subject; email subject; file name; file size; file extension; original file path; date and time created, sent, modified and/or received; and hash

value. The list of metadata type is intended to be flexible and may be changed by agreement of the parties, particularly in light of advances and changes in technology, vendor, and business practices.

7. <u>Hard-Copy Documents.</u> If the parties elect to produce hard-copy documents in an electronic format, the production of hard-copy documents will include a cross-reference file that indicates document breaks and sets forth the custodian or custodian/location associated with each produced document. Hard-copy documents will be scanned using Optical Character Recognition technology and searchable ASCII text files will be produced (or Unicode text format if the text is in a foreign language), unless the producing party can show that the cost would outweigh the usefulness of scanning (for example, when the condition of the paper is not conducive to scanning and will not result in accurate or reasonably useable/searchable ESI). Each file will be named with a unique Bates Number (*e.g.*, the unique Bates Number of the first page of the corresponding production version of the document followed by its file extension).

<u>Clawback Protections.</u>  Pursuant to Fed. R. Evid. 502(d), the production of any documents, electronically stored information (ESI), or information, [**Microsoft Proposal:** whether inadvertent or otherwise,] in this proceeding shall not, for the purposes of this proceeding or any other federal or state proceeding, constitute a waiver by the producing party of any privilege applicable to those documents, including the attorney-client privilege, attorney work-product protection, or any other privilege or protection recognized by law.

Nothing contained herein is intended to or shall serve to limit a party's right to conduct a review of documents, ESI or information (including metadata) for relevance, responsiveness and/or segregation of privileged and/or protected information before production. At the same time, a party shall not be obligated to conduct a document-by-document review of

1   documents prior to its production; provided however, that a party shall utilize keyword search
2   terms (e.g., the names of counsel and law firms for the producing party, [**Microsoft Proposal:**
3   although the failure to identify] a particular counsel or law firm as a keyword term shall not be
4   construed as waiver), analytical software tools and/or other reasonable means to locate and
5   exclude potentially privileged materials prior to the production.

6   [**Microsoft Proposal:** This Order shall be interpreted to provide the maximum
7   protection allowed by Fed. R. Evid. 502(d). The provisions of Fed. R. Evid. 502(b) do not apply.
8   Should a party choose not to conduct a document-by-document review, the party shall disclose
9   this at the time of production by designating the production volume or bates ranges and by affixing
10  an appropriate legend to indicate the documents are being produced without review and subject
11  to a Rule 502(d) Clawback ("Subject to Potential Clawback Material").  Such documents
12  produced without review shall be deemed Highly Confidential – Attorneys' Eyes Only.
13  Consistent with the Clawback provisions herein, disclosure of privileged information without
14  review in this Litigation shall in no way prejudice or otherwise constitute a waiver of, or estoppel
15  as to, any attorney-client, work product or other applicable privilege or immunity in this case or
16  in any other federal or state proceeding.  Any privileged material produced pursuant to this
17  paragraph shall be deemed to have been produced without waiver under Rule 502(d).]

18  [**RealD Proposal**: Once discovered, the producing party must promptly notify the
19  receiving party of any inadvertent disclosure of privileged material in writing, along with an
20  explanation of why the material is privileged. If the receiving party does not contest the claim of
21  privilege, it will make best efforts to promptly identify, return, or destroy the privileged materials
22  and any copies thereof. If the receiving party contests the claim of privilege, it must move the
23  Court to compel production of the challenged information within seven (7) days of the producing
24

party's notice. Pending resolution of the motion, the receiving party must not use the challenged information or disclose it to any other person(s). The party claim privilege retains the burden of establishing privileged over the challenged information.]

**D.     Preservation of ESI**

The parties acknowledge that they have a common law obligation, as expressed in Fed. R. Civ. P. 37(e), to take reasonable and proportional steps to preserve discoverable information in the party's possession, custody, or control. With respect to preservation of ESI, the parties agree as follows:

1.    Absent a showing of good cause by the requesting party, the parties shall not be required to modify the procedures used by them in the ordinary course of business to back-up and archive data; provided, however, that the parties shall preserve all discoverable ESI in their possession, custody, or control.

2.    The parties will supplement their disclosures in accordance with Fed. R. Civ. P. 26(e) with discoverable ESI responsive to a particular discovery request or mandatory disclosure where that data is created after a disclosure or response is made (unless excluded under Sections (D)(3) or (E)(1)-(2)).

