UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

REALD SPARK LLC,

                  Plaintiff,

    v.

MICROSOFT CORPORATION,

                  Defendant.

CASE NO. 2:22-cv-00942-TL

ORDER GRANTING
DEFENDANT'S MOTION
TO COMPEL DISCOVERY

Plaintiff RealD Spark, LLC ("RealD") sues Defendant Microsoft Corporation ("Microsoft") for breach of contract, theft of trade secrets, and patent infringement for the alleged unauthorized and unlicensed use in its products of proprietary or patented RealD technology. This matter comes before the Court on Defendant's Motion to Compel Discovery Response (Dkt. No. 46) as to Defendant's first interrogatory to Plaintiff. Having reviewed the Parties' briefing, the relevant record, and the governing law, the Court finds oral argument unnecessary, *see* LCR 7(b)(4), and GRANTS the motion.

# I.   BACKGROUND

## A.   Case Background

RealD brings four claims against Microsoft: (1) breach of contract; (2) violation of the Defend Trade Secrets Act, 18 U.S.C. §§ 1836, *et seq.*; (3) violation of the Washington Uniform Trade Secrets Act, RCW 19.108.010, *et seq.*; and (4) patent infringement. *See* Dkt. No. 1. RealD alleges that it developed an innovative technology known as SocialEyes that adjusts the gaze of video conference participants so that it appears the participants are looking directly into the camera instead of at the device screen. Dkt. No. 1 ¶ 14. According to the Complaint, one of the benefits of SocialEyes is that the technology "makes the video conference experience more vivid, engaging, and personal for all parties concerned." *Id.* ¶ 19.

RealD asserts that in 2016, RealD contacted Microsoft to see if it was interested in including SocialEyes in its products and entered into a Non-Disclosure Agreement ("NDA") on July 20, 2016. *Id.* ¶ 16. Pursuant to the NDA, RealD shared confidential, "high-level groups of trade secrets" about SocialEyes with Microsoft. *Id.* ¶ 18. The confidential information included:

- Image recognition algorithms for different types of faces, lighting, eye color, and eyeglasses;

- Datasets to support SocialEyes' image recognition methods;

- Know-how resulting from RealD's lengthy and costly R&D process used to develop SocialEyes and its corresponding datasets;

- Negative know-how that resulted from RealD's lengthy and costly R&D process that was used to develop SocialEyes and its corresponding datasets; and

- Source code that contained and implemented the aforementioned trade secrets.

*Id.* (the "Trade Secrets Categories"); *see also id.* ¶¶ 39, 58. RealD began demonstrating SocialEyes to Microsoft with the hope that Microsoft would ultimately license or acquire

ORDER GRANTING
DEFENDANT'S MOTION
TO COMPEL DISCOVERY - 2

1    RealD's technology. *Id.* ¶ 21. Therefore, RealD "spoke with Microsoft about SocialEyes and

2    shared confidential information with them related to the technology." *Id.*

3         In March 2019, Microsoft allegedly ceased discussions with RealD (*id.* ¶ 23) and

4    subsequently hired several former RealD employees who had worked on SocialEyes (*id.* ¶ 24).

5    RealD filed suit on February 7, 2022, alleging that Microsoft incorporated SocialEyes into its

6    Surface product line beginning around October 2019. *Id.* ¶ 27.

7         On February 7, 2023, the Court entered a Stipulated Protective Order that affords limited

8    protection against public disclosure of certain designated confidential material. Dkt. No. 36 ¶ 1.

9    The protective order allows a party or non-party to designate material produced as

10   "CONFIDENTIAL," "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY," or

11   "HIGHLY CONFIDENTIAL – SOURCE CODE." *Id.* ¶¶ 2.2, 2.7, 2.8. "HIGHLY

12   CONFIDENTIAL – ATTORNEYS' EYES ONLY" includes "proprietary design and

13   development materials for products and/or services; proprietary algorithms, software, designs,

14   and trade secrets; sensitive products and/or services; and strategic decision-making information."

