1
2
3
4
5
6
7
8
9
10

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

11

REALD SPARK, LLC,

12
                              Plaintiff,
         v.
13
MICROSOFT CORPORATION,

14
                              Defendant.
15

CASE NO. 2:22-cv-00942-TL

ORDER ON MOTION TO DISMISS
COUNTERCLAIMS

16      This matter is before the Court on Plaintiff RealD Spark, LLC ("RealD")'s motion to

17   dismiss Defendant Microsoft Corporation's counterclaims. Dkt. No. 152. Having reviewed the

18   motion, Microsoft's response (Dkt. No. 155), RealD's reply (Dkt. No. 157), and the relevant

19   record, the Court GRANTS the motion.

20                          I.      BACKGROUND[1]

21      This is an intellectual-property case that arises out of disputed technology developed to

22   ward off so-called "Zoom fatigue," an affliction caused by the physical and psychological strain

23

24   ───────────────
[1] This background recites only an abbreviated version of the procedural history of this case and specifically focuses
on those facts and procedural developments relevant to the instant motion to dismiss.

1   experienced by videoconference participants. In this case, Plaintiff RealD originally brought four

2   claims against Defendant Microsoft: (1) breach of contract; (2) violation of the Defend Trade

3   Secrets Act, 18 U.S.C. §§ 1836 *et seq.*; (3) violation of the Washington Uniform Trade Secrets

4   Act, Chapter 19.108 RCW; and (4) patent infringement. *See* Dkt. No. 1 (complaint).[2] RealD

5   alleged that it had developed an innovative technology, which it called "SocialEyes," that

6   artificially adjusts the perceived gaze—i.e., the direction in which (or object at which) an

7   individual appears to be looking—of videoconference participants, so that it appears that

8   participants are looking directly at one another other, and not at the cameras or screens on their

9   respective devices. *Id.* ¶ 14. The technology allows participants to perceive that they are

10  maintaining eye contact with their interlocutors. *Id.* ¶ 19. RealD asserts that by mimicking eye

11  contact, SocialEyes "makes the video conference more vivid, engaging, and personal for all

12  parties concerned." *Id.*

13          RealD's claim for patent infringement centered around United States Patent

14  No. 10,740,985 (the "'985 Patent"). *Id.* ¶¶ 75–109. The "'985 Patent describes, among other

15  things, a method and apparatus for adjusting a digital representation of a head region, particularly

16  by adjusting target features, such as correcting a perceived gaze direction of eyes or modifying

17  the texture and/or shape of features such as the nose, mouth, chin or neck." *Id.* ¶ 79. In short, the

18  '985 Patent represents the foundational technology for SocialEyes. The '985 Patent covers the

19  technology that makes SocialEyes possible.

20          RealD's complaint alleges that, after it had collaborated with Microsoft between 2016

21  and 2019, with an eye toward Microsoft's licensing or acquiring RealD's SocialEyes technology,

22  Microsoft abruptly ceased discussions with RealD. *Id.* ¶¶ 21, 23. Microsoft then hired several

23

24  [2] As discussed below, RealD voluntarily dismissed the patent-infringement claim.

RealD employees who had worked on SocialEyes (*id.* ¶ 24) and subsequently developed "Eye Contact," a product similar to SocialEyes (*id.* ¶ 1). The Eye Contact product, RealD alleged, constituted the "unauthorized and unlicensed use of patented and/or proprietary RealD technology." *Id.* Allegedly, products "with the Eye Contact feature infringe[d] . . . the '985 Patent." *Id.* ¶ 88.

