Hon. Tana Lin

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| REALD SPARK, LLC,<br><br>Plaintiff,<br><br>v.<br><br>MICROSOFT CORPORATION,<br><br>Defendant. | Case No. 2:22-cv-00942-TL<br><br>**PLAINTIFF REALD SPARK, LLC'S MOTION TO EXCLUDE EXPERT OPINIONS AND TESTIMONY OF DEFENDANT MICROSOFT CORPORATION'S EXPERT DR. JOSEPH W. MARKS PH.D.**<br><br>**NOTE ON MOTION CALENDAR:** April 29, 2026 |



MCNAUL EBEL PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-4151
(206) 467-1816

## INTRODUCTION

RealD requests that the Court exclude certain portions of the report of Microsoft's proffered technical expert, Dr. Joseph Marks. RealD makes this request on the grounds that Dr. Marks' report includes numerous "opinions" that comprise improper legal conclusions that simply tell the jury which result to reach. The Ninth Circuit has long held that expert opinions that interpret the law or purport to apply legal standards to the facts should be excluded. And it is exactly these type of opinions that RealD challenges here.

For example, Dr. Marks purports to provide on opinions on such ultimate legal issues as (1) what does or does not meet the statutory definition of a "trade secret," (2) whether Microsoft in fact met the statutory definition for misappropriating such trade secrets, (3) whether RealD sufficiently met the statutory requirement for maintaining the secrecy of the alleged trade secrets, and (4) whether Microsoft in fact breached its confidentiality agreement with RealD. But such expert assertions—incorrectly labeled as "opinions"—are not helpful to the jury as required by Rule 702. Further, such opinions raise the substantial risk of being both confusing to the jury and unfairly prejudicial, thus violating Rule 403 as well. Rather than simply opining on the underlying technical issues and facts, Dr. Marks repeatedly offers his opinions on ultimate legal conclusions, *i.e.*, whether RealD met the legal requirements necessary to sustain its asserted claims for relief. But this invades the province of the Court and jury, making such opinions inadmissible under controlling Ninth Circuit law.

It is well settled that expert evidence is admissible only where it assists the trier of fact in understanding evidence or determining a fact at issue. But such expert evidence is not a vehicle for instructing the jury on the law or dictating the outcome of the case, which is exactly what Dr. Marks attempts here, repeatedly providing opinions as to whether Microsoft's conduct in this case meets the legal standards for proving trade secret misappropriation or breach of contract. Because these opinions relate solely to quintessential legal issues (on which Dr. Marks admits he is not an expert), these opinions must be excluded.

**LEGAL STANDARD**

Under Federal Rule of Evidence 702, expert testimony is admissible only if it will "help the trier of fact to understand the evidence or to determine a fact in issue." But where an expert seeks to offer opinions on purely legal conclusions, this does not satisfy the helpfulness standard imposed under Rule 702. As the Ninth Circuit has noted, "Experts 'interpret and analyze factual evidence. They do not testify about the law.'" *Crow Tribe of Indians v. Racicot*, 87 F.3d 1039, 1045 (9th Cir. 1996) (quoting *United States v. Brodie*, 858 F.2d 492, 496 (9th Cir. 1988)). "The Ninth Circuit has 'repeatedly affirmed' that an expert cannot offer 'an opinion on an ultimate issue of law.'" *O'Neal v. State Farm Fire & Cas. Co*., No. C23-0232-KKE, 2024 WL 4417339, at *2 (W.D. Wash. Oct. 4, 2024) (quoting *United States v. Diaz*, 876 F.3d 1194, 1197 (9th Cir. 2017)). Stated another way, "Courts do not permit expert testimony that 'invades the province of the jury to find facts and that of the court to make ultimate legal conclusions.'" *PacTool Int'l, Ltd. v. Kett Tool Co*., No. C06-5367BHS, 2012 WL 13686, at *5 (W.D. Wash. Jan. 4, 2012) (quoting *Sundance, Inc. v. Demonte Fabricating Ltd*., 550 F.3d 1356, 1364 (Fed. Cir. 2009)). "[I]nstructing the jury as to the applicable law is the distinct and exclusive province of the court." *Nationwide Transp. Fin. v. Cass Info. Sys., Inc.*, 523 F.3d 1051, 1058 (9th Cir. 2008) (quoting *Hangarter v. Provident Life & Accident Ins. Co*., 373 F.3d 998, 1016 (9th Cir. 2004)).

