THE HONORABLE TANA LIN

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF WASHINGTON
AT SEATTLE

REALD SPARK, LLC,

Plaintiff,

v.

MICROSOFT CORPORATION,

Defendant.

Case No. 2:22-cv-00942-TL

PLAINTIFF REALD SPARK, LLC'S OPPOSITION TO DEFENDANT'S MOTION TO EXCLUDE CERTAIN OPINION TESTIMONY OF PLAINTIFF'S EXPERT MICHAEL S. WILK



MCNAUL EBEL PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-4151
(206) 467-1816

**TABLE OF CONTENTS**

**Page(s)**


INTRODUCTION ........ 1

RELEVANT FACTUAL BACKGROUND ........ 2

ARGUMENT ........ 3

A. RealD Does Not Intend For Mr. Wilk to Testify as to Credibility, But Opposes Microsoft's Efforts to Exclude Appropriate Expert Testimony that it Inaccurately Casts as Being Such. ........ 3

B. As an Expert in Software Engineering and Development, Mr. Wilk is Qualified to Opine on Drs. Sommerlade and Neophytou's Work at Microsoft Related to Software Development. ........ 6

C. RealD Does Not Intend For Mr. Wilk to Testify as to Intent, Motivation, or State of Mind, But Opposes Microsoft's Efforts to Exclude Appropriate Expert Testimony that it Inaccurately Casts as Being Such Opinions. ........ 8

D. RealD Does Not Intend For Mr. Wilk To Provide Legal Conclusions Related to Contract Law and Employment Law. ........ 9

E. Mr. Wilk's Discussion and Explanation of Complicated Technical Documents and Testimony, Particularly Where That Discussion is in Support of His Opinions Should Not Be Excluded. ........ 10

CONCLUSION ........ 13




McNaul Ebel pllc
600 University Street, Suite 2700
Seattle, Washington 98101-4151
(206) 467-1816

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Reed v. Lieurance*,
863 F.3d 1196 (9th Cir. 2017) .......... 3, 4, 6

*United States v. Beasley*,
72 F.3d 1518 (11th Cir. 1996) .......... 5

*United States v. Benson*,
941 F.2d 598 (7th Cir. 1991) .......... 5

*United States v. Candoli*,
870 F.2d 496 (9th Cir. 1989) .......... 3

*Volterra Semiconductor Corp. v. Primarion, Inc.*,
2013 WL 6905555 .......... 3, 4

**Statutes**

18 U.S.C. § 1839(5)(b)(ii)(III) .......... 10

**Rules**

Fed. R. Civ. P. 26(a)(2)(b) .......... 10

Fed. R. Evid. 702 .......... 1, 10



MCNAUL EBEL PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-4151
(206) 467-1816

## INTRODUCTION

RealD is and was willing to agree to much of what Microsoft requests via its Motion to Exclude Certain Opinions and Testimony of Plaintiff's Expert Michael S. Wilk, ECF No. 206 ("Motion"). But Microsoft was unwilling to agree to narrow the issues in its Motion, and instead presents it as all-or-nothing. For example, RealD was willing to agree that Mr. Wilk would not testify to:

- "The credibility . . . of certain Microsoft witnesses." *See* Mot. at 1;
- "The intent, motive, and state of mind of certain Microsoft witnesses"; *Id.*;
- Legal conclusions on issues of "contract law and employment law" *see id.*; and
- "Whether [Drs. Sommerlade and Neophytou] [redacted]" *id.* at 1.

This begs the question: if RealD was willing to agree to the foregoing, what relief is Microsoft actually seeking?

The real relief Microsoft seeks is an order excluding Mr. Wilk from opining as to his findings in Microsoft's source code and related files **where those findings contradict testimony provided by Microsoft's witnesses**. Microsoft makes this argument under the guide of seeking to exclude Mr. Wilk from opining on "credibility," "intent," or "legal conclusion" or that he is "mere[ly] recit[ing]" the evidence. *See* Mot. at 6, 7, 9, 11. RealD does not agree that Mr. Wilk—whose expertise as a software engineer Microsoft does not challenge—is prohibited from explaining to the jury what he found in Microsoft's source code and related highly technical documents. The purpose of an expert witness is to "help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702. Here, it is well within the bounds of FRE 702 for Mr. Wilk to explain to the jury what the data in highly technical source code and related documents, such git repositories, commit logs, and project management tools.

