THE HONORABLE TANA LIN

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| REALD SPARK, LLC,<br><br>Plaintiff,<br><br>v.<br><br>MICROSOFT CORPORATION,<br><br>Defendant. | Case No. 2:22-cv-00942-TL<br><br>PLAINTIFF REALD SPARK, LLC'S OPPOSITION TO DEFENDANT'S MOTION TO EXCLUDE REASONABLE ROYALTY OPINIONS OF PLAINTIFF'S DAMAGES EXPERT MICHAEL D. LINDSAY |



McNaul Ebel PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-4151
(206) 467-1816

# TABLE OF CONTENTS

**Page(s)**

INTRODUCTION ........................................................................................................ 1

ARGUMENT ............................................................................................................ 2

A. RealD can properly assert trade secret protection to a *combination* of elements, even if *individual* elements may be publicly known. ..........................................2

B. Because Microsoft's Eye Contact technology would not exist but for Microsoft's misappropriation, apportionment does not apply..................................................4

C. It is *Microsoft* that has the burden to establish at trial that apportionment should be applied to reduce RealD's claimed damages. ..................................................9

CONCLUSION........................................................................................................ 10



MCNAUL EBEL PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-4151
(206) 467-1816

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Allscripts Healthcare, LLC v. Andor Health, LLC*,
No. 21-7404-MAK, 2022 WL 3021560 (D. Del. July 29, 2022) ................................ 6, 10

*BladeRoom Grp. Ltd. v. Facebook, Inc.*,
No. 15-01370, 2018 WL 1611835 (N.D. Cal. Apr. 3, 2018)....................................... 6, 10

*Boeing Co. v. Sierracin Corp.*,
108 Wn.2d 38 (1987) ........................................................................................ 3

*c.f. Laser Dynamics, Inc. v. Quanta Computer, Inc.*,
694 F.3d 51 (Fed. Cir. 2012)................................................................................ 5

*Cynosure LLC v. Reveal Lasers LLC*,
No. 22-11176 (D. Mass. July 31, 2024)......................................................... 6, 10

*Daubert v. Merrell Dow Pharms., Inc.*,
509 U.S. 579 (1993).......................................................................................... 2

*Echospan, Inc. v. Medallia, Inc.*,
2025 WL 3046753 (9th Cir. Oct. 31, 2025)............................................................ 7

*Ford v. Versata*,
2018 WL 10733561 (E.D. Mich. July 9, 2018) ....................................................... 9

*Integrated Cash Mgmt. Servs. v. Digital Transactions, Inc.*,
920 F.2d 171 (2d Cir. 1990)........................................................................... 2, 4

*Mishawaka Rubber & Woolen Mfg. Co. v S.S. Kresge Co.*,
316 U.S. 203 (1942)........................................................................................ 5

*MSC Software v. Altair Eng'r, Inc.*,
2015 WL 13273227(E.D. Mich. Nov. 9, 2015) ........................................................ 8



MCNAUL EBEL PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-4151
(206) 467-1816

*Neural Magic v. Meta Platforms, Inc.*,
659 F. Supp. 3d 138 (D. Mass. 2023) ........ 6

*O2 Micro Int'l, Inc. v. Monolithic Power Sys., Inc.*,
399 F. Supp. 2d 1064 (N.D. Cal. 2005) ........ 7, 8

*Sutra, Inc. v. Iceland Exp.*,
No. CIV.A. 04-11360-DPW, 2008 WL 2705580 (D. Mass. July 10, 2008) ........ 3

*Syntel Sterling Best Shores Mauritius Ltd. v. TriZetto Grp.*,
2020 WL 5822058 (S.D.N.Y. Sept. 30, 2020) ........ 6, 10

*Ultimate Timing, L.L.C. v. Simms*,
715 F. Supp. 2d 1195 (W.D. Wash. 2010) ........ 3

*United States v. Nosal*,
844 F.3d 1024 (9th Cir. 2016) ........ 3

**Treatises**

4 Milgrim on Trade Secrets § 15.02(3)(c)(i). ........ 10, 11



McNaul Ebel pllc
600 University Street, Suite 2700
Seattle, Washington 98101-4151
(206) 467-1816

## INTRODUCTION

Two root errors infect Defendant Microsoft's request to exclude the reasonable royalty damages calculations offered by Plaintiff RealD's damages expert, Michael Lindsay.