3.    Absent a showing of good cause by the requesting party, the following categories of ESI need not be preserved:

   a.    Deleted, slack, fragmented, or other data only accessible by forensics.

   b.    Random access memory (RAM), temporary files, or other ephemeral data that are difficult to preserve without disabling the operating system.

   c.    On-line access data such as temporary internet files, history, cache, cookies, and the like.

   d.    Data in metadata fields that are frequently updated automatically, such as last-opened dates (see also Section (E)(5)).

   e. Back-up data that are duplicative of data that are more accessible elsewhere.

   f. Server, system or network logs.

   g. Data remaining from systems no longer in use that is unintelligible on the systems in use.

   h. Electronic data (*e.g.*, email, calendars, contact data, and notes) sent to or from mobile devices (*e.g.*, iPhone, iPad, Android devices), provided that a copy of all such electronic data is automatically saved in real time elsewhere (such as on a server, laptop, desktop computer, or "cloud" storage).

**E.** **Privilege Logs**

 1. A producing party shall create a privilege log of all documents fully withheld from production on the basis of a privilege or protection, unless otherwise agreed or excepted by this Agreement and Order. Privilege logs shall include a unique identification number for each document and the basis for the claim (attorney-client privileged or work-product protection). For ESI, the privilege log may be generated using available metadata, including author/recipient or to/from/cc/bcc names; the subject matter or title; and date created. Should the available metadata provide insufficient information for the purpose of evaluating the privilege claim asserted, the producing party shall include such additional information as required by the Federal Rules of Civil Procedure. Privilege logs will be produced to all other parties no later than 30 days before the deadline for filing motions related to discovery unless an earlier deadline is agreed to by the parties.

 2. Redactions need not be logged so long as the basis for the redaction is clear on the redacted document.

 3. With respect to privileged or work-product information generated after the filing of the complaint, parties are not required to include any such information in privilege logs.

4.      Activities undertaken in compliance with the duty to preserve information are protected from disclosure and discovery under Fed. R. Civ. P. 26(b)(3)(A) and (B).

Dated: February 24, 2023

| | |
|---|---|
| **TOUSLEY BRAIN STEPHENS, PLLC** | **MORGAN, LEWIS, & BOCKIUS, LLP** |
| *s/ Kaleigh N. Boyd* | *s/ Molly A. Terwilliger* |
| Kaleigh N. Boyd | Molly A. Terwilliger, WSBA #28449 |
| kboyd@tousley.com | Patty Eakes, WSBA #18888 |
| 1200 Fifth Avenue, Suite 1700 | 1301 Second Avenue, Suite 2800 |
| Seattle, Washington 98101 | Seattle, WA, 98101 |
| Telephone: (206) 682-5600 | Phone: (206) 274-6400 |
| Fax: (206) 682-2992 | molly.terwilliger@morganlewis.com |
| | Patty.eakes@morgnalewis.com |

| | |
|---|---|
| **MICHELMAN & ROBINSON, LLP** | Andrew V. Devkar (admitted *Pro Hac Vice*) |
| | 2049 Century Park East, Suite 700 |
| *s/ Ashley N. Moore* | Los Angeles, CA, 90067-3109 |
| Ashley N. Moore | Phone: ((310) 907-1000) |
| 300 Crescent Court Suite 1700 | Andrew.devkar@morganlewis.com |
| Dallas, TX 75201 | |
| Telephone: (214) 273-4050 | |
| amoore@mrllp.com | Natalie A. Bennett (admitted *Pro Hac Vice*) |
| | 1111 Pennsylvania Avenue, NW |
| | Washington, DC, 20004-2541 |
| | Phone: (202) 739-3000 |
| | Natalie.bennett@morganlewis.com |
| | |
| | Thomas R. Davis (admitted *Pro Hac Vice*) |
| | Susan Stradley (admitted *Pro Hac Vice*) |
| | 1000 Louisiana Street, Suite 4000 |
| | Houston, TX, 77002 |
| | Phone: (713) 890-1000 |
| | thomas.davis@morganlewis.com |
| | susan.stradley@morganlewis.com |

AGREEMENT REGARDING DISCOVERY OF ELECTRONICALLY
STORED INFORMATION AND [PROPOSED] ORDER                                    PAGE - 12
(Case No. 2:22-CV-00942-TL)

**ORDER**

Based on the foregoing, IT IS SO ORDERED.

DATED: ―――――――――――

                                                                    ――――――――――――――――――
                                                                    The Honorable Tana Lin
                                                                    UNITED STATES DISTRICT JUDGE

AGREEMENT REGARDING DISCOVERY OF ELECTRONICALLY
STORED INFORMATION AND [PROPOSED] ORDER                                    PAGE - 13
(Case No. 2:22-CV-00942-TL)