15   *Id.* ¶ 2.7. "Source code" is defined as "material that comprises, includes, or substantially

16   discloses confidential, proprietary, or trade secret source code or algorithms." *Id.* ¶ 2.18. Specific

17   provisions in the protective order govern the disclosure of documents designated as "HIGHLY

18   CONFIDENTIAL – ATTORNEYS' EYES ONLY" as well as "HIGHLY CONFIDENTIAL –

19   SOURCE CODE." *Id.* ¶¶ 4.3, 4.4.

20   **B.    The Discovery Request**

21        At issue in this motion is Microsoft's first interrogatory to RealD in which Microsoft

22   asked RealD to: "Describe with particularity each and every alleged Trade Secret that You

23   contend Microsoft misappropriated, including, but not limited to the following representative

24   categories of alleged trade secrets identified in ¶¶ 18, 39–74 of Your Complaint . . . ." Dkt. No.

47-3 at 4. Microsoft then set forth the Trade Secrets Categories from Paragraph 8 of the Complaint. *Id.* In its initial response, RealD asserted some objections to the interrogatory and then, rather than describing the alleged trade secrets at issue with particularity, simply incorporated by reference the allegations in its Complaint and parroted the Trade Secrets Categories. *Compare* Dkt. No. 1 ¶ 18 *with* Dkt. No. 47-3 at 4 *and* Dkt. No. 47-4 at 5. RealD also added that Microsoft obtained trade secrets during the negotiations when RealD demonstrated the product and by hiring RealD's former employees. Dkt. No. 47-4 at 5. RealD stated that this disclosure was sufficient, given the early stage of the case and lack of protective order.[1] *Id.* at 6. RealD then provided a supplemental response on January 31, 2023, that relied on Fed. R. Civ. P. 33(d) and directed Microsoft to 2,857 pages in RealD's discovery production pertaining to the first four categories of the Trade Secrets Categories and said that it would make the source code described in the last category of the Trade Secrets Categories available for inspection. Dkt. No. 47-3 at 7.

Microsoft now moves to compel RealD to specifically identify the purported trade secrets it alleges were misappropriated. Dkt. No. 46 at 5. Microsoft also seeks a protective order pursuant to Federal Rule 26(c) and LCR 26(c)(1) deferring discovery regarding the implementation of Microsoft's accused technology until RealD sufficiently identifies its purported trade secrets. *Id.* RealD opposes both requests. Dkt. No. 54.

## II.   LEGAL STANDARDS

### A.   Standard of Review for Discovery

Federal Rule of Civil Procedure 26 allows parties to obtain discovery regarding:

> any nonprivileged matter that is relevant to any party's claim or
> defense and proportional to the needs of the case, considering the

---

[1] Subsequent to RealD's submission of its supplemental interrogatory response, the Court entered a Stipulated Protective Order on February 7, 2023. Dkt. No. 36.

> importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Fed. R. Civ. P. 26(b)(1). "Relevant" information is that which is "reasonably calculated to lead to the discovery of admissible evidence." *Brown Bag Software v. Symantec Corp.*, 960 F.2d 1465, 1470 (9th Cir. 1992). "[B]road discretion is vested in the trial court to permit or deny discovery." *Hallett v. Morgan*, 296 F.3d 732, 751 (9th Cir. 2002).

Under Federal Rule of Civil Procedure 37, "a party seeking discovery may move for an order compelling an answer, designation, production, or inspection." Fed. R. Civ. P. 37(a)(3)(B). The court may order a party to provide further responses to an "evasive or incomplete disclosure, answer, or response." Fed. R. Civ. P. 37(a)(4). The party seeking to compel discovery has the burden of establishing that its requests are relevant. Fed. R. Civ. P. 26(b)(1). Once this showing is made, the party seeking a protective order must "carry a heavy burden of showing why discovery" should be denied. *Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975).