On December 9, 2022, Microsoft answered RealD's complaint. Dkt. No. 30. In its answer, Microsoft brought two counterclaims against RealD: (1) declaratory judgment of noninfringement of the '985 Patent (*id.* at 48 ¶¶ 7–11); and (2) declaratory judgment of invalidity of the '985 Patent (*id.* at 48 ¶¶ 12–16). On October 31, 2023, Microsoft filed an amended answer to RealD's complaint. Dkt. No. 109. In its amended answer, Microsoft added a third counterclaim: (3) declaratory judgment of invalidity and/or unenforceability of the '985 Patent for improper inventorship (*id.* at 49 ¶¶ 17–30). In its first counterclaim, Microsoft seeks a declaration that it has not infringed the '985 Patent. *Id.* at 48 ¶ 8. In its second counterclaim, Microsoft seeks a declaration that the '985 Patent is invalid, because "each claim of the '985 Patent asserted against Microsoft is invalid for failing to comply with one or more of the requirements for patentability set forth in 35 U.S.C. § 101 et seq., including but not limited to sections 102, 103, and 112." *Id.* at 49 ¶ 13. And in its third counterclaim, Microsoft seeks a declaration that RealD's claims in the '985 Patent are invalid and unenforceable, because in applying for and obtaining the patent, RealD "fail[ed] to name the actual inventors of the claimed subject matter." *Id.* at 50 ¶ 18. Microsoft alleges that the SocialEyes technology, as patented in the '985 Patent, was developed not at RealD, but rather at the Skolkovo Institute of Science and Technology ("Skoltech"). *Id.* at 50 ¶ 19. Microsoft alleges that Skoltech inventors "worked in collaboration with the named inventors of the '985 Patent . . . on eye gaze correction technology" and "contributed to the inventions in the '985 Patent." *Id.* at 50 ¶¶ 22–23. These Skoltech

inventors, however, were not identified as inventors on the '985 Patent, allegedly rendering the patent "invalid and unenforceable for improper inventorship." *Id.* at 51 ¶ 29.

On January 11, 2024, RealD moved to voluntarily dismiss its claims of infringement of the '985 Patent without prejudice, leaving only the breach-of-contract and federal and state trade-secrets claims as live causes of action. Dkt. No. 125. On January 30, 2024, the Court granted RealD's motion and dismissed the '985 Patent claim from this case. Dkt. No. 136. Soon thereafter, on February 8, 2024, RealD issued to Microsoft a covenant not to sue ("the Covenant") for infringement of the '985 Patent (Dkt. No. 149-1). Pursuant to the Covenant,

> RealD unconditionally and irrevocably covenants to refrain, at any time, from directly or indirectly causing the commencement, maintenance, or prosecution of any Action against Microsoft, any of its Affiliates, or their past or present directors, officers, employees, successors, assigns, Customers, manufacturers, distributors, licensees, or other transferees for direct or indirect infringement as to any claim of the '985 Patent based upon Microsoft making, having made, using, manufacturing, developing, designing, marketing, licensing, distributing, importing, offering for sale, or selling of any service, product, software, or other technology, as they exist today or have existed in the past, including Eye Contact and the currently known extensions or improvements Stare and Teleprompter.

Dkt. No. 149-1 at 1.

Finally, in one further development with respect to the '985 Patent, on November 19, 2024, in an administrative *inter partes* review ("IPR")[3] of the '985 Patent initiated by Microsoft, the U.S. Patent and Trademark Office's Patent Trial and Appeal Board determined that 18 out of the 19 claims of the '985 Patent were unpatentable. *See* Dkt. No. 142-1 (IPR final written decision) at 55.

---

[3] IPR is a statutorily defined administrative procedure that "allows a third party to ask the U.S. Patent and Trademark Office to reexamine the claims in an already-issued patent and to cancel any claim that the agency finds to be unpatentable" because the claim is "obvious" or not sufficiently "novel." *Cuozzo Speed Techs. v. Commerce for Intellectual Prop.*, 579 U.S. 261, 265 (2016); *see* 35 U.S.C. §§ 311–319.