District courts within this Circuit (including this one) have uniformly excluded expert opinions that interpret the law or purport to apply legal standards to the facts. *See, e.g.*, *Kamradt v. Esurance Ins. Co*., No. 2:22-cv-01445-TL, 2024 WL 5356886, at *4–*5 (W.D. Wash. Nov. 1, 2024) (excluding expert opinion as to whether Defendant's conduct violated Washington Code and whether the Defendant breached its contract with Plaintiff); *O'Neal*, 2024 WL 4417339, at *2 (ordering that no experts will be permitted to offer legal conclusions at trial wherein the expert attempted to opine whether an insurer acted in bad faith); *Patrick K. Willis Co., Inc. v. Prime Ins*. Co., No. 2:21-CV-000298-SAB, 2025 WL 1842089, at *2 (E.D. Wash. Mar. 4, 2025) (excluding expert opinions on the reasonableness of defendant's actions); *United States ex rel.*

*Savage v. CH2M Hill Plateau Remediation Co.*, No. 4:14-cv-05002-SMJ, 2021 WL 802086, at *3 (E.D. Wash. Jan. 6, 2021) (excluding expert opinions interpreting the terms of a contract, applying law, and offering legal opinions based on the facts).

As explained further below, Dr. Marks repeatedly purports to provide his legal conclusion regarding which result the jury should reach. Such opinions must be excluded. In addition, Dr. Marks attempts to offer "opinions" that solely comprise his parroting of exculpatory explanations offered to him by other witnesses. Of course, such "opinions" are nothing of the sort. Instead, Dr. Marks' explanations in this regard comprise classic hearsay and should also be excluded on that basis.

## ARGUMENT

### A. Expert "Opinions" Regarding Ultimate Legal Issues Violate both FRE 702 and FRE 403 and Should Be Excluded.

Throughout his report, Dr. Marks repeatedly asserts that Defendant did not satisfy the relevant legal standards governing RealD's claims for relief. But Dr. Marks' assertions in this regard are not proper expert opinions. Instead, Dr. Marks impermissibly attempts to interpret the law and to apply legal standards to the facts. Several examples of Dr. Marks' improper opinions on ultimate legal issues include the following examples:

- "RealD and Dr. Saber have not established nor provided evidence that the Asserted Trade Secrets provided any kind of independent economic value or competitive advantage to RealD. **They have not demonstrated that the alleged information derives independent economic value from not being generally known**. For example, they have not identified evidence of licensing, monetization, competitive differentiation, or revenue attributable to the specific alleged "know-how" or "negative know-how." The evidence of record that I have reviewed leads me to the opposite conclusions that the Asserted Trade Secrets are methods well known to anyone in the field and provide no economic value to RealD."

Declaration of Nathaniel L. Dilger ("Dilger Decl."), Ex. A (Marks Opening Rebuttal Report) at ¶ 18 (emphasis added). In the foregoing excerpt, Dr. Marks asserts that the facts and opinions provided by RealD and Dr. Saber have not met the burden of showing that the alleged



McNAUL EBEL PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-4151
(206) 467-1816

information derives independent economic value from not being generally known. Thus Dr. Marks is attempting to answer the ultimate question rather than addressing the facts from which the jury will determine whether the alleged information derives independent economic benefit, and does so from not being generally known. Further, Dr. Marks offers legal counter-argument by pointing to other elements allegedly not presented by RealD and Dr. Saber, rather than addressing the facts at issue. Further examples of Dr. Marks' impermissible opinions include:

- "Therefore, it is my opinion that Microsoft **did not breach** any agreement with RealD by using or disclosing any confidential information from RealD." *Id.* at ¶ 25 (emphasis added);