It is worth noting that Microsoft seeks to exclude **fifty-one paragraphs** from Mr. Wilk's report, but does not include the full text of a single one of those paragraphs in its Motion.



MCNAUL EBEL PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-4151
(206) 467-1816

Instead, Microsoft provides partial quotes stripped from their context. In contrast, the full text of some of those paragraphs are included herein to provide the Court with information necessary for its consideration of the sweeping exclusions sought by Microsoft.

Based on Microsoft's failure to appropriately meet and confer and the overreaching relief being requested, the Court should deny Microsoft's Motion in whole. In the alternative, RealD respectfully requests that the Court issue a narrow order on the issues not in dispute and deny the rest.

## RELEVANT FACTUAL BACKGROUND

Mr. Wilk is an expert in software engineering with expertise in "consulting, expert, and training services related to software engineering" and performing "source code review." Decl. of Molly A. Terwilliger in Support of Defendant's Motion to Exclude, ECF No. 207 ("Terwilliger Decl."), Ex. 1 at 20; Ex. 2 at 11. Via its Motion, Microsoft does not challenge Mr. Wilk's qualifications as a software engineering expert, nor that he is qualified to perform source code review. Mr. Wilk reviewed Microsoft's source code and related technical documents, such as git repositories, commit logs, and project management tools. Based on his review of these technical documents, as well as additional documents—such as deposition transcripts of Microsoft's fact witnesses that worked on Microsoft's source code—Mr. Wilk formed various opinions as to the contents of those technical documents, including what tasks Microsoft's employees were performing as part of its development efforts for its gaze correction technology and when. But now, in an attempt to prevent the jury from learning that the RealD former employees that Microsoft hired to work on gaze correction began actively working on Microsoft's product [redacted], Microsoft seeks to exclude Mr. Wilk from opining on the meaning of highly technical documents that the average juror would need help to understand.

On March 27, 2026, RealD and Microsoft met and conferred as to the substance of Microsoft's Motion. Mauri Decl. at ¶ 1. However, despite RealD willingness to work through and resolve most of the issued raised by Microsoft, Microsoft was unwilling to narrow the issues



MCNAUL EBEL PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-4151
(206) 467-1816

that would need to be addressed. *Id*. Among other things, RealD indicated that it was willing to agree that Mr. Wilk would not opine as to the credibility of fact witnesses; the intent, motive, or state of mind of fact witnesses; nor ultimate legal conclusions. *Id*. But RealD would not be willing to agree that Mr. Wilk be excluded from testifying as to his findings in Microsoft's source code—including specifically his findings as to what Drs. Sommerlade and Neophytou were doing and when. *Id*. Microsoft did not accept this effort to narrow the issues. *Id*. In effect, Microsoft gave RealD an ultimatum: agree to everything that Microsoft demanded or be forced to spend the time, energy, and cost to address all those issues, even the ones RealD is willing to agree on, via briefing.

## ARGUMENT

### A. RealD Does Not Intend For Mr. Wilk to Testify as to Credibility, But Opposes Microsoft's Efforts to Exclude Appropriate Expert Testimony that it Inaccurately Casts as Being Such.

Experts may compare evidence to fact witness testimony and opine that the facts stated in that testimony are inaccurate. The *Reed v. Lieurance* and *Volterra Semiconductor* and cases **relied on by Microsoft** confirm this. "While '[a]n expert witness is not permitted to testify **specifically** to a witness' credibility,' we know of no rule barring expert testimony because it might indirectly impeach the credibility of an opposing party's testimony." *Reed v. Lieurance*, 863 F.3d 1196, 1209 (9th Cir. 2017) (quoting *United States v. Candoli*, 870 F.2d 496, 506 (9th Cir. 1989)) (emphasis added). "[I]t certainly is *not* the law that any opinion by [expert witness] Dr. Lynde that contradicts the testimony of Volterra's witness is impermissible because it may lead the jury to conclude the witness is not credible." *Volterra Semiconductor Corp. v. Primarion, Inc.*, 2013 WL 6905555, *25 n.10 (emphasis in original). Thus, for example, the *Volterra* court ordered that the expert "will not be permitted on direct examination to express opinions that directly state or strongly imply that Volterra's witnesses are not **credible**. On cross-examination, however, [the expert] may explain why he reached conclusions that are inconsistent with the testimony of Volterra's witnesses if Volterra opens the door to such testimony." *Id*.