***First***, Microsoft relies on the faulty argument that Mr. Lindsay was required to determine what elements of the RealD trade secret were publicly available. But in making this argument, Microsoft seemingly misunderstands that even when each individual element of a claimed trade secret might be well known in the relevant field, trade secret protection can nonetheless apply to the combination of those otherwise well-known elements. And this overall combination is exactly what RealD has claimed as the trade secret information Microsoft misappropriated.

***Second***, Microsoft argues that Mr. Lindsey was required to apportion his royalty calculation on a "Trade-Secret-by-Trade-Secret" basis. This argument also fails. There is no black letter rule requiring apportionment here. Indeed, while Microsoft relies heavily on the *O2 Micro* case in support of this argument, it ignores that this case has in fact been rejected by a Ninth Circuit panel decision. Microsoft's other cited authority is likewise inapposite. Here, RealD trade secrets are again ***not*** a group of unrelated individual trade secrets, but instead an overall combination of know-how and negative know-how that together provide the directions and core building blocks for creating a commercially-viable gaze correction technology—a goal that the facts will show Microsoft had repeatedly failed to achieve.

At trial, RealD will present evidence to the jury showing that Microsoft's long history of failures continued ***until***—once armed with RealD's trade secret information—Microsoft was able to speedily develop and launch its own gaze correction technology, "Eye Contact." In short, RealD will present evidence to the jury showing that Microsoft's Eye Contact technology could not and would exist ***but for*** Microsoft's misappropriation of the RealD trade secrets. In situations like this, apportionment simply does not apply. Without the misappropriation of RealD's trade secrets, Microsoft would have no product. If the jury agrees with this conclusion, RealD would be entitled to Microsoft's unjust enrichment received from its tainted Eye Contact

technology.

Microsoft misapplies Rule 702 to improperly remove factual issues from the jury. The Court should deny Microsoft's request. Microsoft remains free to present evidence on each of the alleged defects it sets forth in its motion and to cross-examine Mr. Lindsay and RealD's other witnesses on the facts and assumptions bearing on Lindsay's royalty calculation. But the jury should remain the ultimate arbiter of those factual disputes. *See Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 596 (1993) ("Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence.")

## ARGUMENT

The RealD trade secrets are not disparate individual elements, but are instead an overall ***combination*** of related elements, which together form the valuable trade secrets misappropriated by Microsoft. And while Microsoft argues that the law demands apportionment to calculate reasonable royalty damages for Microsoft's misappropriation of the RealD trade secrets, Microsoft is wrong.

### A. RealD can properly assert trade secret protection to a *combination* of elements, even if *individual* elements may be publicly known.

A trade secret can exist in a combination of characteristics and components, each of which by itself, may be in the public domain. *Integrated Cash Mgmt. Servs. v. Digital Transactions, Inc.*, 920 F.2d 171, 174 (2d Cir. 1990) ("[A] trade secret can exist in a combination of characteristics and components, each of which, by itself, is in the public domain, but the unified process, design and operation of which, in unique combination, affords a competitive advantage and is a protectable secret." (internal quotation omitted)); *see also United States v. Nosal*, 844 F.3d 1024, 1042 (9th Cir. 2016) ("a trade secret may consist of a compilation of data, public sources or a combination of proprietary and public sources" and "[t]he fact that some or all of the components of the trade secret are well-known does not preclude protection." (internal