**B.    Requirements for Discovery in Trade Secrets Cases**

Determining whether a trade secret has been misappropriated will often involve examining information that the opposing party considers its own trade secrets. *See AutoMed Techs., Inc. v. Eller*, 160 F. Supp. 2d 915, 925 (N.D. Ill. 2001). Once discovery begins, the plaintiff "will normally be required first to identify with reasonable particularity the matter which it claims constitutes a trade secret, before it will be allowed . . . to compel discovery of its adversary's trade secrets." *Id.* at 926 (citation omitted); *accord BioD, LLC v. Amnio Tech., LLC*, No. C13-1670, 2014 WL 3864658, at *4 (D. Ariz. Aug. 5, 2014). To meet the reasonable particularity standard, the plaintiff must provide "a description of the trade secrets at issue that is sufficient to (a) put a defendant on notice of the nature of the plaintiff's claims and (b) enable the

defendant to determine the relevancy of any requested discovery concerning its trade secrets." *Id.* at *5 (citation omitted); *accord Switch Commc'ns Grp. v. Ballard*, No. C11-0285, 2012 WL 2342929, at *5 (D. Nev. June 19, 2012) (noting plaintiff "must specifically describe what particular combination of components renders each of its designs novel or unique, how the components are combined, and how they operate in unique combination"); *Zunum Aero, Inc. v. Boeing Co.*, No. C21-0896, 2022 WL 17904317, at *4 (W.D. Wash. Dec. 23, 2022).

## III.   DISCUSSION

### A.   Microsoft's Discovery Request

Microsoft seeks to compel RealD to identify the allegedly misappropriated trade secrets with more particularity for three reasons: (1) RealD's "categories" of trade secrets does not provide reasonable notice; (2) RealD's identification of trade secrets makes no distinction between what is publicly known and what is the trade secret; and (3) RealD's reliance on Federal Rule of Civil Procedure 33(d) is improper and does not provide adequate notice.[2] RealD counters that "[a] plaintiff is not required to 'spell out the details of the trade secret' before discovery begins," Dkt. No. 54 at 8, relying on cases deciding motions to dismiss. *Id.* at 12–13.

As an initial matter, RealD did not assert a relevance objection to the interrogatory in its response (*see* Dkt. No. 47-3 at 4, 6 and Dkt. No. 47-4 at 4), and the Court finds that the requested discovery easily meets the relevance requirement. *See* Fed. R. Civ. P. 26(b)(1).

---

[2] Microsoft also asserts that RealD's use of the catch-all phrase "at least the following trade secrets" is overbroad. Dkt. No. 47-2 at 9. In the cases cited by Microsoft, discovery was much further along, such that the responding party should have been able to provide definitive responses. *See, e.g.*, *I-Flow Corp. v. Apex Med. Techs., Inc.*, No. C07-1200, 2008 WL 11342247, at *1, *3 (S.D. Cal. Oct. 10, 2008) (noting motion at issue was third motion to compel after depositions had already taken place); *StonCor Grp., Inc. v. Campton*, No. C05-1225, 2006 WL 314336, at *1 (W.D. Wash. Feb. 7, 2006) (noting discovery was nearly at the end of an extended discovery cut-off date). However, here, discovery is in its early stages. "[W]here no discovery ha[s] occurred, it is not fatal to [plaintiff's] claim that its hedging language left open the possibility of expanding its identifications later." *InteliClear, LLC v. ETC Global Holdings, Inc.*, 978 F.3d 653, 659 (9th Cir. 2020). While *InteliClear* addressed a motion for summary judgment, the discovery period had been open for only one day and no discovery had occurred at the time the motion was filed. *Id.* at 662.