## II.    LEGAL STANDARD

Under the Declaratory Judgment Act, a federal court may, "[i]n a case of actual controversy . . . , declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). A "case of actual controversy . . . refers to the type of 'Cases' and 'Controversies' that are justiciable under Article III" of the United States Constitution. *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007). But "there is no bright-line rule for determining whether an action satisfies the case or controversy requirement. . . . Instead . . . , 'the analysis must be calibrated to the particular facts of each case.'" *Prasco, LLC v. Medicis Pharm. Corp.*, 537 F.3d 1329, 1336 (Fed. Cir. 2008) (quoting *Cat Tech LLC v. TubeMaster, Inc.*, 528 F.3d 871, 879 (Fed. Cir. 2008)). In other words, courts apply "a totality-of-the-circumstances test for deciding whether there is indeed an actual controversy, on the particular facts and relationships involved." *Revolution Eyewear, Inc. v. Aspex Eyewear, Inc.*, 556 F.3d 1294, 1297 (Fed. Cir. 2009).

"Basically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of declaratory judgment." *MedImmune*, 549 U.S. at 127 (quoting *Maryland Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941)). "A useful question to ask in determining whether an actual controversy exists is what, if any, cause of action the declaratory judgment defendant may have against the declaratory judgment plaintiff[.]" *Benitec Austl., Ltd. v. Nucleonics, Inc.*, 495 F.3d 1340, 1344 (Fed. Cir. 2007). "The party seeking a declaratory judgment must establish that jurisdiction 'existed at the time the claim for declaratory relief was filed and that it has continued since.'" *Streck, Inc. v. Rsch. & Diagnostic Sys., Inc.*, 665 F.3d 1269, 1282 (Fed. Cir. 2012) (quoting *Benitec*, 495 F.3d at 1344).

### III.    DISCUSSION

The central question here is the extent to which RealD's "Covenant Not to Sue,"

executed February 8, 2024, and subsequently provided to Microsoft on or about that date, puts to

rest any "actual controversy" between the Parties. *See Revolution Eyewear*, 556 F.3d at 1297

("Whether a covenant not to sue will divest the trial court of jurisdiction depends on what is

covered by the covenant."). RealD argues that the Covenant deprives the Court of subject-matter

jurisdiction over all three of Microsoft's counterclaims. *See* Dkt. No. 152 at 9–10. Microsoft

argues that the Covenant only deprives the Court of subject-matter jurisdiction over Microsoft's

first two counterclaims. *See* Dkt. No. 155 at 5. Microsoft asserts that a live controversy—and

therefore the Court's jurisdiction—remains with respect to Microsoft's third counterclaim. *See*

*id.*

### A.    Counterclaims I and II

There is no dispute that the Declaratory Judgment Act's "actual controversy" requirement

deprives the Court of subject-matter jurisdiction over Microsoft's first two counterclaims.

Microsoft "does not object to the dismissal of its declaratory-judgment counterclaims of

noninfringement and invalidity of the '985 Patent." Dkt. No. 155 at 5. Therefore, the Court

DISMISSES Count I (*see* Dkt. No. 109 at 48 ¶¶ 7–11) and Count II (*see id.* at 49 ¶¶ 12–16) of

Microsoft's counterclaims.

### B.    Counterclaim III

With respect to its third counterclaim, the key inquiry is into what, if any, "affirmative

act[s]" RealD has performed such that Microsoft finds itself "in the position of either pursuing

arguably illegal behavior or abandoning that which [it] claims a right to do." *SanDisk Corp. v.*

*STMicroelectronics, Inc.*, 480 F.3d 1372, 1381 (Fed. Cir. 2007). That Microsoft might feel

threatened with litigation is not sufficient to give rise to an actual Article III controversy to

1   warrant declaratory judgment, unless Microsoft can also point to an affirmative act on the part of

2   RealD that provides a factual basis for such a threat. *Id.* at 1380–81. "Generally, an affirmative

3   act by the patentee is 'conduct that can be reasonably inferred as demonstrating intent to enforce

4   a patent.'" *UCP Int'l Co. Ltd. v. Balsam Brands Inc.*, 787 F. App'x 691, 698 (Fed. Cir. 2019)

5   (quoting *Hewlett-Packard Co. v. Accelleron LLC*, 587 F.3d 1358, 1363 (Fed. Cir. 2009)).