- "Based on all of the evidence I have reviewed, it is my opinion that Microsoft never 'used or disclosed RealD's confidential information in order to develop its own products, including the Microsoft Surface Pro X,' **as alleged in RealD's breach of contract claim**." *Id.* at ¶ 331 (emphasis added);

- "My reasons for expressing this opinion are set forth throughout this report. As set forth in detail throughout my report, Microsoft's accused eye gaze correction software does not include any of RealD's Asserted Trade Secrets concepts/methods, nor does Microsoft's training data or collection of the training data. Therefore, it is my opinion that **Microsoft did not breach any agreement with RealD** by using or disclosing any confidential information from RealD." *Id.* at ¶ 332 (emphasis added);

- "Neither Microsoft's decision to use the [REDACTED], nor its work to [REDACTED] (which were different from those at RealD/Skoltech), **demonstrate trade secret misappropriation**." *Id.* at ¶ 225 (emphasis added);

The questions of whether certain actions constitutes an actionable "breach" of an agreement or "trade secret misappropriation" are unquestionably legal conclusions for the jury. *See, e,g,. Crow Tribe of Indians*, 87 F.3d at 1045 ("The interpretation of a contract is an issue of law which this court reviews de novo. . . . . Expert testimony is not proper for issues of law.").

- "Based on my review of the evidence available to me, it is my opinion that the [REDACTED] identified by Mr. Wilk are **not trade secrets** because they cannot be distinguished from Skoltech or public technology." Dilger Decl. Ex. A at ¶ 159 (emphasis added);



McNaul Ebel pllc
600 University Street, Suite 2700
Seattle, Washington 98101-4151
(206) 467-1816

- "As I point out in Section VII.H, many real world examples disclose use of these design choices in combination, which confirms that doing so is **not a trade secret**." *Id.* at ¶ 172 (emphasis added);

- "As discussed above, I understand that a trade secret must derive independent economic value from being a secret. But as I have also explained throughout this report, RealD's Asserted Trade Secrets were all public knowledge. **Thus, because RealD's Asserted Trade Secrets were well known, they cannot derive any economic value for being kept secret**." *Id.* at ¶ 311 (emphasis added);

- "RealD has also failed to demonstrate that it undertook significant research and development efforts **sufficient for a claim of trade secret**." *Id.* at ¶ 314 (emphasis added);

- "I understand that a trade secret owner must take **reasonable** measures to keep their information secret. Even if RealD's trade secrets were not public knowledge, RealD **has not made efforts to protect their purported trade secrets**." *Id.* at ¶ 317 (emphasis added).

Again, the question of whether a specific piece of technology ultimately qualifies as a trade secret is a legal conclusion for the jury. Dr. Marks's discussion of the facts goes too far when it strays from addressing the industry or the facts and attempts to provide an opinion as to an ultimate question.

These opinions should be excluded. Allowing an expert to provide his opinion whether conduct constitutes "misappropriation" or "breach of contract" under the governing legal standards improperly substitutes the expert's judgment for that of the Court and jury. *See Crow Tribe*, 87 F.3d at 1045; *Kamradt*, 2024 WL 5356886, at *8. This is because interpreting the law is the Court's responsibility, and it is the jury's role to apply that law to the facts to reach (or not) the conclusions that Dr. Marks offers here. *See Savage*, 2021 WL 802086, at *3 (an expert opinion on a legal conclusions "not only invade[s] the province of this Court but run[s] the risk of confusing the legal issues and misleading the jury."). Dr. Marks' challenged testimony intrudes on the functions of both the court and jury.

Courts have long held that an expert's opinion on the ultimate legal issues does not assist



McNaul Ebel PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-4151
(206) 467-1816

the trier of fact as required by FRE 702. To the contrary, Courts have routinely rejected as improper expert testimony that "simply parrot[s] or rely on a party's allegations and theories." *Rhine v. Buttigieg*, No. 2:20-cv-01761-RAJ-BAT, 2022 WL 7729817, at *4 (W.D. Wash. Sep. 15, 2022). Experts testify about facts, not law. Experts are to use "scientific, technical, or other specialized knowledge" to analyze facts and present the facts in a form that can be understood so as to assist the trier of fact in understanding evidence. Fed. R. Evid. 702(a). Experts do not explain or apply the law. The trial court serves as a gatekeeper to ensure reliability and relevance. *See Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 594–95 (1993). As established in Section II above, testimony that articulates legal standards, applies law to facts, or draws legal conclusions should be excluded.