McNaul Ebel PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-4151
(206) 467-1816

(emphasis added). Importantly, the opinion that was excluded in *Volterra* was an explicit opinion that the expert believed that "it is not **credible** to believe [fact witness's] more recent inconsistent statement. . . ." *Id.* at 101. Here, it is worth noting that Microsoft's parenthetical citation to *Reed v. Lieurance* inaccurately represents that case's holding. *See* Mot. at 6. Rather than finding the expert report "objectionable" as Microsoft claims, the Ninth Circuit instead **reversed the district court's ruling** that the expert report was "objectionable for commenting on 'the ability or perhaps nonability of others to do their job,' because such comments functioned 'at least indirectly, if not absolutely directly, [to] raise questions about the **credibility** of persons and parties to the lawsuit.'" *Reed*, 863 F.3d at 1209. The Ninth Circuit thus remanded for the district court to reconsider the expert's opinion "under the proper legal standard." *Id.*

Here, Mr. Wilk is not opining on the credibility of Microsoft's witnesses. He does not use the words "credible" or "credibility," nor does he tell the jury who to believe. Instead, he describes certain testimony as being "in fact wrong," factually "inaccurate," a "misrepresent[ion]" of fact, or an "understatement." For example, below are whole paragraphs that Microsoft seeks to exclude, rather than the partial quotes that were included in the Motion:

- "During his deposition, Alexandros Neophytou testified that [redacted] It is my opinion that this testimony from Alexandros Neophytou is in fact wrong or at least misleading related to [redacted]. Instead, it is my opinion that RealD [redacted]" Terwilliger Decl. Ex. 1 at ¶ 181.
- "It is also my opinion that the stated date range of when engineering work for Eye Contact, [redacted] by Alexandros Neophytou is inaccurate." *Id.* at ¶ 364.
- "It is my opinion that Alexandros Neophytou misrepresents when he started


MCNAUL EBEL PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-4151
(206) 467-1816

working on Gaze Correction. I believe Alexandros Neophytou started working on Gaze Correction [redacted]" *Id*. at ¶ 392.

Asserting that a factual statement is inaccurate or wrong is not an opinion on credibility, and it is the very type of opinion that the *Reed* and *Volterra* courts confirmed was permissible. Neither of Microsoft's other cases support the relief it seeks either. Instead, despite being an out of circuit case, they confirm again that an expert may give testimony that "if accepted, will lead the jury to disbelieve a witness." *United States v. Benson*, 941 F.2d 598, 604 (7th Cir. 1991). *Benson* goes on to give a hypothetical that would apply here:

> Suppose, for example, that a defendant in a suit involving an automobile accident testifies that he was travelling 15-20 miles per hour when he entered an intersection and hit plaintiff's car. An accident reconstruction expert testifies, however, that based on his analysis of the angle of deflection, damage to the two cars, his estimate of the point of impact, the two cars' final resting positions, and other factors, that the defendant had to be travelling at least 40 miles per hour when he entered the intersection. That is useful expert testimony because it is based on specialized knowledge that is not within the average layman's ken. If the jury accepted that testimony, it would necessarily disbelieve the defendant **but that is no reason for refusing to admit the testimony**.

*Id*. Finally, *United States v. Beasley*, 72 F.3d 1518, 1528 (11th Cir. 1996) held that "expert **medical testimony** concerning the truthfulness or credibility of a witness is inadmissible" specifically where that testimony was that the witness "was a psychopath who had no conception of the truth." (Emphasis added).

Ultimately, as the moving party, Microsoft bore the burden to support the relief it seeks. The inability to cite to a single case that supports its efforts to exclude Wilk's testimony should be fatal to it Motion. But not only did Microsoft fail to cite any case law that supported its request, the cases actually confirm that the Motion should be denied. Mr. Wilk does not intend to take the stand and say "Microsoft's witnesses are not telling you the truth." But the possibility


MCNAUL EBEL PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-4151
(206) 467-1816

that the jury, with the help of Mr. Wilk's testimony, may reach that conclusion on its own, does not—as much as Microsoft may like it to—make that testimony inadmissible.