MCNAUL EBEL PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-4151
(206) 467-1816

quotation omitted)); *Boeing Co. v. Sierracin Corp.*, 108 Wn.2d 38, 50 (1987) ("A trade secrets plaintiff need not prove that every element of an information compilation is unavailable elsewhere."); *Ultimate Timing, L.L.C. v. Simms*, 715 F. Supp. 2d 1195, 1205 (W.D. Wash. 2010) ("Trade secrets 'frequently contain elements that by themselves may be in the public domain but together qualify as trade secrets.'") (quoting *Boeing*, 108 Wn.2d at 50)); *Sutra, Inc. v. Iceland Exp.*, No. CIV.A. 04-11360-DPW, 2008 WL 2705580, at *4 (D. Mass. July 10, 2008). Microsoft's motion to exclude repeatedly ignores this well settled precept of trade secret law, instead treating the elements of the RealD asserted trade secret as individual and distinct trade secrets having no connection to each other. Microsoft is wrong.

The identified RealD trade secrets comprise an ***overall combination*** of several elements, which include both know-how and negative know-how elements. In practice, the trade secret elements identified by RealD together comprise a series of steps that—taken together—teach the correct and quickest path taken by RealD to build its gaze correction technology, i.e., the steps one should take (know-how) and also the missteps that one should avoid (negative know-how). The law recognizes that it matters not that individual elements of the RealD trade secrets may have been publicly known. *Integrated*, 920 F.2d at 174. RealD has asserted (and Microsoft has not successfully rebutted) that the overall combination of elements that make up the RealD trade secret was not in the public domain.

Importantly, RealD will present evidence at trial showing that it is only as an overall combination that the RealD trade secrets reach their true value. And it is this value that Microsoft ultimately misappropriated to allow it—after years of failure—to create a commercially-viable eye gaze correction technology. Mr. Lindsay thus correctly considered RealD's combination trade secrets ***as a whole***, rather as distinct unrelated trade secrets. It is also why Mr. Lindsay's reasonable royalty calculation need not disprove whether any of the individual elements of the RealD trade secrets were individually known. *Id.*



MCNAUL EBEL PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-4151
(206) 467-1816

Microsoft attempts to sew dissonance between Mr. Lindsay's description of the alleged trade secrets as compared to those found in the reports provided by RealD's technical experts, but this attempt fails. For example, Mr. Lindsay describes in his report one element of the alleged RealD trade secret as [redacted] which is consistent with Dr. Saber's description.[1] *Compare* Lindsay Rep. ¶ 37 *with* Saber Rep. ¶¶ 49–50. Other examples include [redacted] *compare* Lindsay Rep. ¶ 37 *with* Saber Rep. ¶¶ 59–63; "know-how resulting from [redacted] *compare* Lindsay Rep. ¶ 37 *with* Saber Rep. ¶¶ 44–45; and "negative know-how that resulted from [redacted] *compare* Lindsay Rep. ¶ 37 with Saber Rep. ¶ 53. Mr. Lindsay also points to "source code that contained and implemented the aforementioned trade secrets," but—contrary to Microsoft's assertion—his citation makes clear this is not as a standalone trade secret, but rather as a source of RealD's asserted trade secret information. *See* Lindsay Rep. ¶ 37. Microsoft fails to explain how Mr. Lindsey's testimony would be in any way confusing to the jury.

**B. Because Microsoft's Eye Contact technology would not exist but for Microsoft's misappropriation, apportionment does not apply.**

Mr. Lindsay's reasonable royalty calculation properly considers the entirety of the commercial Eye Contact product. RealD intends to show at trial that but for Microsoft's misappropriation, the Eye Contact technology would not exist. RealD will show that Microsoft tried for years to implement its own eye gaze technology, but repeatedly failed. It was only after Microsoft's misappropriation that Microsoft was able to quickly develop and commercialize the

---

[1] The Lindsay Report is attached at Exhibit 1 to Microsoft's Motion to Exclude. The Saber Report is attached at Exhibit 3 to Microsoft's Motion to Exclude.