As for whether RealD has satisfied its "heavy burden" of showing why the requested relevant discovery should be denied, the Court finds that it has not. The Court agrees with RealD that *at the motion to dismiss stage*, "a plaintiff should not be compelled to divulge with specificity all of its possible trade secrets . . . in order to proceed to discovery." *T-Mobile USA, Inc. v. Huawei Device USA, Inc.*, 115 F. Supp. 3d 1184, 1193 (W.D. Wash. 2015). That is because at the motion to dismiss stage, a plaintiff usually will only have filed a complaint, which is a public document, and only needs to provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In a trade secret case, a plaintiff should not be expected to publicly disclose the details that would expose—and therefore, destroy—the trade secret in order to begin a case. Therefore, it is ordinarily sufficient for a plaintiff to provide descriptions of the categories of the asserted trade secrets in a complaint. *See* The Sedona Conference, *Commentary on the Proper Identification of Asserted Trade Secrets in Misappropriation Cases*, 22 Sedona Conf. J. 223, 248 (2021) [hereinafter "Sedona Conference Commentary"].

However, this case has progressed beyond the motion to dismiss stage. As RealD admits, "[t]he reasonableness or sufficiency of those disclosures 'typically arise in the battleground of discovery.'" Dkt. No. 54 at 9 (quoting *InteliClear*, 978 F.3d at 662). Discovery has begun, a protective order has been entered, and it is time for the Parties to probe the evidence that will be offered to prove or defend the case with an eye towards a possible summary judgment motion and, eventually, trial. Ultimately, if trade secrets are not specifically identified, a court will not be able to determine whether they have been misappropriated. *MAI Sys. Corp. v. Peak Computer, Inc.*, 991 F.2d 511, 522 (9th Cir. 1993).

1       1.       **Category 1: Image Recognition Algorithms**

2          The first category of alleged trade secrets identified by RealD is "image recognition

3   algorithms for different types of faces, lighting, eye color, and eyeglasses."

4          The Ninth Circuit has instructed that:

5                A plaintiff seeking relief for misappropriation of trade secrets

6                "must identify the trade secrets and carry the burden of showing
                 that they exist." The plaintiff "should describe the subject matter of

7                the trade secret with *sufficient particularity* to separate it from
                 matters of general knowledge in the trade or of special knowledge
                 of those persons . . . skilled in the trade."

8  *Imax Corp. v. Cinema Techs., Inc.*, 152 F.3d 1161, 1165 (9th Cir. 1998) (citations omitted)

9  (emphasis in original). Ultimately, to prove its case, a plaintiff will have to "clearly refer to

10  tangible trade secret material." *InteliClear*, 978 F.3d at 658 (citation omitted). A defendant needs

11  be able to ascertain what the "tangible trade secret material" is in order to defend itself, and a

12  court needs to know what the "tangible trade secret material" is to not only determine the proper

13  bounds of discovery but also ultimately determine whether there was a misappropriation.

14  Therefore, where a claim is that a particular algorithm is the trade secret, as is the case here, the

15  algorithm itself should be disclosed. *See* Sedona Conference Commentary at 250.

16          Microsoft argues that RealD's response does not identify the actual algorithm but,

17  instead, is merely a generic description of a well-known concept. *See* Dkt. No. 47-2 at 13; Dkt.

18  No. 58 at 8. In support, Microsoft cites to two patents discussing a "face-recognition algorithm"

19  dating back to 1995 and a 2007 patent that applies an "image classification algorithm" to

20  recognize faces. Dkt. No. 47-2 at 13. Microsoft further points to three publicly available articles[3]

21

---

22  [3] Chih-Fan Hsu et al., *Look at Me! Correcting Eye Gaze in Live Video Communication*, 1 ACM Transactions on Multimedia
23  Computing, Communications, and Applications, no. 1, Jan. 2016; Daniil Kononenko, *Learnable Warping-Based Approach to
Image Re-Synthesis with Application to Gaze Redirection* (2017) (Ph.D. thesis, Skolkovo Institute of Science and
24  Technology), https://www.skoltech.ru/app/data/uploads/2017/10/Kononenko_thesis_Final-compressed.pdf; Erroll Wood et
al., *GazeDirector: Fully Articulated Eye Gaze Redirection in Video* (Apr. 27, 2017), https://arxiv.org/pdf/1704.08763.pdf.