6       Microsoft presents several arguments in support of this Court's maintaining subject-

7   matter jurisdiction over its third counterclaim. First, Microsoft argues that, even though RealD's

8   Covenant extinguished liability with respect to the '985 Patent, it did not quash Microsoft's

9   potential liability with respect to "related patents in the same patent family." Dkt. No. 155 at 7.

10  Microsoft locates an "affirmative act" in RealD's purported refusal to extend the Covenant to

11  additional patents in the '985 Patent family. Second, Microsoft argues that it remains under

12  "threat of a future suit on those related patents." *Id.* Such threat, according to Microsoft, is

13  evidenced by RealD's conduct in prosecuting the instant case. *Id.* RealD's strategy and tactics in

14  its litigation of this case—and the effect of such strategy and tactics on "Microsoft's lived

15  experience" (*id.* at 14) in this lawsuit—suffice to maintain an "Article III controversy" (*id.* at 7).

16  Third, Microsoft asserts that interests of judicial economy counsel in favor of this Court's

17  preserving subject-matter jurisdiction over the counterclaim. *Id.* The Court will examine each

18  argument in turn.

19      **1.    Effect of the Covenant**

20      In evaluating whether a covenant not to sue truly eliminates a threat of litigation between

21  two parties, courts emphasize conduct over words. In *SanDisk*, for example, a verbal statement

22  that a patentee would not sue a putative infringer did not eliminate such a threat where the

23  patentee "ha[d] engaged in a course of conduct that show[ed] a preparedness and willingness to

24  enforce its patent rights despite [the] statement." *Revolution Eyewear*, 556 F.3d at 1297

1  (discussing *SanDisk*, 480 F.3d at 1381). Here, Microsoft asserts that "RealD has not been hiding

2  its intention to assert the continuation patents against Microsoft or Microsoft's customers." *Id.* at

3  9. This assertion is based on RealD's "[r]efus[al] to provide a covenant that encompasses the

4  entire ['985] Patent Family." *Id.* at 17. RealD "*could have included the '985 Patent family*" in

5  the Covenant, Microsoft argues, "but RealD expressly refused to do so." *Id.*

6          As an initial matter, Microsoft's assertion that RealD "expressly" refused to provide the

7  family-wide covenant is a misrepresentation of the record—or at least of the record that

8  Microsoft has presented to the Court. Not doing something is different from refusing to do

9  something. In illustrating RealD's purported intransigence on the scope of the Covenant,

10  Microsoft conflates nonperformance with refusal to perform. Microsoft explains that RealD

11  "provide[d] a covenant not to sue limited only to the '985 Patent, specifically noting that '[s]uch

12  release and covenants do not extend to any other patents or patent applications.'" Dkt. No. 155 at

13  10–11. After further negotiation, "RealD unilaterally served Microsoft with a covenant not to sue

14  that was **identical** to the one discussed earlier . . . ." *Id.* at 11. RealD has certainly *failed* to offer

15  Microsoft a covenant as broad as Microsoft wanted—but it did not *refuse* to do so, nor did it

16  "expressly" refuse to do so. "Express" means "[c]learly and unmistakably communicated; *stated*

17  with directness and clarity," as distinct from "implied." Express, *Black's Law Dictionary* (12th

18  ed. 2024) (emphasis added). And a "refusal" is a "denial or rejection of something offered or

19  demanded." Refusal, *Black's Law Dictionary* (12th ed. 2024). In not giving Microsoft what

20  Microsoft wanted, RealD neither affirmatively denied nor affirmatively rejected anything; it

21  omitted rather than committed. This distinction is important, because Microsoft characterizes