In addition, any minimal probative value of testimony like Dr. Marks attempts to offer here is substantially outweighed by the risk of misleading the jury. Jurors may give undue weight to an expert's legal conclusions, mistaking them—rather than the Court—for authoritative statements of the law. This creates precisely the type of prejudice Rule 403 is designed to prevent. For at least the foregoing reasons, Dr. Marks' proffered opinions on ultimate legal issues should be excluded. Such opinions invade the province of the Court and the Jury and thus violate both FRE 702 and FRE 403.

**B. The Court Should Likewise Exclude Dr. Marks' "Opinions" that Simply Parrot Hearsay Testimony From Microsoft Witnesses.**

Dr. Marks' expert report also includes multiple references to exculpatory statements he apparently heard from several Microsoft witnesses, which largely consist of several variants of the theme "they told me they didn't do it." Several examples of this include:

- During my discussion with Drs. Sommerlade and Neophytou, we discussed their understanding of the duties owed to RealD at the conclusion of their employment. Discussion with E. Sommerlade, and A. Neophytou, 2/13/2026. They informed me, consistent with their deposition testimony, that **from the date they were terminated by RealD on October 8, 2018, there was a six month period during which they did not work on eye gaze correction**. Neophytou Dep., 43:8- 44:5;

> 46:19-25 ([REDACTED]); Sommerlade Dep., 52:4-53:10 ([REDACTED]); 54:6-8 ("A. [REDACTED])."

Dilger Decl., Ex. A at ¶ 465.

Beyond the fact that documents produced by Microsoft contradict the statements above, Rule 703 does not allow Dr. Marks to simply repeat hearsay evidence as purported support for his opinions. *See Rhine*, 2022 WL 7729817, at *3 (excluding expert opinion that relied on party's allegations and criticizing that the expert was "merely providing his summary of the evidence and telling the jury what result to reach"); *Loeffel Steel Products, Inc. v. Delta Brands, Inc*., 387 F.Supp.2d 794, 808 (N.D. Ill. 2005) ("Rule 703 . . . was not intended to abolish the hearsay rule and to allow a witness, under the guise of giving expert testimony, to in effect become the mouthpiece of the witnesses on whose statements or opinions the expert purports to base his opinion."). Dr. Marks simply parrots hearsay statements from Drs. Sommerlade and Neophytou without any explanation how this information informed his expert opinions. Such "expert" testimony, however, remains hearsay and should be excluded. *See id.*; *see also United States v. Mejia*, 545 F.3d 179, 197 (2d Cir. 2008) (noting that "the expert must form his own opinions by applying his extensive experience and a reliable methodology to the inadmissible materials" (internal quotation omitted) and finding that allowing expert to merely repeat information gathered from other sources was a violation of Rule 703).

Dr. Marks repeats this error several times; for example:

- "I also discussed with Dr. Pradeep on February 10, 2026, restrictions that Microsoft placed on Drs. Sommerlade and Neophytou on a 6 month "stand down period" when they joined Microsoft on February 4, 2019 as an extra caution. Discussion with V. Pradeep, 2/10/2026; RDSPARK_0010843; Pradeep Dep., 235:1-238:7 ([REDACTED]); 198:8-200:7 ([REDACTED]) 202:2-204:11. Dr. Pradeep explained the steps that Microsoft took to ensure the operational integrity of its activities relating to gaze correction (activities that I discuss throughout this report) by enforcing the following restrictions on Drs. Sommerlade and Neophytou for six months from the date of termination by RealD. I understand that the six month "stand down period" ran from the date of termination by RealD in October 2018 through early in April 2019. Dr. Pradeep indicated that Microsoft enforced the following internal measures to ensure that there was no misuse of RealD proprietary information . . . .