**B. As an Expert in Software Engineering and Development, Mr. Wilk is Qualified to Opine on Drs. Sommerlade and Neophytou's Work at Microsoft Related to Software Development.**

Mr. Wilk's expertise in software development is unchallenged by Microsoft. As such, he is qualified to opine as to whether Drs. Sommerlade and Neophytou [redacted]. The *Reed* case confirms this. As the Ninth Circuit explained: "[Plaintiff] is permitted to present expert testimony critical of Defendants' job performance or in conflict with Defendants' testimony as long as the expert's testimony complies with [*Daubert*] and the Federal Rules of Evidence." 863 F.3d at 1209. That is precisely what RealD plans to present here.

Below are some of the opinions on "qualifications" that Microsoft seeks to exclude:

- "It is my opinion that [redacted]." Terwilliger Decl. Ex. 1 at ¶ 387.
- "It is my opinion that former RealD employees, specifically Eric Sommerlade and Alexandros Neophytou, [redacted]" *Id*. at ¶ 388.
- [redacted]



MCNAUL EBEL PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-4151
(206) 467-1816

[redacted] It is my opinion that [redacted] *Id.* at ¶ 391.

None of the foregoing are opinions on the "qualifications" of Drs. Sommerlade or Neophytou. Instead, this is yet another argument that, by disagreeing with Drs. Sommerlade and Neophytou, Mr. Wilk is inherently challenging their qualifications (or credibility, or intent, or etc.). This is still a bridge too far.

Finally, to the extent that Mr. Wilk included a statement about the experience or qualifications of Drs. Sommerlade and Neophytou, RealD was willing to reach agreement to exclude certain phrasing of Mr. Wilk's opinions, but again, not whole cloth exclusions of his opinions. For example, RealD would agree that Mr. Wilk would not testify to the jury that [redacted] *Id.* at ¶ 389. However, the remainder of that paragraph should not be excluded: "Further, an individual with decades of experience and being an expert in their field would not have the need to download source code from their previous employer in order to initiate software development efforts to create a product with the same capabilities created at RealD." *Id.* The former does not clarify that the [redacted] and thus, RealD would agree to either exclude it, or agree that Mr. Wilk must provide clarification that his opinion is limited to software development. However, the latter is an appropriate opinion from an expert as to what a software developer would need to create a product with similar capabilities as RealD's software.



MCNAUL EBEL PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-4151
(206) 467-1816

**C. RealD Does Not Intend For Mr. Wilk to Testify as to Intent, Motivation, or State of Mind, But Opposes Microsoft's Efforts to Exclude Appropriate Expert Testimony that it Inaccurately Casts as Being Such Opinions.**

As Mr. Wilk confirmed at his deposition, neither he nor RealD intend to offer his testimony as to the subjective intent, motive, or state of mind of Microsoft or its fact witnesses. However, Microsoft's Motion again mischaracterizes the opinions it actually seeks to exclude. Microsoft's position is not that Mr. Wilk expressly opines as to intent, motivation, or state of mind, but "implicitly assign[s] intent and motive" to Drs. Sommerlade and Neophytou by presenting opinions that are contrary to Drs. Sommerlade and Neophytou's assertions. Mot. at 8. For example, Microsoft seeks to exclude an opinion that compares the contents in the technical documents to testimony by Dr. Neophytou and states that Dr. Neophytou's testimony is factually "wrong." Terwilliger Decl. Ex. 1 at ¶ 181, and an opinion that a fact testified to by Dr. Neophytou is "inaccurate" based on the documents that Wilk reviewed. *Id.* at ¶ 364. Those paragraphs are provided in Section A above in whole. First, Microsoft challenged Mr. Wilk's opinions as being an attack on "credibility," but now challenges them as being about "intent" and "motivation." An opinion that compares fact witness testimony to data in highly technical documents and determines that the testimony is factually "wrong" is not an opinion on "intent" "motivation" or "state of mind." More fundamentally, there is no suggestion here that this is the only *possible* conclusion from Dr. Wilk's testimony, or that the jury will somehow be improperly swayed by it. The jury can certainly draw the inference that Drs. Sommerlade and Neophytou had a particular motive or intent based on Dr. Wilk's testimony—or they could draw an entirely different inference. But their ability to draw an inference based on his testimony does not make that testimony *ipso facto* inadmissible opinion on motive or intent.