MCNAUL EBEL PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-4151
(206) 467-1816

Eye Contact technology, which RealD will show was based on the building blocks stolen from RealD. Because of this "but-for" relationship, apportionment logically does not apply. *See, e.g.*, *Mishawaka Rubber & Woolen Mfg. Co. v S.S. Kresge Co.*, 316 U.S. 203, 206–07 (1942) (noting, in trademark infringement action, that "[t]he burden is on the infringer[] to prove that his infringement had no cash value in sales made by him"); *c.f. Laser Dynamics, Inc. v. Quanta Computer, Inc.*, 694 F.3d 51, 67 (Fed. Cir. 2012) ("If it can be shown that the patented feature drives the demand for an entire multi-component product, a patentee may be awarded damages as a percentage of revenues or profits attributable to the entire product.").

On the facts here, Microsoft's apportionment case authority is simply inapposite because they do not involve situations where the end product existed only because of the misappropriation; they were instead multi-component products that existed already. In this latter category, the question thus becomes what the stolen trade secret contributed to the already existing design.

Microsoft wrongly suggests there is black letter law requiring apportionment. Instead, the cases provide consistent and relatively simple guidance: that factual questions concerning a defendant's use of the trade secret should be resolved by the jury. *See, e.g.*, *Cynosure LLC v. Reveal Lasers LLC*, No. 22-11176, Dkt. 573 at 7 (D. Mass. July 31, 2024); *Neural Magic v. Meta Platforms, Inc.*, 659 F. Supp. 3d 138, 192–93 (D. Mass. 2023); *Syntel Sterling Best Shores Mauritius Ltd. v. TriZetto Grp.*, 2020 WL 5822058, at *2 (S.D.N.Y. Sept. 30, 2020) (any concern over apportionment of damages among trade secrets "boils down to a dispute over the extent of misappropriation" and "is an issue for cross-examination"); *Allscripts Healthcare, LLC v. Andor Health, LLC*, No. 21-7404-MAK, 2022 WL 3021560, at *18 (D. Del. July 29, 2022) ("While this might constitute grounds for effective cross-examination, it does not render his opinion unreliable because experts need not apportion damages among different trade secrets."); *BladeRoom Grp. Ltd. v. Facebook, Inc.*, No. 15-01370, 2018 WL 1611835, at *6 (N.D. Cal. Apr. 3, 2018).



MCNAUL EBEL PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-4151
(206) 467-1816

Microsoft relies heavily on *O2 Micro Int'l, Inc. v. Monolithic Power Sys., Inc.*, 399 F. Supp. 2d 1064 (N.D. Cal. 2005). But the Ninth Circuit has criticized the reasoning in *O2 Micro* as inapposite based on facts similar to those in this case. For example, in *Echospan, Inc. v. Medallia, Inc.*, 2025 WL 3046753 (9th Cir. Oct. 31, 2025) (unpublished), the jury found one trade secret misappropriated and awarded $11.7 million in unjust enrichment. The district court reversed the jury's verdict on the basis that the plaintiff's expert did not apportion on a trade-secret-by-trade-secret basis. *Id.* *1. The Ninth Circuit reversed; it found that the apportionment principles from *O2 Micro* were irrelevant because that was related to, at most, a complex multi-component scenario and here the jury had been given ample evidence to understand what drove the product success. "In a highly technical context, apportionment testimony may be essential to provide a reasonable basis for a jury to value a defendant's gain. In contrast, EchoSpan's trade secrets could be explained in lay terms, and the jury watched demonstrations and videos to understand how the system and each component operated." *Id.* *2. The reasoning in *Echospan* equally applies here, i.e., RealD's contention is that the Eye Contact technology as a whole would not exist but for Microsoft's misappropriation.

Beyond even the criticism leveled in the *Echospan* case, *O2 Micro* does not apply here for other reasons. First, the exclusion there occurred after the jury verdict, i.e., not pre-trial as Microsoft attempts here. This is important because in *O2 Micro* the plaintiff asserted had multiple distinct trade secrets at issue, rather than a collective combination like exists here. Of the 11 distinct trade secrets asserted by the plaintiff, the jury found 4 infringed. This meant that the expert's opinion, which was based on the misappropriation of all 11 trade secrets, was—in the words of the Court—useless to the jury. 399 F. Supp. 2d at 1072–76. The *O2 Micro* court had specifically warned the plaintiff of the danger of its approach: "In the same pretrial conference, the Court again told O2 Micro that 'you can have that kind of damage evidence if you want to. I'm just warning you that if you do and you don't win on all 12 of your trade secrets, you'll have no damages.'" *Id.* at 1076. On that unique specific record, the court

invalidated the jury verdict for lack of apportionment—a result it would not have reached if O2 Micro had proved misappropriation of all of its trade secrets. The facts here, however, are far different.