that describe how, when studying gaze redirection, features such as the different attributes of a person (including age, iris color, skin tone), head pose, lighting conditions, viewing angle, eyelid motion, and the wearing of eyeglasses must be considered. Dkt. No. 58-1 at 2–4. This is not to say that RealD's image recognition algorithms are not trade secrets; they may be so. The Court also recognizes that a trade secret may consist of a combination of proprietary and public sources. *United States v. Nosal*, 844 F.3d 1024, 1042 (9th Cir. 2016). The only question the Court addresses in this Order is what information regarding a trade secret must be revealed in response to a proper discovery request. In light of the information provided by Microsoft regarding the existence of other algorithms addressing face recognition,[4] the Court finds RealD's responses to Microsoft's interrogatory to be too vague and broad to provide reasonable particularity sufficient for Microsoft to prepare a defense. Specifically, the current description does not allow for either Microsoft or the Court to determine what about RealD's algorithms sets them apart from the other publicly known facial-recognition algorithms to qualify as trade secrets.

The Court acknowledges that "plaintiffs in trade secret actions may have commercially valid reasons to avoid being overly specific at the outset in defining their intellectual property." *InteliClear*, 978 F.3d at 662; *see also IDX Sys. Corp. v. Epic Sys. Corp.*, 285 F.3d 581, 583 (7th Cir. 2002) ("Reluctance to be specific is understandable; the more precise the claim, the more a party does to tip off a business rival to where the real secrets lie and where the rival's own development efforts should be focused."). However, RealD already "disclosed its confidential information to Microsoft" during negotiations. Dkt. No. 6. And in any case, even when the trade secrets may have been previously disclosed, it is improper for a plaintiff to shift the burden to the

---

[4] The Court does not believe it needs to reach the issue of what was disclosed in RealD's patents given the other publicly available information regarding facial-recognition algorithms that was provided.

1    defendant to identify them. *See Zunum Aero*, 2022 WL 17904317, at *5 n.11–12 (rejecting

2    argument that defendant already knew what plaintiff's trade secrets were from prior meetings);

3    *Bite Tech, Inc. v. X2 Biosys., Inc.*, No. C12-1267, 2013 WL 12191342, at *3 (W.D. Wash. May

4    13, 2013) (directing the opposing party to documents produced while the parties previously were

5    working together is an insufficient response to an interrogatory requesting the identification of

6    the exposed trade secret).[5] Further, RealD "does not allege the entirety of Microsoft's products

7    as a trade secret." Dkt. No. 54 at 13. Because the particular "image recognition algorithms" that

8    RealD claims are trade secrets are central to this case, RealD should clarify exactly what those

9    algorithms are so that both Microsoft and the Court will be able to determine what parts of

10   Microsoft's products are or are not utilizing RealD's trade secrets.[6] *See Switch Commc'ns Grp.*,

11   2012 WL 2342929, at *5 (holding that plaintiff relying on a "unique combination of known

12   components disclosed to a defendant" as trade secrets must specifically describe the particular

13   combination of components).

14        Accordingly, Microsoft's motion is GRANTED as to Category 1. RealD's supplemental

15   interrogatory response suggests that the algorithms at issue might be contained in a nearly 3,000-

16   page range of its production.[7] Dkt. No. 47-3 at 7 ("Pursuant to Fed. R. Civ. P. 33(d), RealD

17   directs Microsoft to the documents produced at REALD_00006600 - REALD_00009457 where

18

19   _____

     [5] RealD cites to *Alta Devices, Inc. v. LG Electronics, Inc.*, in which a district court held that the defendant had fair
20   notice when "the plaintiff's trade secret claims were based on the confidential information exchanged pursuant to
     the nondisclosure agreement." 343 F. Supp. 3d 868, 881 (N.D. Cal. 2018). However, *Alta* involved a motion to
     dismiss, and Plaintiff admits that there is a "lower bar at the beginning of a case." Dkt. No. 54 at 12.
21
     [6] RealD also asserts that Microsoft has access to RealD's entire former design team by virtue of their current
22   employment at Microsoft. Dkt. No. 54 at 13. However, Microsoft asserts that it "did not hire RealD personnel for
     know-how or material" and "Microsoft is certainly not going to solicit details of RealD's technology for the
     purposes of this litigation." Dkt. No. 58 at 5. The Court accepts the representation of Microsoft's counsel as officers
23   of the court. Should information contradicting this representation come to light during discovery, RealD can bring
     an appropriate motion.