22  RealD's purported refusal as an affirmative act that was—and is—indicative of an intent to sue.

23          In support of its position, Microsoft cites *Bal Seal Engineering, Inc. v. Nelson Products,*

24  *Inc.*, where a district court held that a patentee's refusal to provide a covenant not to sue with

respect to both the patents-in-suit *and* certain "Related Patents" "add[ed] weight to the existence of an actual controversy." Dkt. No. 155 at 21; *Bal Seal Eng'g v. Nelson Prods., Inc.*, No. C13-1880, 2016 WL 11518601, at *2, 4 (C.D. Cal. Sept. 8, 2016). But that case is distinguishable from the case before the Court. First, unlike Microsoft here, the declaratory-judgment plaintiff in *Bal Seal*—Nelson Products—was actively seeking declaratory judgment on the "Related Patents" for which Bal Seal did not provide a covenant. *See Bal Seal,* 2016 WL 11518601, at *2. In contrast, Microsoft's declaratory-judgment counterclaims here cover only the '985 Patent, which *is* the subject of RealD's Covenant. Second, Bal Seal affirmatively refused to provide a covenant not to sue. Indeed, where "Bal Seal refused to provide a covenant not to sue because it 'could not guarantee' that there would not be any future litigation involving" the patents at issue (*id.* at *4), Microsoft has not provided any real evidence that RealD's motivation behind its failure to provide a covenant stemmed from its own inability to offer such a guarantee. Unlike Bal Seal, RealD has not asserted that it "c[annot] guarantee that there w[ill] not be any future litigation." Where Bal Seal both withheld a promise *and* asserted its inability to even make such a promise, RealD has only withheld the promise. The Court finds significance between Bal Seal's "can't," which implies the inevitability of future litigation, and RealD's "hasn't," which does not. This is especially so where Microsoft is unable to point to any verbal expression from RealD wherein RealD clearly evinced its unequivocal intention to leave open the door to future litigation. Finally, the *Bal Seal* court ultimately found that "a refusal to provide such a covenant alone is not particularly significant." *Bal Seal*, 2016 WL 11518601, at *4 (citing *Organic Seed Growers & Trade Ass'n v. Monsanto Co.*, 718 F.3d 1350, 1357–60 (Fed. Cir. 2013)). If a refusal alone is not particularly significant, then a lack of a refusal is not significant at all.

Microsoft also relies on *Harris Corp. v. Federal Express Corp.*, 670 F. Supp. 2d 1306 (M.D. Fla. 2009). *See* Dkt. No. 155 at 22–23. That case is also distinguishable from the instant case. In *Harris*, five of FedEx's—the declaratory-judgment plaintiff—counterclaims against Harris sought a declaration that certain patents were unenforceable due to Harris's alleged inequitable conduct.[4] *Harris*, 670 F. Supp. 2d at 1308. As the *Harris* court found, "even if [Harris's] Covenant covered FedEx's invalidity and non-infringement counterclaims, it has no effect on Counterclaims 8–12, those based on unenforceability due to inequitable conduct." *Id.* at 1312. Citing a Federal Circuit case in which "jurisdiction over a request for attorney fees prevents a covenant not to sue from stripping a district court of jurisdiction over counterclaims of inequitable conduct," the *Harris* court found that "FedEx ha[d] maintained its request for attorney fees pursuant to 35 U.S.C. § 285 from its initial Answer onward" and, therefore, "pursuant to *Monsanto*, the Court retain[ed] jurisdiction to consider the issue of inequitable conduct for the purpose of awarding attorney's fees, which, if found, would necessarily give the Court jurisdiction to render the [patents at issue] unenforceable." *Id.* at 1312–13 (citing *Monsanto Co. v. Bayer Bioscience N.V.*, 514 F.3d 1229, 1242–43 (Fed. Cir. 2008)).

Here, although Microsoft, like FedEx, has maintained its request for attorney fees under 35 U.S.C. § 285 "from its initial Answer onward" (*see* Dkt. No. 30 (answer) at 50; Dkt. No. 109 at 52), Microsoft has not alleged inequitable conduct against RealD. This is a crucial distinction, because 35 U.S.C. § 285—the attorney fees provision in Title 35—provides that "[t]he court in *exceptional* cases may award reasonable attorney fees to the prevailing party." 35 U.S.C. § 285 (emphasis added). The Federal Circuit has defined "exceptional cases" as "those involving bad

---

[4] "Inequitable conduct is an equitable defense to patent infringement that, if proved, bars enforcement of a patent. This judge-made doctrine evolved from a trio of Supreme Court cases that applied the doctrine of unclean hands to dismiss patent cases involving egregious misconduct." *Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276, 1285 (Fed. Cir. 2011) (citations omitted).

faith litigation or those involving inequitable conduct by the patentee in procuring the patent."