McNAUL EBEL PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-4151
(206) 467-1816

Dilger Decl. Ex. A at ¶¶ 467–68. Again, beyond the contradictory evidence produced by Microsoft (only once compelled to do so) that Drs. Sommerlade and Neophytou began work on eye gaze correction almost immediately after starting at Microsoft, the point here is that Dr. Marks has no percipient knowledge of any such facts, and to the extent that Dr. Marks's report is premised upon such hearsay, any testimony provided by Dr. Marks will also be hearsay, will remain objectionable, and thus should be excluded now. Dr. Marks continues:

- "My understanding is that **Drs. Sommerlade and Neophytou did not provide confidential RealD information to Microsoft at any time**. Neophytou Dep., 237:5-14, 238:18-239:20 ([REDACTED]); Sommerlade Dep., 234:12-235:14 ([REDACTED]); MSFT_00243650 ([REDACTED])."

*Id*. at ¶ 470. Dr. Marks has no percipient knowledge of how Drs. Sommerlade and Neophytou absconded with information and trade secrets from RealD upon their jump to Microsoft for the express purpose of creating an eye gaze correction product, making any assertion that they did not do just that questionable at best. Regardless, it is hearsay. To the extent that Dr. Marks's report is based upon such hearsay, Dr. Marks's deposition testimony and future trial testimony will be hearsay, and the Court should exclude this hearsay now.

Dr. Marks does not explain how such hearsay statements from Microsoft employees properly comprises permissible expert testimony. This is because he cannot. Dr. Marks merely seeks to parrot exculpatory hearsay testimony from Microsoft witnesses. The Court should exclude such "opinions" from Dr. Marks as being improper hearsay.

### C. Dr. Marks's Report Applied the Wrong Legal Standard

Regardless of the foregoing bases for excluding Dr. Marks's report, the opinions challenged herein should be excluded not only because they are based on Dr. Mark's impermissible attempt to apply the law to the facts—but also because he applied the wrong legal standard. *See, e.g.*, *Nationwide Transp. Fin.*, 523 F.3d at 1059 (affirming exclusion of expert opinions that "constituted erroneous statements of law. In such a case, '[e]xpert testimony . . .



MCNAUL EBEL PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-4151
(206) 467-1816

would have been not only superfluous but mischievous.'" (quoting *United States v. Brodie*, 858 F.2d 492, 497 (9th Cir. 1988)). The examples below demonstrate that Dr. Marks relied upon a flawed understanding of the law, rendering all of these opinions unreliable. For example:

- "[I]t is my opinion that the Asserted Trade Secrets are merely general and public knowledge and well known to a POSITA at all relevant times."

*Id.* at ¶ 16. The foregoing assertion by Dr. Marks is problematic because Dr. Marks testified that he applied only his "own judgment" and experience in opining that RealD's asserted trade secrets do not qualify as trade secrets. Indeed, he repeatedly asserted in his opinion that RealD's claimed trade secret know-how and negative know-how were not sufficiently different from publicly available information. *See, e.g.*, *id.* at ¶¶ 24, 159, 226, 228, 229, 238, 245, 247, 252. He further admitted that he was unaware of the applicable legal standards for determining whether alleged trade secret information was sufficiently different from publicly available information so as to qualify as a trade secret. Dilger Decl. Ex B (Marks Deposition Transcript) at 274:10–275:22 ("MR. DILGER: I said do you know whether there is a standard that is applied to determining whether something's a trade secret as compared to what's publicly available, and the witness responded that he did not know. BY MR. DILGER: Q. Was that correct, Dr. Marks? A. Yes. . . . Q. So it's fair to say you did not apply any particular legal standard in determining whether this was sufficiently different from publicly available in your conclusions regarding trade secret status as compared to publicly available stuff? . . .THE WITNESS: I did not apply a legal standard.")). Dr. Marks nevertheless "opines":

- "RealD and Dr. Saber have not established nor provided evidence that the Asserted Trade Secrets provided any kind of **independent economic value or competitive advantage to RealD** . . . . For example, they have not identified evidence of **licensing, monetization, competitive differentiation, or revenue** attributable to the specific alleged 'know-how' or 'negative know-how.'"