Microsoft also seeks to exclude Mr. Wilk from opining as to his opinions on what the data in Microsoft' project development database show—including that [redacted]


McNaul Ebel PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-4151
(206) 467-1816

[redacted] *Id.* at ¶ 365–66; *see also* Mot. at 8. The project management database tracks the various tasks that were performed over time as part of the development process. "Task" is a technical term for something that "performs an action in a pipeline" "for example, a task can build an app, interact with Azure resources, . . . ." and the project management database is used to create and plan tasks for persons working on the project. Mauri Decl. ¶ 2, Ex. 1. Mr. Wilk's discussion of what the "tasks" in Microsoft's project development database reflect is not an opinion of Microsoft's "state of mind"—instead, it is a discussion of highly technical information to help the trier of fact understand the evidence.

**D. RealD Does Not Intend For Mr. Wilk To Provide Legal Conclusions Related to Contract Law and Employment Law.**

RealD does not intend to have Mr. Wilk opine as to his interpretation of [redacted] Terwilliger Decl. Ex.1 at ¶¶ 361–62, or that [redacted] *id.* at ¶ 363. Despite RealD offering to agree to exclude such testimony during the meet and confer process, Microsoft refused it. Microsoft took the position that it was not seeking to preclude legal conclusions but instead, sought to prevent Mr. Wilk from opining as to the dates that Drs. Sommerlade and Neophytou began performing work on Microsoft's gaze correction technology. *See* Mauri Decl. at ¶ 1. In its Motion, Microsoft re-thinks its approach and recasts its challenges to Mr. Wilk's opinions as being impermissible opinions on credibility (opposed in Section A above) or as "[m]ere recitation" of the contents of the source code (opposed in Section E below).

RealD does not oppose an (unnecessary) order prohibiting Mr. Wilk from opining:

- That Drs. Sommerlade and Neophytou [redacted]



MCNAUL EBEL PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-4151
(206) 467-1816

- That Drs. Sommerlade and Neophytou [redacted]

But again, RealD does oppose Microsoft's efforts to prevent Mr. Wilk from testifying as to his findings in Microsoft's source code and technical documents.

As an aside, Microsoft argues that the employment [redacted] agreements between RealD and Drs. Sommerlade and Neophytou are not at issue in this case because "[t]he only contract issue before the Court concerns the meaning of 'confidential information' in the non-disclosure agreement between Microsoft and RealD." Mot. at 10. While the NDA between Microsoft and RealD is the contract upon which RealD's causes of action are based, the agreements between RealD and Drs. Sommerlade and Neophytou are relevant for several reasons: those agreement support that RealD took reasonable measures to protect its trade secrets, those agreements also evidence that Microsoft knew or should have known that Drs. Sommerlade and Neophytou "owed a duty to the person seeking relief to maintain the secrecy of the trade secret or limit the use of the trade secret," 18 U.S.C. § 1839(5)(b)(ii)(III) (defining misappropriation), and those agreements are relevant to the credibility of Drs. Sommerlade and Neophytou at trial. Accordingly, to the extent that Microsoft intends to use its Reply to attempt to wholly prohibit RealD from addressing the agreements between RealD and Drs. Sommerlade and Neophytou at trial, such effort would be inappropriate.

**E. Mr. Wilk's Discussion and Explanation of Complicated Technical Documents and Testimony, Particularly Where That Discussion is in Support of His Opinions Should Not Be Excluded.**

The purpose of an expert witness is to "help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702. Here, the opinions and testimony from Mr. Wilk that Microsoft seeks to exclude fall squarely within that purpose.