Similarly, Microsoft incorrectly attempts to rely on both the *MSC* and *Ford* cases. Neither apply for similar reasons as *O2 Micro*. In *MSC Software v. Altair Eng'r, Inc.*, apportionment was required in a traditional multi-component product where the plaintiff and defendant had competing products in a complex factual situation, and where the plaintiff sought damages for each trade secret's theft and altered its number of trade secrets at issue from 5 to 3. 2015 WL 13273227, at *11, *13 (E.D. Mich. Nov. 9, 2015). Ultimately, the court rejected an expert's opinion where "he did not apportion the value of the **three** trade secrets' contribution to MotionSolve as compared with that of the product's other numerous features" and "[h]e neither demonstrated that the three trade secrets were the sole contributing sources of MotionSolve's generalized qualities of speed, accuracy and robustness, nor did he identify any specific function demanded by customers that was provided by the trade secrets." *Id.* *20. There the plaintiff did not contend that but-for the misappropriation of the entire know-how/negative know-how, the competing product would not exist, which is our situation here.

In the *Ford v. Versata* case, the claim involved patent infringement. 2018 WL 10733561, at *5 (E.D. Mich. July 9, 2018). The plaintiff there did not contend that the infringing product would not have existed but for the infringement, which concededly had non-patented features that fell outside the patent claims. Nor did the plaintiff claim that that the entire market value of the product existed due to the infringement. *Id.* at *5.

In contrast, the *Neural Magic* case is much closer to our facts here. The defendant Meta argued (like Microsoft does here) that the plaintiff's damages opinion was unreliable because of a failure to apportion between each trade secret individually. 659 F. Supp. 3d at 192. The court rejected the argument, finding that sufficient disputed facts existed that should be explored on cross-examination and contrary evidence at trial. Like here, the expert opined that "the maximum



MCNAUL EBEL PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-4151
(206) 467-1816

benefit as I think is clear from my report is when the various trade secrets or ideas are used in combination, but [Scott] was confident that you would get at least a [TEXT REDACTED BY THE COURT] benefit for the indicated trade secrets in my paragraph 91 or what has now become the first 10 of the remaining 12." *Id.* at *193. The same reasoning holds true here.[2]

The Court's order in *Cynosure, LLC v. Reveal Lasers* also provides guidance here. Case 1:22-CV-11176, Dkt. No. 573 (D. Mass. July 31, 2024). The defendant there had sought exclusion because of plaintiff failure to apportion lost profits on a per-trade secret basis. The court denied this request, because the jury could properly weigh, based on the evidence presented, the degree of benefit realized from Defendant's use of the trade secret information. *Id.* at 7. *See also Allscripts*, 2022 WL 3021560, at *18 (court rejected *Daubert* challenge based on lack of apportionment because the question was one for cross-examination and "experts need not apportion damages among different trade secrets."); *Syntel Sterling*, 2020 WL 5822058, *2 (while the damages calculations were made "without [the expert] knowing what alleged trade were misappropriated and how they were used," the Court held this was a fact question: "Syntel's concern – which boils down to a dispute over the extent of misappropriation – is an issue for cross-examination at trial to be considered by the jury."); *see also BladeRoom*, 2018 WL 1611835, at *6 (denying motion to exclude an expert for an alleged failure to apportion among trade secrets because if the chain of factual assumptions are borne out at trial then the opinion is valid).