24   [7] *See infra* Section III.A.2 for a discussion of RealD's use of Federal Rule of Civil Procedure 33(d).

     ORDER GRANTING
     DEFENDANT'S MOTION
     TO COMPEL DISCOVERY - 10

1   further delineation of trade secret categories #1-4 can be found"). If the algorithms at issue are

2   contained within RealD's document production, the Court DIRECTS RealD to specify the pages

3   within REALD_00006600–REALD_00009457 that reveal those algorithms. If the actual

4   algorithms are not contained in that production, the Court DIRECTS RealD to provide the "image

5   recognition algorithms" it asserts are trade secrets to Microsoft, but labeled as "HIGHLY

6   CONFIDENTIAL—ATTORNEYS' EYES ONLY" pursuant to the Protective Order.

7         **2.      Category 2: Datasets**

8         The second category of trade secrets identified by RealD is "[d]atasets to support

9   SocialEyes' image recognition methods." In its response to the motion to compel, RealD states

10   that it has "listed the relevant bates ranges" for the data sets. Dkt. No. 54 at 13.

11         Federal Rule of Civil Procedure 33(d) provides parties with an option to provide business

12   records in response to an interrogatory. A party may utilize Rule 33(d) if the answer to an

13   interrogatory may be determined by examining a party's business records and the burden of

14   deriving or ascertaining the answer will be substantially the same for either party. Fed. R. Civ. P.

15   33(d). In this case, "the responding party may answer by specifying the records that must be

16   reviewed, in sufficient detail to enable the interrogating party to locate and identify them as

17   readily as the responding party could." *Id*.

18         RealD asserts that, despite repeated requests, Microsoft refused to review the items

19   identified in the interrogatory response prior to filing its motion. Dkt. No. 54 at 13. Microsoft

20   does not seem to dispute this in its Reply. *See* Dkt. No. 58. While this is of concern to the Court,

21   the Court is more concerned with Microsoft's complaint that RealD designated a nearly 3,000-

22   page range of documents as responsive to the first four of the Trade Secret Categories. Dkt. No.

23   47-2 at 15; Dkt. No. 47-3 at 7. The Court accepts that RealD "took pains to collect a large and

24   varied set of data to train its algorithms . . . ." Dkt. No. 54 at 13. But as a general matter, "[i]t is

inadequate for plaintiffs to 'cite and incorporate by reference hundreds of documents that purportedly reference or reflect the trade secret information.'" *InteliClear*, 978 F.3d at 658. Simply citing to an approximately 3,000-page range for four categories of information does not satisfy the requirements of Rule 33(d) to "specify[ ] the records that must be reviewed[] in sufficient detail to enable the interrogating party to locate and identify them as readily as the responding party could." Fed. R. Civ. P. 33(d); *see also Zunum Aero*, 2022 WL 17904317, at *5 (holding a Rule 33(d) response insufficient where the plaintiff pointed to more than 7,000 pages of material purportedly containing the trade secrets at issue).

RealD asserts that its Rule 33(d) citation is made in addition to a narrative that allows Microsoft to discern what the trade secrets are. Dkt. No. 54 at 16. The narrative provided by RealD is minimal. RealD knows which of these documents correspond to each category and, at a minimum, it should have identified specific page ranges separately for each of them.

Accordingly, the Court GRANTS Microsoft's motion as to Category 2. The Court DIRECTS RealD to specify the pages within REALD_00006600–REALD_00009457 that reveal the datasets referenced in Category 2.