*Brasseler, U.S.A. I, L.P. v. Stryker Sales Corp.*, 267 F.3d 1370, 1380 (Fed. Cir. 2001) (citing

*Cambridge Prods. Ltd. v. Penn Nutrients Inc.*, 962 F.2d 1048, 1050–51 (Fed. Cir. 1992)). Failure

to correctly name inventors can involve bad faith where the named inventors acted in bad faith or

with deceptive intent. *Bd. of Educ. ex rel. Bd. of Trs. of Fla. State Univ. v. Am. Bioscience, Inc.*,

333 F.3d 1330, 1344 (Fed. Cir. 2003). But Microsoft has not identified bad faith or deceptive

intent with respect to the inventorship issue, nor has it alleged bad-faith litigation or inequitable

conduct either in its counterclaim or in its briefing (other than referring to the term "inequitable

conduct" in discussing the facts of *Harris* in its response brief (*see* Dkt. No. 155 at 22–23)).

Therefore the Court cannot, as the *Harris* court did, bootstrap the unenforceability counterclaim

to the request for attorney fees and, consequently, maintain subject-matter jurisdiction.

Finally, Microsoft cites *Cardinal Chemical Co. v. Morton International, Inc.*, 508 U.S. 83

(1993), which Microsoft argues "empowers the Court to exercise jurisdiction to assess the

outstanding questions of validity and enforceability under the Declaratory Judgment Act." Dkt.

No. 155 at 20. But as the Federal Circuit explained in *Benitec*, *Cardinal Chemical* is inapplicable

to a district court's determination of whether it maintains subject-matter jurisdiction over a

declaratory-judgment counterclaim:

> [T]he Supreme Court makes clear at the outset of its opinion that
> "[the] practice [the Federal Circuit's uniform practice of declaring
> the issue of validity moot if it affirms the district court's finding of
> noninfringement], and *the issue before us, therefore concern the
> jurisdiction of an intermediate appellate court—not the
> jurisdiction of either a trial court or this Court.*"

*Benitec*, 495 F.3d at 1345 (alteration in original) (emphasis added) (quoting *Cardinal Chemical*,

508 U.S. at 95). Put another way, "*Cardinal Chemical* . . . does not address whether subsequent

1    events can divest the district court of jurisdiction . . . over [an alleged infringer's]

2    counterclaims." *Id.*

3        The Court notes further that RealD's purported refusal to provide Microsoft with the

4    covenant that Microsoft wanted is not, strictly speaking, an "affirmative" act. The Federal Circuit

5    has distinguished between a patentee's nonprovision of a covenant—or, similarly, its provision

6    of a covenant that a putative infringer deems unsatisfactory—and a patentee's affirmative action

7    toward litigation. *See Prasco*, 537 F.3d at 1341 ("[T]hough a [party's] failure to sign a covenant

8    not to sue is one circumstance to consider in evaluating the totality of the circumstances, it is not

9    sufficient to create an actual controversy—some affirmative actions by the [party] will also

10   generally be necessary."). That is, the universe of affirmative acts does not necessarily include

11   actions not taken. An absence of a declaration that one party will not sue another is not the same

12   as that party's affirmative declaration that it will sue.