Dilger Decl. Ex A at ¶ 18 (emphasis added); *see also id.* at ¶¶ 311–16. During his deposition, Dr. Marks admitted that he does not understand what factors can demonstrate independent economic value and further admitted that such knowledge is "outside of [his] area of expertise." Dilger

Decl. Ex B at 98:5–99:21 ("Q. Are there other factors, other than what you've listed there, that you understand can demonstrate independent economic value? . . . Actual or potential from being -- remaining secret? . . . **THE WITNESS: That's outside of my area of expertise**. BY MR. DILGER: Q. I'm not asking for your area of expertise. I'm asking if you know of other ways that you can show independent economic advantage from remaining a secret other than the ones you've listed there? **A. I do not.**") (emphasis added)). Dr. Marks further appears to misunderstand the case law. *See Lyft, Inc. v. City of Seattle*, 190 Wn.2d 769, 782 (2018). Indeed, under Washington law (for purposes of the WUTSA cause of action), "[i]nformation possesses independent economic value under the UTSA when effort and expense were incurred to develop the information." *Id.*; *see also Ed Nowogroski Ins., Inc. v. Rucker*, 137 Wash. 2d 427, 438 (1999). Dr. Marks's report does not address the foregoing law, nor does Dr. Marks's report address that "Courts also consider the 'novelty and uniqueness' of the information." *Barrett Bus. Servs., Inc. v. Colmenero*, No. 1:22-CV-3122-TOR, 2022 WL 21320240, at *11 (E.D. Wash. Oct. 19, 2022) (quoting *McCallum v. Allstate Prop. & Cas. Ins. Co.*, 149 Wn. App. 412, 425 (2009)). "To be novel, the information must not be readily ascertainable from another source." *Id.* (quotation omitted). Accordingly, even if Dr. Marks were permitted to provide legal opinions (which he is not), his opinion here is not based on the applicable law and thus, is unreliable and should be excluded.

Regardless, legal argument (and especially incorrect legal argument) should not be coming from a non-legal expert. Dr. Marks's flawed understanding of the relevant law renders his opinions flawed, and inherently unreliable, making it unhelpful to the trier of fact. Indeed, allowing an expert to provide testimony to a jury where the expert based his opinion on an incorrect legal standard would almost certainly represent reversible error.

## CONCLUSION

Dr. Marks purports to offer expert opinions that relate only to legal issues that impermissibly invade the province of the Court and jury, and such opinions should be excluded.



McNaul Ebel pllc
600 University Street, Suite 2700
Seattle, Washington 98101-4151
(206) 467-1816

Such opinions are separately excludable under Rule 403 because they both raise the substantial risk of misleading the trier of fact and are unfairly prejudicial. Dr. Marks also improperly parrots hearsay testimony from several Microsoft witness, which "opinions" should also be excluded as improper hearsay.

For at least these reasons, RealD requests that the Court exclude the challenged portions of Dr. Marks testimony.

I certify that this memorandum contains 3,747 words in accordance with the Local Civil Rules.

Dated: April 8, 2026

**McNAUL EBEL PLLC**

*s/Kaleigh N. Boyd*
Kaleigh N. Boyd, WSBA No. 52684
600 University Street, Suite 2700
Seattle, Washington 98101
Phone: (206) 467-181
Fax: (206) 624-5128
kboyd@mcnaul.com

**ONE LLP**

*s/Jennifer A. Mauri*
Jennifer A. Mauri (admitted *Pro Hac Vice*)
Nathaniel L. Dilger (admitted *Pro Hac Vice*)
Taylor C. Foss (admitted *Pro Hac Vice*)
23 Corporate Plaza, Suite 150-105
Newport Beach, CA 92660
Phone: (949) 502-2870
ndilger@onellp.com
tfoss@onellp.com