Federal Rule of Civil Procedure 26(a)(2)(b) requires that an expert's written report contain, among other things, the basis for the witness's opinions **and** the facts or data considered by the expert. In compliance with this rule, Mr. Wilk's expert report includes his opinions and



MCNAUL EBEL PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-4151
(206) 467-1816

facts and data that he considered in forming his opinions. For example, Mr. Wilk's report includes a section titled [redacted] wherein the first few paragraphs on that section state Mr. Wilk's opinions that Drs. Sommerlade and Neophytou began working on Microsoft's gaze correction technology [redacted] Terwilliger Decl. Ex. 1 at ¶¶ 361–67. For the rest of that section, Mr. Wilk provides the basis for those opinions and facts and data that he considered in forming those opinions, as well as some explanation of certain technical details to assist a layperson in understanding their import. *Id.* at ¶¶ 368–86. Yet, these latter paragraphs are what Microsoft seeks to exclude by arguing that they are "mere recitations of deposition testimony and source code history." Mot. at 11. In the context of Mr. Wilk's report, it is clear that the content that Microsoft seeks to exclude is not "mere recitations;" instead, Microsoft carved these paragraphs out from the context in which they are discussed in Mr. Wilk's report in order to present them to the Court as not containing any analysis or opinions. This is not the case, and there is no basis at this stage to exclude an expert's discussion of the basis for his opinions. To the extent the Court determines that Mr. Wilk is improperly becoming a mouthpiece for inadmissible hearsay testimony, that is a matter for objection at trial—not motion practice.

Microsoft similarly seeks to exclude paragraphs 393–97 and 399–411 of Mr. Wilk's report based on the same attempt to bar statements that provide the basis for Mr. Wilk's opinions. Mr. Wilk's report contains a section titled [redacted] that spans paragraphs 387–411. The first paragraphs in that section, paragraphs 387–392 contain Mr. Wilk's opinions. Thereafter, paragraphs 393–397 and 399–411 provides the basis for those opinions and facts and data that he considered in forming those opinions.[1]

---

[1] Microsoft does not challenge paragraph 398 as being a "mere recitation" but does challenge it as a being an opinion on credibility, which is addressed in Section A.



MCNAUL EBEL PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-4151
(206) 467-1816

When viewed in the overall scope of its Motion to exclude, Microsoft is asking this Court to exclude Mr. Wilk's opinions—and the supporting basis for those opinions—that are the most harmful to Microsoft. Of course Microsoft does not want a qualified expert in software development to face the jury and tell them that Microsoft's technical documents show 1) that both of RealD's former employees began working on Microsoft's gaze correction technology [redacted], 2) that they relied on RealD's confidential and trade secret information to develop Microsoft's gaze correction technology, and 3) that their actions resulting in a significant reduction in the time Microsoft would have otherwise needed to develop that technology. Microsoft first attacks the opinions that disagree with Drs. Sommerlade and Neophytou's testimony as being an "inherent" opinion on credibility, qualifications, intent, motivation, or state of mind. Then, in case those efforts fail (as they should), Microsoft tries to exclude and thus prohibit Mr. Wilk from testifying on the basis for those opinions. If Mr. Wilk cannot explain to the jury why he reached his opinions, they may not give his opinion the weight it deserves. Regardless, RealD is confident that these are appropriate objections for trial, to the extent that Mr. Wilk strays too far; they are not matters for redlining months before trial begins.

//

//

//

//

//

//

//

//

//

//

//



MCNAUL EBEL PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-4151
(206) 467-1816

## CONCLUSION

For the foregoing reasons, RealD respectfully requests that the Court deny Microsoft's motion.

***

I certify that this memorandum contains 4,098 words, in compliance with the Local Civil Rules

Dated: April 23, 2026

**McNAUL EBEL PLLC**

/s/ Kaleigh N. Boyd
Kaleigh N. Boyd, WSBA No. 52684
600 University Street, Suite 2700
Seattle, Washington 98101
Phone: (206) 467-181
Fax: (206) 624-5128
kboyd@mcnaul.com

**ONE LLP**

*/s/ Jennifer A. Mauri*
Jennifer A. Mauri (admitted *Pro Hac Vice*)
Nathaniel L. Dilger (admitted *Pro Hac Vice*)
Taylor C. Foss (admitted *Pro Hac Vice*)
23 Corporate Plaza, Suite 150-105
Newport Beach, CA 92660
Phone: (949) 502-2870
ndilger@onellp.com
tfoss@onellp.com