---

[2] This is also why, as a factual matter, Microsoft tilts at windmills. It is one thing for someone to say that the use of one camera in a multi-component iPhone did not drive all iPhone sales because the iPhone exists anyway and can use different cameras or no cameras (and still exists as a product and has value from all the other features). Those kind of multi-factorial combination products are not at issue here because this is a case where RealD's contention is that the trade secret usage birthed a software that could not even function but for the misappropriation. Put differently, Mr. Lindsay did not say that the entire computer laptop profits are attributable to the software, he focused his analysis only on the software as a distinct issue within the overall device.



McNaul Ebel PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-4151
(206) 467-1816

RealD contends that Microsoft's Eye Contact gaze correction technology exists only because of Microsoft's misappropriation, which RealD intends to establish at trial. Lindsay Deposition ¶¶ 35:2–13, 49:18–25, 50:11–21, 56:6–57:16, 59:4–14. And, of course, that ultimate but-for fact question is for the jury, and Mr. Lindsay relies on technical fact experts and testimony—that will be given the jury too—for that conclusion. Lindsay Dep. ¶¶ 36:10–37:11, 38:2–39:1, 57:8–16 (relying on ultimate fact question from Saber and Wilk). While Microsoft may disagree, this is a classic fact question for resolution by the jury.

Ultimately, Mr. Lindsay is entitled to offer a report that hinges on this "but for" factual conclusion (derived from other experts and percipient fact testimony) that the jury will be given evidence to sustain. The jury is free to agree or reject that but for RealD's trade secrets the software would not work and function; but it is for the jury to decide. If the jury agrees, then it can assess the hypothetical range of negotiation for the software, and Mr. Lindsay offers a range; Microsoft is free to cross-examine that opinion and challenge it.

**C. It is *Microsoft* that has the burden to establish at trial that apportionment should be applied to reduce RealD's claimed damages.**

Because the trade secret here is the unique combination of elements as explained above, Microsoft is playing a sleight of hand with apportionment. Plaintiff's trade secret claim allows full restitution, if the jury agrees with RealD after trial, including cross-examination and argument on instructions. It is then Microsoft's burden to apportion out the alleged profits it claims are not attributable to the misappropriation. "Where a plaintiff seeks to recover the defendant's profits resulting from the misappropriation, its burden is only to establish that the defendant achieved revenues from use of the trade secret. Where plaintiff meets that burden, defendant has the burden of proving permissible deductions from gross revenues." 4 Milgrim on Trade Secrets § 15.02(3)(c)(i). "In addition to expenses, defendant may reduce its potential unjust enrichment liability by establishing that a portion of its value of its product was attributable to something other than the misappropriated trade secret." *Id.* "Trade secret

decisions, at least those under the UTSA, have almost uniformly followed the approach taken in copyright and trademark law, that is, they place the burden of proving permissible deductions from the defendant's profits on the defendant." *Id.* § 15.02(3)(f)(ii)(B).

**CONCLUSION**

Ultimately, Microsoft errs in contending that this is a multi-component case with unrelated, separate trade secrets susceptible to apportionment. My. Lindsay's reasonable royalty calculation (and underlying methodology) properly relies on facts given by technical and percipient witnesses. While these facts may be disputed by Microsoft, those disputes are classic issues for resolution by the jury, rather than exclusion by the Court. The Court should deny Microsoft's motion.

***

I certify that this memorandum contains 3,333 words, in compliance with the Local Civil Rules

Dated: April 23, 2026

**McNAUL EBEL PLLC**

*/s/ Kaleigh N. Boyd*
Kaleigh N. Boyd, WSBA No. 52684
600 University Street, Suite 2700
Seattle, Washington 98101
Phone: (206) 467-181
Fax: (206) 624-5128
kboyd@mcnaul.com

**ONE LLP**

*/s/ Jennifer A. Mauri*
Jennifer A. Mauri (admitted *Pro Hac Vice*)
Nathaniel L. Dilger (admitted *Pro Hac Vice*)
Taylor C. Foss (admitted *Pro Hac Vice*)
23 Corporate Plaza, Suite 150-105
Newport Beach, CA 92660
Phone: (949) 502-2870
ndilger@onellp.com
tfoss@onellp.com