### 3.    Category 3: Know-how

The third category of trade secrets identified by RealD is "[k]now-how resulting from RealD's lengthy and costly R&D process used to develop SocialEyes and its corresponding datasets." RealD states that "the algorithms and data sets . . . reflect the trade secreted know-how as they show which conditions are necessary to correct and how to correct them, such as the image sets and patches that best correct eye gaze when a user is wearing glasses or in low light." Dkt. No. 54 at 6. If the full extent of the trade-secreted "know-how" is the combination of RealD's image recognition algorithms and data sets supporting SocialEyes' image recognition methods (or, in other words, the first two categories of alleged trade secrets), then RealD should

have stated this in its interrogatory response. If there are more components to the "know-how,"
RealD should further describe the other components of the "know-how" that it alleges comprise
its trade secrets.

Accordingly, the Court GRANTS Microsoft's motion as to Category 3 and DIRECTS RealD
to provide a specific answer regarding what it alleges is the trade-secreted "know-how"
consistent with the Court's observations in the preceding paragraph. The Court further DIRECTS
RealD to specify the pages within REALD_00006600–REALD_00009457 that reveal the know-
how RealD asserts resulted from its R&D process used to develop SocialEyes and its
corresponding datasets.

### 4.     Category 4: Negative know-how

The fourth category of trade secrets identified by RealD is "[n]egative know-how that
resulted from RealD's lengthy and costly R&D process that was used to develop SocialEyes and
its corresponding datasets." Microsoft asserts that every eye-gaze technology developer will
generate its own knowledge as to what does not work ("negative know-how") in a particular
field. Dkt. No. 47-2 at 11. In its supplemental interrogatory response, RealD points to a nearly
3,000-page range of documents that it asserts further delineates its trade secret categories,
including negative know-how. Dkt. No. 47-3 at 7. However, RealD goes on to state that "[a]n
examination of those documents confirms RealD's compilation of and reliance on data sets and
its development, use, refinement and know-how related to its image recognition algorithms." *Id.*
Negative know-how does not appear to be included in the documents. The Court also notes that
RealD fails to address the issue of negative know-how in its response to the motion to compel.

As it appears that RealD neither provided documents responsive to this request nor
otherwise answered this portion of the interrogatory, the Court GRANTS Microsoft's motion as to

1    Category 4 and DIRECTS RealD to provide a specific answer as to what it alleges is the trade-

2    secreted "negative know-how."

3        **5.    Category 5: Source Code**

4        The fifth category of trade secrets claimed by RealD is "[s]ource code that contained and

5    implemented the aforementioned trade secrets." In its interrogatory response, RealD "direct[ed]

6    Microsoft to source code that is available for inspection." Dkt. No. 47-3 at 7. Microsoft asserts

7    that RealD must provide notice as to "precisely which portions of the code are at issue." Dkt. No.

8    47-2 at 11. In its response to the motion to compel, RealD reiterates that it "provided those items

9    on a source code computer." Dkt. No. 54 at 13.

10       RealD asserts that its description of its source code was similar to the phrase utilized and

11   found adequate in *Amimom v. Shenzhen Hollyland Tech Co.*, No. C20-9170, 2021 WL 5605258,

12   at *15 (S.D.N.Y. Nov. 30, 2021). However, the issue in *Amimom* arose in a motion to dismiss,

13   and, as previously discussed, *see supra* Section III.A, the bar for what must be stated in a

14   complaint for purposes of a motion to dismiss is lower than what is expected once a case has

15   progressed to discovery with a protective order entered, as is the situation here. In order for this

16   case to proceed to trial, RealD will need to identify "specific key aspects" of its source code.

17   *DropzoneMS, LLC v. Cockayne*, No. C16-2348, 2019 WL 7630788, at *11 (D. Or. Sept. 12,

18   2019). A plaintiff must "identify what portions of the source codes constitute trade secrets" in

19   order for a court determine whether they meet the definition of a trade secret. *Keywords, LLC v.