13       **2.      "Expanding the Battlefield"**

14       Microsoft asserts that RealD's actions have placed Microsoft under an ever-present threat

15   of litigation. *See* Dkt. No. 155 at 17. But aside from the instant case, in which RealD originally

16   asserted an infringement claim against Microsoft as to the '985 Patent (*see* Dkt. No. 1 ¶¶ 75–

17   109)—a claim that has been voluntarily dismissed and, pursuant to the Covenant, extinguished as

18   a matter of course—it is not apparent from the record that RealD has done anything that places

19   Microsoft under a threat of litigation.

20       RealD asserts that it "has *never* asserted or even threatened to assert [additional patents in

21   the '985 Patent family] against" Microsoft. Dkt. No. 157 at 4. In contrast, Microsoft's position is

22   that "[t]his is a classic situation where actions speak louder than words." Dkt. No. 155 at 14.

23   Under *SanDisk*, actions *do* speak louder than words—but Microsoft does not convincingly

24   identify any meaningful actions on the part of RealD.

1    In making its argument, Microsoft goes to significant lengths to convince the Court that it

2    operates under a cloud of imminent litigation related to the non-'985 members of the '985 Patent

3    Family. For example, Microsoft relies heavily on the facts that it prosecuted an administrative

4    adjudication of the '985 Patent all the way to completion, which it suggests was a costly and

5    time-consuming ordeal. *See* Dkt. No. 155 at 17. This administrative adjudication concerned only

6    the '985 Patent, but Microsoft uses that litigation as a wedge, arguing that RealD's refusal to

7    concede in that matter is necessarily indicative of its intention to litigate additional patent claims

8    against Microsoft. Such an argument, however, elides the fact that it was Microsoft that initiated

9    the administrative adjudication in the first place. *See* Dkt. No. 142-1 at 3. Microsoft argues that

10    "RealD has had every opportunity to provide Microsoft and its customers with *actual patent*

11    *peace* that would extinguish the controversy over RealD's patents, but RealD has refused to do

12    so." Dkt. No. 155 at 14. But such an assertion rings hollow where, Microsoft—not RealD—

13    "filed a Petition for *inter partes* review of claims 1–14 and 16–19 . . . of [the '985 Patent]." Dkt.

14    No. 142-1 at 3. According to Microsoft, after Microsoft initiated the IPR of the '985 Patent,

15    "RealD rejected Microsoft's request for 'complete peace' because RealD is considering future

16    suits." *Id.* at 15. Put another way, Microsoft's position is that RealD's decision to keep playing

17    defense in the administrative action necessarily indicates RealD's clear intention to play offense

18    in the future.

19    This logic is suspect, and the Court is not persuaded that RealD is, in fact, considering

20    future litigation such that Microsoft faces an immediate threat. Microsoft points to its

21    "litigat[ion] of costly IPR proceedings that it offered to terminate if RealD provided a covenant

22    not to sue [that] encompassed the entire '985 Patent family," suggesting that it only prosecuted

23    the IPR because RealD would not offer a sufficiently broad covenant. Dkt. No. 155 at 17. The

24    record does not support such causation.

1    Microsoft initiated the IPR proceedings on June 16, 2023, seeking the Patent Trial and

2    Appeal Board's ("PTAB") administrative invalidation of 18 of the '985 Patent's 19 claims. Dkt.

3    No. 152 at 5; Dkt. No. 142-1 at 3. Microsoft, however, had already asked this Court to invalidate

4    the entirety of the '985 Patent on December 9, 2022—more than six months before it initiated

5    IPR proceedings—when it first pleaded counterclaims in the instant case. *See* Dkt. No. 30 at 49

6    (praying for declaratory judgment that the '985 Patent is invalid). RealD did not drag Microsoft

7    into "costly IPR proceedings," nor did it "expand the battlefield" of this litigation, as Microsoft

8    asserts (Dkt. No. 155 at 9). Rather, Microsoft undertook the costly IPR proceedings—and

9    thereby "expanded the battlefield"—willingly, of its own accord. Further, Microsoft's briefing

10   indicates that negotiations regarding a covenant with RealD took place in December 2023, six

11   months *after* Microsoft's initiation of IPR proceedings. *See* Dkt. No. 155 at 10. Given this

12   timeline, it is implausible for Microsoft to now argue that it only found itself knee-deep in an

13   administrative patent adjudication *because* RealD refused to offer it a covenant of sufficient