20   Internet Shopping Enters., Inc.*, No. C05-2488, 2005 WL 8156440, at *17 (C.D. Cal. June 29,

21   2005); *see also MAI Sys. Corp.*, 991 F.2d at 522 ("[If] trade secrets are not specifically

22   identified, we cannot determine whether [defendant] has misappropriated any trade secrets . . . .").

23       For these reasons, the Court GRANTS Microsoft's motion as to Category 5 and DIRECTS

24   RealD to precisely identify the source code or portions of its source code that it alleges constitute

1   the trade secret misappropriated by Microsoft. Pursuant to the Protective Order, the information

2   can be designated as "HIGHLY CONFIDENTIAL—SOURCE CODE."

3   **B.      RealD's Discovery Requests**

4          RealD has served written discovery requests on Microsoft consisting of 66 requests for

5   production, 12 interrogatories, and five requests for admission. Dkt. Nos. 46-11, 46-12, 46-13.

6   Microsoft requests the Court grant a protective order deferring any discovery as to the trade

7   secret misappropriation allegations until RealD sufficiently identifies the alleged trade secrets.

8   Dkt. No. 47-2 at 16. RealD asserts that some of the discovery related to its trade secret claims

9   may also be relevant to its patent infringement claims and that Microsoft should not be able to

10  preclude discovery into the patent infringement claims. Dkt. No. 54 at 17. In its reply, Microsoft

11  states that it does not seek to halt all discovery and that it has responded to discovery that does

12  not seek the technical implementation of Microsoft's accused technology. Dkt. No. 58 at 9.

13         As several courts have noted, "it is easy to allege theft of trade secrets with vagueness,

14  then take discovery into the defendant's files, and then cleverly specify whatever happens to be

15  there as having been trade secrets stolen from plaintiff. A true trade secret plaintiff ought to be

16  able to identify, up front, and with specificity the particulars of the trade secrets without any

17  discovery." *Jobscience, Inc. v. CVPartners, Inc.,* No. C13-4519, 2014 WL 1724763, at *2 (N.D.

18  Cal. May 1, 2014); *accord Grellner v. Raabe*, No. C15-0189, 2017 WL 9486621, at *2 (E.D.

19  Wash. June 20, 2017); *telSPACE, LLC v. Coast to Coast Cellular, Inc*., No. C13-1477, 2014 WL

20  4364851, at *5 (W.D. Wash. Sept. 3, 2014). In addition, "requiring the plaintiff to sufficiently

21  identify its trade secrets prior to allowing discovery on the defendant's trade secrets helps the

22  court to determine the outer permissible bounds of discovery and prevents needless exposure of

23  the defendant's trade secrets." *BioD*, 2014 WL 3864658, at *4 (quoting *DeRubeis v. Witten*

24  *Techs., Inc.*, 244 F.R.D. 676, 680–81 (N.D. Ga. 2007)).

1   At issue are over eighty discovery requests. Other than RealD's Request for Admission

2   No. 1, the Parties have not identified any other requests in particular they believe the Court

3   should either protect from discovery or compel discovery for at this time. The Court will not pick

4   through the large number of requests on its own. Instead, the Court will direct RealD to identify

5   its alleged trade secrets with more particularity as directed in this order before Microsoft is

6   required to respond to any discovery request that will require Microsoft to disclose any of its

7   confidential information. As the Court will order RealD to supplement its interrogatory

8   responses within 30 days, any delay in discovery will be a short one. Nevertheless, the Court

9   expects the Parties to work together to move forward with as much discovery as possible in the interim.

10  ### IV.   CONCLUSION

11   The Court GRANTS Defendant's Motion to Compel (Dkt. No. 46) and DIRECTS Plaintiff to

12  supplement its responses to Interrogatory No. 1 in a manner consistent with this Order **within**

13  **thirty (30) days**. The Court also GRANTS, in part, Microsoft's request for a protective order,

14  consistent with this Order.

15   Dated this 8th day of May 2023.

16

17   _____
     Tana Lin
18   United States District Judge

19

20

21

22

23

24