14   scope and breadth. Microsoft opened a new, purportedly expensive theater of operations in its

15   conflict with RealD—IPR before the PTAB—yet now seeks to foist responsibility for such

16   litigation onto RealD, because RealD would not sue for peace on terms agreeable only to

17   Microsoft.

18       Microsoft argues further that actual controversy exists, because "RealD identified

19   Lenovo"—a customer of Microsoft—"in filings to this Court and pointed to Lenovo devices as

20   'Accused Products.'" Dkt. No. 155 at 17. Microsoft's argumentation here is conclusory and

21   unconvincing. Although the purported basis for Microsoft's argument here is RealD's "filings to

22   this Court," the only record evidence that Microsoft cites in establishing its position is a court

23   filing authored and submitted by Microsoft. *Id.* at 18 (quoting Dkt. No. 121 (Def.'s renewed

24   motion to stay) at 6–7). Microsoft argues that "RealD's prior submissions to the Court

1   memorialize in writing the independent 'affirmative act[s]' that, under a totality-of-the

2   circumstances inquiry, confer subject matter jurisdiction under the Declaratory Judgment Act."

3   *Id.* (citing *SanDisk*, 480 F.3d at 1381). But Microsoft has not presented the Court with any of

4   these prior submissions here, and the Court will not hunt for them in a record that presently

5   comprises 174 docket entries. *See IOW, LLC v. Breus*, 425 F. Supp. 3d 1175, 1188 (D. Ariz.

6   2019) ("[T]he Court will not search the record for evidence to support [plaintiff's] arguments.").

7   In addressing this piece of Microsoft's argument, RealD points out that Microsoft "does not

8   provide any support or evidence that RealD has made any affirmative threat to Lenovo, and

9   indeed, RealD has made no such threat." Dkt. No. 157 at 10. The Court agrees. Moreover,

10  Microsoft fails to connect the dots to demonstrate how the alleged threats to Lenovo factor into

11  an actual dispute between RealD and Microsoft. Microsoft could have explained as much in its

12  briefing, but it opted not to do so.

13  **3.    Judicial Economy**

14      Microsoft asserts that "[a]llowing the improper inventorship counterclaim to proceed

15  alongside Microsoft's rebuttal to the trade secret allegations will promote judicial economy and

16  overall efficiencies if the same jury who hears the evidence of alleged trade secret

17  misappropriation is also asked to decide" the improper-inventorship issue "at the same time."

18  Dkt. No. 155 at 25. Outside of a federal court, this might be a compelling argument. But subject-

19  matter jurisdiction is a Constitutional requirement in this arena, whereas judicial economy is

20  merely a prudential prerogative. It is well established that the latter cannot trump the former. In

21  reversing a district court's holding that judicial economy militated against the divestiture of that

22  court's subject-matter jurisdiction over a declaratory-judgment counterclaim, the Federal Circuit

23  found that "[t]he district court's argument concerning the expenditure of precious and admittedly

24  overstretched judicial resources is certainly well-taken . . . ." *Dow Jones & Co., Inc. v. Ablaise*

*Ltd.*, 606 F.3d 1338, 1348 (Fed. Cir. 2010). But "[s]ubject matter jurisdiction is a threshold requirement for a court's power to exercise jurisdiction over a case, and no amount of 'prudential reasons' or perceived increases in efficiency, however sound, can empower a federal court to hear a case where there is no extant case or controversy." *Id.*

Similarly here, Microsoft's objective of sparing the Court, the Parties, and the community from "serial trials" is irrelevant where there is no Constitutional basis for subject-matter jurisdiction. The Court therefore rejects Microsoft's position that interests of judicial economy warrant a finding that it has subject-matter jurisdiction over Counterclaim III.

## IV.    CONCLUSION

Accordingly, RealD's motion to dismiss Microsoft's counterclaims (Dkt. No. 152) is GRANTED. Microsoft's counterclaims are DISMISSED.


Dated this 30th day of September, 2025.


Tana Lin
United States District Judge