THE HONORABLE TANA LIN

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| REALD SPARK, LLC,<br><br>Plaintiff,<br><br>v.<br><br>MICROSOFT CORPORATION,<br><br>Defendant. | Case No. 2:22-cv-00942-TL<br><br>PLAINTIFF REALD SPARK, LLC'S OPPOSITION TO MICROSOFT'S OMNIBUS MOTION FOR SUMMARY JUDGMENT |



MCNAUL EBEL PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-4151
(206) 467-1816

# TABLE OF CONTENTS

**Page(s)**


INTRODUCTION ........................................ 1

LEGAL STANDARD ........................................ 5

ARGUMENT ........................................ 9

A. Whether RealD's Asserted Trade Secrets are Reasonably Ascertainable Is a Question of Genuine Disputed Fact. ........................................ 9

1. What Information Can Be a Trade Secret is Broad and Includes Methods, Compilations, and Know-How. ........................................ 9

2. Whether RealD's Information Qualifies as a Trade Secret is a Factual Question. ........................................ 11

B. RealD's Evidence Establishes Independent Economic Value. ........................................ 20

C. RealD Was Damaged as A Result of Microsoft's Breach of the NDA. ........................................ 26

1. RealD Alleges Breach Arising from "Use" Not Only "Disclosure." ........................................ 27

2. RealD Presented Evidence of the Fact of Damage. ........................................ 27

3. Microsoft Conflates the Fact of Damage with The Measure of Damage, the Latter being a Question of Fact. ........................................ 29

CONCLUSION ........................................ 30




MCNAUL EBEL PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-4151
(206) 467-1816

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Altavion, Inc. v. Konica Minolta Sys. Lab., Inc.*,
226 Cal. App. 4th 26 (2014) .......... 25

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986) .......... 5

*Bladeroom Grp. Ltd. v. Facebook, Inc.*,
No. 5:15-cv-01370-EJD, 2018 WL 514923 (N.D. Cal. Jan. 23, 2018) .......... 10, 20

*Boeing Co. v. Sierracin Corp.*,
108 Wn.2d 38 (1987) .......... 10, 11, 18

*C 1031 Props., Inc. v. First Am. Title Ins. Co.*,
175 Wn. App. 27 (2013) .......... 28, 30

*Cal. Int'l Chem. Co. v. Sister H. Corp.*,
NOS. 97-15233, 97-16858, 97-16997, 1999 WL 50891 (9th Cir. Jan. 19, 1999) .......... 20, 21

*Calence, LLC v. Dimension Data Holdings*,
No. C06-0262RSM, 2007 WL 1526349 (W.D. Wash. May 23, 2007) .......... 12

*Chung v. Intellectsoft Grp. Corp.*,
No. 21-cv-03074-JST, 2024 WL 813445 (N.D. Cal. Feb. 12, 2024) .......... 24

*Cisco Sys. v. Wilson Chung*,
462 F. Supp. 3d 1024 (N.D. Cal. 2020) .......... 24

*Columbia Park Golf Course, Inc. v. City of Kennewick*,
160 Wn. App. 66 (2001) .......... 30

*Cosmopolitan Imports, LLC v. Pac. Funds, LLC,*
145 Wn. App. 1047 (2008) (unpublished) .......... 17, 18



MCNAUL EBEL PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-4151
(206) 467-1816

*Cosmopolitan Imps., LLC v. Pac. Funds, LLC*,
No. 59896-1-I, 2008 WL 2791983 (Wn. App. July 21, 2008) ........................................ 19

*Courtesy Temp. Serv. v. Camacho*,
222 Cal. App. 3d 1278 (1990) ........................................................................................ 21

*Dunseath v. Hallauer*,
41 Wn.2d 895 (1953) ...................................................................................................... 27

*Eagle Harbor Holdings, Inc. v. Ford Motor Co.*,
No. C11-5503 BHS, 2015 WL 574911 (W.D. Wash. Feb. 11, 2015) ................. 11, 16, 17

*Eagle Point Condo. Owners Ass'n v. Coy*,
102 Wn. App. 697 (2000) ............................................................................................... 28

*Ed Nowogroski Ins., Inc. v. Rucker*,
137 Wn.2d 427 (1999) ........................................................................................ 11, 20, 21

*Ford v. Trendwest Resorts, Inc.*,
146 Wn.2d 146 (2002) .................................................................................................... 28

*Forro Precision, Inc. v. Int'l Bus. Machines Corp.*,
673 F.2d 1045 (9th Cir. 1982) .......................................................................................... 9

*Genasys Inc. v. Vector Acoustics, Ltd. Liab. Co.*,
No. 22-CV-152 TWR (BLM), 2023 WL 4414222 (S.D. Cal. July 7, 2023) .................... 24

*Genentech, Inc. v. JHL Biotech, Inc.*,
No. C 18-06582 WHA, 2019 WL 1045911 (N.D. Cal. Mar. 1, 2019) ............................ 10

*Hanson v. MGM Resorts, Int'l*,
Case No. C16-1661-RAJ, 2017 WL 3085694 (W.D. Wash. July 20, 2017) .................... 19

*Hayes-Albion Corp. v. Kuberski*,
364 N.W.2d 609 (Mich. 1984)........................................................................................ 10

*Inteliclear, LLC v. ETC Glob. Holdings, Inc.*,
978 F.3d 653 (9th Cir. 2020) ...................................................................................... 9, 15



MCNAUL EBEL PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-4151
(206) 467-1816

*Jacob's Meadow Owners Ass'n v. Plateau 44 II, LLC,*
139 Wn. App. 743 (2007) .... 30

*JAS Supply, Inc. v. Radiant Customs Servs., Inc.*,
Case No. 2:21-cv-01015-TL, 2024 WL 2154422 (W.D. Wash. May 14, 2024) .... 19

*Kewanee Oil Co. v. Bicron Corp.*,
416 U.S. 470 (1974) .... 20

*Lyft, Inc. v. City of Seattle*,
190 Wn.2d 769 (2018) .... 20

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
475 U.S. 574 (1986) .... 5

*McCallum v. Allstate Prop. & Cas. Ins. Co.*,
149 Wn. App. 412 (2009) .... 10

*MicroStrategy Inc. v. Bus. Objects*, S.A.,
331 F. Supp. 2d 396 (E.D. Va. 2004) .... 20

*Modumetal, Inc. v. Xtalic Corp.*,
4 Wn. App. 2d 810 (2018) .... 16

*Myers v. State*,
152 Wn. App. 823 (2009) .... 27

*Nat'l Football Scouting, Inc. v. Rang*,
912 F. Supp. 2d 985 (W.D. Wash. 2012) .... 21

*Nix v. Boddy*, No. C18-992RSL,
2019 WL 6131289 (W.D. Wash. Nov. 19, 2019) .... 11, 16

*Nw. Indep. Forest Mfrs. v. Dep't of Lab. & Indus.*,
78 Wn. App. 707 (1995) .... 27

*P.E.L. v. Premera Blue Cross*,
2. Wn.3d 460 (2023) .... 27

*Precision Moulding & Frame, Inc. v. Simpson Door Co.*,
77 Wn. App. 20 (1995) .......... 18

*Promedev, LLC v. Wilson*,
No. C22-1063JLR, 2023 WL 2330377 (W.D. Wash. Mar. 2, 2023).......... 20

*Providence Title Co. v. Truly Title, Inc.*,
732 F. Supp. 3d 656 (E.D. Tex. 2024).......... 24

*Ruckelshaus v. Monsanto Co.*,
467 U.S. 986 (1984).......... 23

*Servo Corp. of Am. v. Gen. Elec. Co.*,
393 F.2d 551 (4th Cir. 1968) .......... 10

*Silver Fern Chem., Inc. v. Lyons*,
No. 2:23-cv-00775-TL, 2025 WL 3240448 (W.D. Wash. Nov. 20, 2025) .......... 21, 30

*Solarpark Korea Co., Ltd. v. Solaria Corp.*,
No. 23-cv-01181-AMO, 2023 WL 4983159 (N.D. Cal. Aug. 2, 2023) .......... 10

*Spokane Rsch. & Def. Fund v. City of Spokane*,
96 Wn. App. 568 (1999) .......... 19, 20

*Spring Design, Inc. v. Barnesandnoble.com, LLC*,
No. C 09-05185 JW, 2010 WL 5422556 (N.D. Cal. Dec. 27, 2010).......... 25

*Synopsys, Inc. v. Risk Based Sec., Inc.*,
70 F.4th 759 (4th Cir. 2023) .......... 24

*Transpac Dev., Inc. v. Young Suk Oh*,
132 Wn. App. 212 (2006) .......... 28

*Ultimate Timing, L.L.C. v. Simms*,
715 F. Supp. 2d 1195 (W.D. Wash. 2010).......... 11, 16

*United States v. Diebold, Inc.*,
369 U.S. 654 (1962).......... 5



MCNAUL EBEL PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-4151
(206) 467-1816

*United States v. Nosal*,
844 F.3d 1024 (9th Cir. 2016) .......... 10, 11

*Whyte v. Schlage Lock Co.*,
101 Cal. App. 4th 1443 (2002) .......... 10

*Workplace Techs. Research, Inc. v. Project Mgmt. Inst., Inc.*,
No. 18cv1927 JM (MSB), 2021 WL 4895977 (S.D. Cal. Oct. 20, 2021) .......... 25

*Yield Dynamics, Inc. v. TEA Sys. Corp.*,
154 Cal. App. 4th 547, (2007) .......... 24

*Zunum Aero., Inc. v. Boeing Co.*,
No. C21-0896JLR, 2024 WL 1803118 (W.D. Wash. Apr. 22, 2024) .......... 11, 20

**Statutes**

18 U.S.C. § 1839(3) .......... 9

RCW 19.108.010(4) .......... 9

**Other Authorities**

Restatement (Third) of Unfair Competition § 39 cmt.f (1995) .......... 10

Restatement (Third) of Unfair Competition, § 39 cmt.d (1995) .......... 9

Wash. Pattern Jury Instruction 351.05 .......... 25

**Rules**

Fed. R. Civ. P. 56(a) .......... 5

Wash. GR 14.1 .......... 18

**Treatises**

1-1 Milgrim on Trade Secrets § 1.09 (2017) .......... 10



MCNAUL EBEL PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-4151
(206) 467-1816

## INTRODUCTION

There are facts in this case that are indisputable—but these are not the facts upon which Microsoft moves for summary judgment. Microsoft moves on three grounds, each of which are marred by genuine disputes of material fact. Before turning to those disputed facts, RealD provides a brief discussion of the undisputed facts that Microsoft ignores:

1. Dr. Eric Sommerlade was a RealD employee for many years and was the lead scientist working on the development of RealD's Socialeyes technology. *See* Decl. of Jennifer A. Mauri ("Mauri Decl.") Ex. 1 at 22–23, 36–37, 42.
2. Dr. Alexandros Neophytou was a RealD employee that worked on the development of RealD's Socialeyes technology. *See id*. Ex. 2 at 11, 14.
3. Dr. Sommerlade was involved in RealD's negotiations for Microsoft to obtain a license to RealD's technology, including with Microsoft employee, Joonseok Oh. Those negotiations began no later than July 2016 when the parties entered into a NDA allowing for the protected exchange of information relating to RealD's technology. *See id*. Ex. 3; *see also* Decl. Of Molly A. Terwilliger (ECF No. 210) ("Terwilliger Decl.") at Ex. 53.
4. RealD's technology worked and was implementable. *See* Mauri Decl. Ex. 5 at 65:1-22; *see also id.* Ex. 11 at MSFT_00010663.
5. While still engaged in licensing negotiations, in October 2018, RealD chose to cease **additional** development of improvements to its technology and to lay-off Dr. Sommerlade following a three-month notice period that would have ended in January 2019. *See id*. Ex. 5 at 65-66; *see also id.* Ex. 6.
6. Shortly after being given notice that he would be laid off, on October 19, 2018, Dr. Sommerlade met with Microsoft regarding [redacted] *Id*. Ex. 4.
7. The day after that meeting, **Dr. Sommerlade exported the entirety of the source code and key files related to Socialeyes**. Because he was still employed by RealD, Dr.


MCNAUL EBEL PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-4151
(206) 467-1816

Sommerlade still possessed his RealD provided laptop. *Id.* Exs. 7, 8; *see also id.* Ex. 1 at 217–18.

8. On November 7, 2018, Dr. Sommerlade again contacted Microsoft with the email subject matter [redacted] and stated that [redacted] *Id.* Ex. 9.

9. On November 13, 2018, after becoming aware of Dr. Sommerlade's communications to Microsoft, RealD terminated his employment. **Dr. Sommerlade refused to return his laptop with RealD's source code and files upon his termination**. *Id.* at Ex. 10; *see also id.* Ex. 1 at 217–18.

10. Dr. Sommerlade admitted that he reached out to Microsoft because: [redacted] *Id.* Ex. 1 at 51.

11. Internal Microsoft documents admit that RealD's technology was the [redacted] and that [redacted] *Id.* Ex. 11 at MSFT_00010663.

12. As of no later than January 2, 2019, Microsoft hired Dr. Sommerlade; he emailed Mr. Oh [redacted] *Id.* Ex. 12 at MSFT_00010005.

13. On January 2, 2019, Microsoft was engaged in internal discussions [redacted] *Id.* Ex. 11 at MSFT_00010659.



McNaul Ebel PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-4151
(206) 467-1816

14. Microsoft also hired Dr. Neophytou, and he and Dr. Sommerlade began working at Microsoft on February 4, 2019. *Id.* Ex. 1 at 48, Ex. 2 at 42.

15. RealD's expert, Mr. Wilk, found evidence that by no later than [redacted] both Drs. Sommerlade and Neophytou began working on gaze correction for Microsoft. *Id.*, Ex. 13 at ¶¶ 368–70.

16. Dr. Neophytou admitted [redacted] *Id.* Ex. 2 at 57–58.

17. After reviewing Microsoft's source code during discovery, Mr. Wilk opined that [redacted] Terwilliger Decl. Ex. 5 at ¶ 218.

18. On March 8, 2019—two and a half years after the parties began discussing and negotiating a license for RealD's technology, but a mere month after Drs. Sommerlade and Neophytou started working for Microsoft—Microsoft ended licensing talks. Mauri Decl. Ex. 14.

19. In late March 2019, well after Drs. Sommerlade and Neophytou began building Microsoft's gaze correction technology, Dr. Sommerlade finally returned his RealD laptop. But he had destroyed all data on the laptop. *Id.* Ex. 1 at 217–18.

20. On October 19, 2019, Microsoft announced and demonstrated its gaze correction product publicly. *See* https://www.youtube.com/watch?v=dmaioTs0NH8 at 50–53 min. mark (last visited on April 24, 2026).

21. RealD spent over five years and [redacted] dollars developing its gaze correction technology. In contrast, once it hired Drs. Sommerlade and Neophytou (with the ill-gotten copy of RealD's source code and files), Microsoft debuted its technology a mere eight months later.

Perhaps because these facts are so damning to Microsoft's claim that it did nothing

wrong, Microsoft is left to move for summary judgment based on an argument that RealD's trade secrets are not really trade secrets because they were "reasonably ascertainable" at the time—not because Microsoft did not utilize them. But there are significant questions of material fact as to whether RealD's trade secrets were readily ascertainable, including conflicting expert opinions, such that summary judgment is inappropriate.

Microsoft then pivots to another argument: RealD's trade secrets have no independent economic value—but Microsoft fails to apply the correct standard and instead creates its own strawman standard. Under the appropriate standard, RealD presents significant evidence that its trade secrets have independent economic value and thus, at best, there is a genuine question of material fact. The most obvious refutation of Microsoft's arguments is the simple truth that Microsoft, one of the largest tech companies in the world with virtually endless resources to develop a gaze correction solution, was unable to do so after years of efforts; instead, it hired RealD's scientists to build Microsoft's product from scratch. **If RealD's trade secrets were truly reasonably ascertainable and devoid of independent economic value, Microsoft could and should have developed its product independently, rather than spending the time and resources on three years of due diligence and license negotiation with RealD before ultimately copying it from RealD**.

Finally, Microsoft moves for summary judgment on RealD's breach of contract cause of action, but again does so by creating a strawman. The NDA forbade Microsoft from either **disclosing** RealD's confidential information to third-parties **or using** it for purposes outside of the parties' business relationship with each other. Microsoft ignores its "use" of RealD's confidential information and instead argues that RealD has failed to establish the quantifiable amount of damages based on "disclos[ure]" to third parties. Microsoft cannot meet its burden on its Motion by omitting discussion of the main term of the NDA that Microsoft is alleged to have breached. Further, Microsoft ignores RealD's evidence of the fact of damages arising from "use" and, again, relies on a strawman argument that RealD was required to prove the amount of



MCNAUL EBEL PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-4151
(206) 467-1816

its **quantifiable damages arising from disclosure**. This argument is further flawed because it conflates the fact of damages with the quantifiable measure of damages. Microsoft does not challenge the fact of damage arising from its wrongful "use," and instead Microsoft challenges RealD's expert's damages **theories**. RealD is not required to use an expert to present its breach of contract damages to the jury. Based on a strawman argument and the conflation of the fact verses the measure of damages, Microsoft asks this Court to strip RealD of its right to present its damages calculations to the jury—to whom the Constitution consigns the ultimate power to weigh the evidence and determine RealD's damages. The Court should not do so.

## LEGAL STANDARD

Summary judgment may be granted only if Microsoft meets its burden to establish that there is "no genuine dispute as to any material fact" as to any of the grounds on which it moves. Fed. R. Civ. P. 56(a). A genuine dispute exists if RealD presents evidence from which a reasonable jury, viewing the evidence in the light most favorable to RealD, could resolve the material issue in RealD's favor. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986). The court must draw all reasonable inferences in favor of RealD. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)). When the facts and reasonable inferences are viewed in the light most favorable to RealD, if there is a single genuine disputed question of fact, summary judgment is inappropriate. Here, there are genuine disputed questions of fact that prohibit summary judgment on each of the grounds sought.

## RELEVANT FACTUAL BACKGROUND[1]

RealD's trade secrets are [redacted]

[1] The facts in the Introduction are incorporated by reference.



MCNAUL EBEL PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-4151
(206) 467-1816

[redacted]

RealD is not asserting that each of the foregoing are, in and of themselves, a trade secret. Rather, RealD's trade secrets and confidential information are the acquired know-how and negative know-how that resulted in selecting these specific steps as being the ideal options out of many potential options, and the compilation as a whole.

By way of analogy, Coca-Cola's use of carbonated water to make a cola is not a trade secret. Nor the inclusion of sugar, natural flavors, caramel color, phosphoric acid, or caffeine. But the specific compilation of these things is a trade secret, even though the inclusion of each is known. Microsoft's challenges are akin to attacking the trade secret status of Coca-Cola's formula by asserting that its ingredients are publicly known. But that is not what Coca-Cola claims is a trade secret, nor is it what RealD claims here. Again, RealD spent years and significant monetary investment to select and perfect the specific compilation of steps upon which its working gaze correction technology was built. These are the trade secrets that Microsoft misappropriated.



MCNAUL EBEL PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-4151
(206) 467-1816

## STATEMENT OF DISPUTED MATERIAL FACTS

Through extensive efforts spanning more than five years and requiring thousands of man-hours of work, RealD created a working gaze correction technology:

[redacted]



McNaul Ebel PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-4151
(206) 467-1816

[redacted]

[redacted]

[redacted] Terwilliger Ex. 1 at 64–65.

Because each of the foregoing are foundational aspects built into RealD's source code, the know-how to select each of the above is reflected in RealD's source code and was included in the source code and files exported and taken by Dr. Sommerlade and kept by Dr. Sommerlade for the first months he worked for Microsoft. *See, e.g.*, Terwilliger Decl. Ex. 5 ¶¶ 236, 249, 261,



MCNAUL EBEL PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-4151
(206) 467-1816

274, 286, 300, 313, 330, 342. Dr. Saber[2] opined that [redacted] *Id.* Ex. 3 ¶¶ 52, 58; Mauri Decl. Ex. 23 ¶ 48. Dr. Saber opines that Microsoft [redacted] Terwilliger Decl. Ex. 3 at Section VIII.A.

## ARGUMENT

### A. Whether RealD's Asserted Trade Secrets are Reasonably Ascertainable Is a Question of Genuine Disputed Fact.

#### 1. What Information Can Be a Trade Secret is Broad and Includes Methods, Compilations, and Know-How.

RealD's trade secrets are [redacted] It is well-established that this type of information may qualify as a trade secret. "[T]he definition of what may considered a 'trade secret' is broad." *Inteliclear, LLC v. ETC Glob. Holdings, Inc.*, 978 F.3d 653, 657 (9th Cir. 2020) (quoting *Forro Precision, Inc. v. Int'l Bus. Machines Corp.*, 673 F.2d 1045, 1057 (9th Cir. 1982)). The kind of information that can be a trade secret is virtually unlimited. Both the DTSA and WUTSA explicitly recognize that a method, technique, or process can be a trade secret. *See* 18 U.S.C. § 1839(3); RCW 19.108.010(4). Further, "[a] trade secret can relate to technical matters such as the composition or design of a product, a method of manufacture, **or the know-how necessary to perform a particular operation or service**." Restatement (Third) of Unfair Competition, § 39 cmt.d (1995) (emphasis added). "'Know-how' is 'the informational and experiential expertise related to practical application of specifics, such as patented or unpatented inventions, formulas or

---

[2] Microsoft has not challenged Dr. Saber's opinions nor the aspects of Mr. Wilk's opinions that provide his findings as to the contents of Microsoft's source code and related files.

processes'" and is a recognized type of trade secret information. *Bladeroom Grp. Ltd. v. Facebook, Inc.*, No. 5:15-cv-01370-EJD, 2018 WL 514923, at *5 (N.D. Cal. Jan. 23, 2018) (quoting 1-1 Milgrim on Trade Secrets § 1.09 (2017); *Solarpark Korea Co., Ltd. v. Solaria Corp.*, No. 23-cv-01181-AMO, 2023 WL 4983159, at *4 (N.D. Cal. Aug. 2, 2023) ("courts have determined that '[t]echnical "know-how" is the quintessential trade secret,' and it is accordingly often granted trade secret protection.") (quoting *Whyte v. Schlage Lock Co.*, 101 Cal. App. 4th 1443, 1456 (2002)); *Genentech, Inc. v. JHL Biotech, Inc.*, No. C 18-06582 WHA, 2019 WL 1045911, at *11 (N.D. Cal. Mar. 1, 2019) (recognizing negative know-how as trade secret). Washington law (which applies to the cause of action for violation of the WUTSA) confirms that certain know-how and negative know-how can be protected by trade secret. "A trade secret can be information about the results of lengthy and expensive research that proves a certain process will not work." *McCallum v. Allstate Prop. & Cas. Ins. Co.*, 149 Wn. App. 412, 424 (2009).

Compilations are also recognized types of trade secrets—including where "some or all of the components of the trade secret are well-known." *United States v. Nosal*, 844 F.3d 1024, 1042 (9th Cir. 2016) (quoting Restatement (Third) of Unfair Competition § 39 cmt.f (1995)). "A trade secret may consist of a compilation of data, public sources or a combination of proprietary and public sources" and "[t]he fact that some or all of the components of the trade secret are well-known does not preclude protection." *Id.* (quoting Restatement (Third) of Unfair Competition § 39 cmt.f (1995)). "It is well recognized that it is the secrecy of the claimed trade secret **as a whole** that is determinative." *Id.* (emphasis added). Indeed, "a trade secrets plaintiff need not prove that every element of an information compilation is unavailable elsewhere." *Boeing Co. v. Sierracin Corp.*, 108 Wn.2d 38, 50 (1987) (citing *Hayes-Albion Corp. v. Kuberski*, 364 N.W.2d 609 (Mich. 1984)). "Such a burden would be insurmountable since trade secrets frequently contain elements that by themselves may be in the public domain but together qualify as trade secrets." *Id.* (citing *Servo Corp. of Am. v. Gen. Elec. Co.*, 393 F.2d 551 (4th Cir. 1968)). In



MCNAUL EBEL PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-4151
(206) 467-1816

*Nosal* and *Boeing*, the courts held that the at-issue compilations of information were trade secrets, despite containing publicly available information. *Nosal*, 844 F.3d at 1042; *Boeing*, 108 Wn.2d at 50. Courts in this district hold similarly. *See, e.g.*, *Ultimate Timing, L.L.C. v. Simms*, 715 F. Supp. 2d 1195, 1205 (W.D. Wash. 2010).

RealD's [redacted] qualifies as the type of information that is a protectable trade secret.

### 2. Whether RealD's Information Qualifies as a Trade Secret is a Factual Question.

Washington law does not provide "a list of factors or elements for the court to consider when determining whether a trade secret is 'readily ascertainable.'" *Zunum Aero., Inc. v. Boeing Co.*, No. C21-0896JLR, 2024 WL 1803118, at *3 (W.D. Wash. Apr. 22, 2024). Instead, the "key factor" "is the effort and expense that was expended into developing the information," and another relevant consideration is "[t]he potential for reverse engineering and independent development of the information are also relevant considerations." *Id.* (citing cases). As set forth further in Section B, below, RealD expended years of efforts and substantial financial expense to develop its trade secrets—the key factor relevant to determining "readily ascertainable." As to "reverse engineering" or "independent development"—Microsoft addresses neither.

Whether RealD's asserted trade secrets were "readily ascertainable" when Drs. Sommerlade and Neophytou took them and used them to build Microsoft's Eye Contact product is a question of fact. "**[T]he determination in a given case whether specific information is a trade secret is a factual question**." *Ed Nowogroski Ins., Inc. v. Rucker*, 137 Wn.2d 427, 436 (1999) (emphasis added); *Nix v. Boddy*, No. C18-992RSL, 2019 WL 6131289, at *3 (W.D. Wash. Nov. 19, 2019) (same); *Eagle Harbor Holdings, Inc. v. Ford Motor Co.*, No. C11-5503 BHS, 2015 WL 574911, at *4 (W.D. Wash. Feb. 11, 2015) (same); *Calence, LLC v. Dimension*

*Data Holdings*, No. C06-0262RSM, 2007 WL 1526349, at *3 (W.D. Wash. May 23, 2007) ("[W]hether a particular piece of information is a trade secret, is a question of fact for the jury. That reason alone is enough to deny summary judgment." (internal citation omitted)).

RealD's expert Dr. Saber repeatedly opined that RealD's trade secrets were not readily ascertainable, and instead, were the result of extensive experimentation [redacted]:[3]

- "A sophisticated and prudent company developing this type of technology, such as Microsoft, would have in my opinion and based on my experience [redacted] Mauri Decl. Ex. 23 at ¶ 48.
- "It is unlikely that Microsoft would have [redacted]

[3] RealD's extensive experimentation and investment is discussed in subsection B below.


MCNAUL EBEL PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-4151
(206) 467-1816

[redacted] Terwilliger Decl. Ex. 3 at ¶ 52.

- "Based on their knowledge of RealD's solution, Drs. Sommerlade and Neophytou immediately [redacted] *Id.* at ¶ 58.

Further, Mr. Wilk identified [redacted] files in Microsoft's source code that he opines were derived from RealD's source code, including where the [redacted] as to RealD's code. *See, e.g.*, *id.* Ex. 5 at ¶¶ 273, 314, 340.

In support of its arguments, Microsoft argues that [redacted] would have been known to the public. *See* Mot. at 16–20. But RealD has repeatedly confirmed that it is not claiming those things themselves as trade secrets—and instead, claims that the know-how and negative know-how necessary to select each of them out of the many options to put them into a compilation. To return to the Coca-Cola analogy,



MCNAUL EBEL PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-4151
(206) 467-1816

RealD is not claiming that a natural flavor itself—*i.e.* vanilla, spice—is a trade secret. Rather, the selection of vanilla as a flavor, as well as the selection of each spice, and the combination with all the other flavors and components is the trade secret. RealD's trade secrets and confidential information are the [redacted]

Microsoft devotes just 183 words to its argument that RealD's **compilation** is not a trade secret. Mot. at 20–21. Microsoft provides no authority, but cites three allegedly undisputed facts—all of which are disputed. First, Microsoft asserts that Dr. Saber admitted that it was known to use the same steps that RealD assert are its trade secrets. But, rather than admitting this, Dr. Saber expressly refuted Microsoft's argument by pointing out that [redacted] Terwilliger Decl. Ex.1 at 216. Microsoft tried again, asking Dr. Saber to confirm that [redacted] *Id.* at 217. Dr. Saber then explained how [redacted] *Id.* at 218.

Microsoft's next allegedly undisputed fact is similarly flawed. Mot. at 9. Dr. Saber testified that the exhibit being shown to him at pages 211–13 of his transcript [redacted] *Id.* at 210-211. The same for the exhibit shown to him at pages 214–216 of his transcript. *Id.* at 216 [redacted]. And yet again in Saber's transcript at pages 213–14, wherein he refuted Microsoft's attempts to overgeneralize, as shown by this exchange:

[redacted]



MCNAUL EBEL PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-4151
(206) 467-1816

[redacted]

*Id*. at 213–214 (emphasis added).

Finally, Microsoft asserts that it is undisputed that Skoltech's articles disclose RealD's trade secrets in the context of gaze correction (Mot. at 10)—except Dr. Saber's report disputes this, [redacted] (*Id*. Ex. 3 at ¶ 64), and he devoted over ten pages of his expert report explaining why.

RealD's trade secrets are related to gaze correction. The question of whether steps applicable to a different area of technology would be readily ascertainable for use with gaze correction is, at best, a genuine disputed question of fact. As explained by Dr. Saber: [redacted] Mauri Decl. Ex. 15 at 209:15–210:17.

Microsoft overgeneralizes **without support** that something known in another area of the computer vision field would therefore be readily ascertainable to use for gaze correction. RealD's expert has consistently and repeatedly refuted this. The circumstantial evidence also evidences that RealD's trade secrets were not readily ascertainable because if they were, Microsoft's would have been able to [redacted] Mauri Decl. Ex. 11 at MSFT_00010663 [redacted].

Courts routinely hold that the jury must make the ultimate determination as to whether the trade secret is readily ascertainable. *See Inteliclear, LLC v. ETC Glob. Holdings, Inc*., 978 F.3d 653, 661 (9th Cir. 2020) ("[V]iewing the facts in the light most favorable to InteliClear, a



McNAUL EBEL PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-4151
(206) 467-1816

reasonable jury could find that portions of the InteliClear System are not 'generally known' or 'readily ascertainable' to others."); *Modumetal, Inc. v. Xtalic Corp.*, 4 Wn. App. 2d 810, 829 (2018) (holding that expert testimony, along with evidence in the record on which the expert based their opinion, was "sufficient for a reasonable jury to infer without conjecture or speculation that misappropriation of a trade secret occurred" such that summary judgment was inappropriate).

*Ultimate Timing* is instructive and confirms that summary judgment is inappropriate. *Ultimate Timing* found that "[n]either party is entitled to summary judgment on the issue of the existence of a trade secret because there are material disputes about whether the [allegedly trade secret] timing system was readily ascertainable." *Ultimate Timing, L.L.C. v. Simms*, 715 F. Supp. 2d 1195, 1206 (W.D. Wash. 2010). The court explained that, on the one hand, Plaintiff pointed to evidence that at the time, "there was no other timing system" like the alleged trade secret, but on the other, "Defendants have submitted evidence that a number of elements that drive the value of the timing system were generally known or ascertainable." *Id.* Because of this dispute, "[a] trier of fact must therefore determine whether Kia's system possessed independent economic value and was not readily ascertainable." *Id.*

In *Nix v. Boddy*, the court denied summary judgment over defendant's argument that the claimed trade secret method contained only "minor, incremental changes to known drills and training techniques that were obvious or readily ascertainable." 2019 WL 6131289, at *3. In opposition, the plaintiff argued that his method was novel and required adjustments to previous drills and techniques. *Id.* This created a material issue of fact "because a reasonable jury could find that the method plaintiff taught was not readily ascertainable." *Id.* Similarly, in *Eagle Harbor Holdings*, the defendant sought summary judgment that the asserted trade secrets were in the public domain. *Eagle Harbor*, 2015 WL 574911, at *11. In opposition, the non-moving party, Ford, "submitted declarations attesting to the confidential nature of the disclosures and to the large investment Ford made to develop the information" and "declare[d] that, while the


MCNAUL EBEL PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-4151
(206) 467-1816

information itself may be in the public domain, the specific compilation that Ford created is not publically [sic] available." *Id.* at *4. As result, the court held that "[w]hile [moving party] Eagle Harbor disputes these contentions, those are matters that must be resolved by the fact finder and are not susceptible to resolution on summary judgment." *Id.*

The same is required here. RealD's expert opined that the specific compilation of know-how that RealD asserts is it trade secret is not publicly available and thus is not readily ascertainable, making summary judgment inappropriate. As the fact finder, **the jury** must be given the opportunity to weigh the disputed facts and expert opinions and make the determination whether it is credible that Microsoft [redacted]

Every argument in Section V of Microsoft's Motion is based on the same theme: that RealD's trade secrets were "generally known and readily ascertainable." Mot. at 16; *see, generally, id.* at 15–22. However, as explained above, there are numerous questions of genuine fact that prohibit summary judgment. Further, and as particularly relevant to Microsoft's burden to establish that summary judgment is warranted, none of the cases in Section V of the Motion assess the meaning of "readily ascertainable" under the Defend Trade Secrets Act of 2016—the statute that RealD alleges that Microsoft violated. **Every case and the one treatise cited in Section V of Microsoft's brief predates the enactment of the DTSA in 2016.** Each of these cases apply the law as it related to the Washington Uniform Trade Secrets Act as it was interpreted before the enactment of the DTSA. Even the most recent case cited—*Cosmopolitan Imports*—is an unpublished case with no precedential value from eight years prior to the DTSA being enacted. This is enough to deny summary judgment.



MCNAUL EBEL PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-4151
(206) 467-1816

The foregoing aside, Microsoft's cases still do not support summary judgment. Instead, *Boeing Co. v. Sierracin Corp*., 108 Wn. 2d 38, 49 (1987) confirms that summary judgment is inappropriate. *Boeing* involved a dispute over trade secrets related to the making of a 7/7/7 window used in airplanes. *Id*. at 50. Defendant argued that the trade secrets were readily ascertainable because "the tooling needed to produce 7/7/7 windows and the tooling the Air Force used to make KC 135 military planes were in some respects identical" and "[b]ecause the data and design of the windows could be to some extent ascertained from this 'common tooling'" the trade secrets were readily ascertainable. The Washington Supreme Court rejected that argument: "the common tooling did not contain **the complete and detailed specifications and tolerances necessary**." *Id*. (emphasis added). "[A] trade secrets plaintiff need not prove that every element of an information compilation is unavailable elsewhere," thus, there was no merit in defendant's argument. *Id*.

Microsoft's cases are also readily distinguishable—or worse, non-citable. In *Precision Moulding & Frame, Inc. v. Simpson Door Co*., 77 Wn. App. 20, 23 (1995), the alleged trade secret was readily ascertainable because it was not subject to any secrecy or confidentiality requirements and would have been shared with "anyone" who sought it. This is fully distinguishable from here, where Microsoft does not challenge RealD's measures to protect the secrecy of its trade secrets. *Cosmopolitan Imports, LLC v. Pac. Funds, LLC*, 145 Wn. App. 1047 (2008) (unpublished) is an unpublished two sentence decision that affirms a lower trial court decision; nonetheless, Microsoft cites it without disclosing that it is unpublished. This decision has no precedential value. *See* Wash. GR 14.1. Worse, as it is dated before March 1, 2013, Microsoft should not have cited it at all—and certainly not without identifying it as unpublished.[4] *See Hanson v. MGM Resorts, Int'l,* Case No. C16-1661-RAJ, 2017 WL 3085694,

---

[4] "Under Washington General Rule 14.1, an unpublished opinion of the Court of Appeals can be cited only if it was filed on or after March 1, 2013, and even then, it can be cited only for persuasive value and must be identified by the citing party as unpublished. [] While GR 14.1 is



MCNAUL EBEL PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-4151
(206) 467-1816

at *3 n.1 (W.D. Wash. July 20, 2017). To the extent that Microsoft intended to cite the opinion, it is similarly unpublished. *See Cosmopolitan Imps., LLC v. Pac. Funds, LLC*, No. 59896-1-I, 2008 WL 2791983 (Wn. App. July 21, 2008). Further, *Cosmopolitan* is inapposite. In *Cosmopolitan*, the alleged trade secret was a "business plan" to purchase "two parcels of land" on which sugar mills with equipment were situated and first sell the sugar mill equipment, then use the proceeds from the equipment sale to clean up the land and then sell it. *Id.* at *2–3. In rejecting the business plan as a trade secret, the court explained that "where another may duplicate the plan or derive something similar through proper means using the same public or **easily** ascertainable information, the plan is not a legally protectable trade secret." *Id.* at *3 (emphasis added). A "business plan" that consists of such easily-ascertainable steps as 1) purchase something and 2) sell for a profit is almost every business's business plan—not a trade secret. Nor is RealD's trade secret as simple and *de rigeour* as acquiring something and then selling for profit.

*Spokane Rsch. & Def. Fund v. City of Spokane*, 96 Wn. App. 568, 578 (1999) is not a trade secret misappropriation case, and instead, considered whether information in governmental records was subject to public disclosure under the Public Records Act. The court considered three items related to a commercial redevelopment of a shopping center: a lease, pro formas with lease terms and financial analysis, and credit studies used to facilitate the financing of the project. *Id.* at 570–71. The court first held that the lease itself was not a trade secret because it would be publicly disclosed in the event of a default. *Id.* at 579. As to the other two categories, the court held that they had been "produced for the City" "for public purposes," and thus was

---

not binding in federal court, the Court nevertheless follows GR 14.1 as a matter of comity." *Id.* (emphasis added) (internal citation omitted); *see also JAS Supply, Inc. v. Radiant Customs Servs., Inc.*, Case No. 2:21-cv-01015-TL, 2024 WL 2154422, at *2 (W.D. Wash. May 14, 2024) ("Pursuant to Washington GR 14.1, this case 'has no precedential value and [is] not binding on any court.'" (alteration in original)).


MCNAUL EBEL PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-4151
(206) 467-1816

"illogical" to claim that the information in the documents was a trade secret. Ultimately, in a consideration inapplicable here, the court explained that conflicts would be resolved in favor of disclosure under the Public Records Act. *Id.* at 579. *MicroStrategy Inc. v. Bus. Objects*, S.A., 331 F. Supp. 2d 396, 417 (E.D. Va. 2004) is an out of circuit case that considers neither the DTSA nor the WUTSA.

Finally, as to Microsoft's argument that a trade secret must be novel and not readily ascertainable—Microsoft misunderstands the law and fails to support what "novel" means. "Novelty" here is not the same "novelty" that applies to patents. *Kewanee Oil Co. v. Bicron Corp.*, 416 U.S. 470, 476 (1974); *see also Bladeroom Grp. Ltd. v. Facebook, Inc.*, No. 5:15-cv-01370-EJD, 2018 WL 514923, at *10 (N.D. Cal. Jan. 23, 2018) ("[C]ombination trade secrets are not tested under the same novelty rubric applied in patent infringement cases."). Nor must a trade secret be "unique." *Cal. Int'l Chem. Co. v. Sister H. Corp.*, NOS. 97-15233, 97-16858, 97-16997, 1999 WL 50891, at *1 (9th Cir. Jan. 19, 1999) (rejecting defendant's argument that the plaintiff's "pool treatment system" was generally known because it was not "unique.") Instead, "[t]o be a trade secret, information must be 'novel' in the sense that the information must not be readily ascertainable from another source." *Zunum Aero*., 2024 WL 1803118, at *4. Rather than a separate requirement, "novel" is synonymous with "not readily ascertainable" and, again, there are questions of material fact here and summary judgment is inappropriate.

**B. RealD's Evidence Establishes Independent Economic Value.**

Evidence establishes that RealD expended substantial effort and expense to develop its trade secrets. Information possesses independent economic value as a trade secret "when effort and expense were incurred to develop the information." *See Lyft, Inc. v. City of Seattle*, 190 Wn.2d 769, 782 (2018); *see also Ed Nowogroski Ins., Inc.*, 137 Wn.2d at 438 (1999); *Promedev, LLC v. Wilson*, No. C22-1063JLR, 2023 WL 2330377, at *11 (W.D. Wash. Mar. 2, 2023) (holding that an allegation that the alleged trade secret "has some independent economic value due to the time and expense incurred in creating it" was sufficient to state a plausible claim for


MCNAUL EBEL PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-4151
(206) 467-1816

misappropriation); *Cal. Int'l Chem. Co. v. Sister H. Corp.*, NOS. 97-15233, 97-16858, 97-16997, 1999 WL 50891, at *13 (9th Cir. Jan. 19, 1999) (unpublished) (economic value can be established by showing that that development of a trade secret "requires a substantial expenditure of time and money." (quoting *Courtesy Temp. Serv. v. Camacho*, 222 Cal. App. 3d 1278, 1282 (1990)). As explained by the Restatement (Third) of Unfair Competition:[5]

> The value of information claimed as a trade secret may be established by direct or circumstantial evidence. Direct evidence relating to the content of the secret and its impact on business operations is clearly relevant. **Circumstantial evidence of value is also relevant, including the amount of resources invested by the plaintiff in the production of the information, the precautions taken by the plaintiff to protect the secrecy of the information** . . . .

This Court recently confirmed that "testimony about substantial investments in trade secrets" and "the nature of these investments is helpful for the jury to determine a fact at issue, because in order to determine if the information allegedly stolen was trade secrets, Plaintiff must prove, among other elements, that the information derived independent economic value." *Silver Fern Chem., Inc. v. Lyons*, No. 2:23-cv-00775-TL, 2025 WL 3240448, at *6 (W.D. Wash. Nov. 20, 2025). In *Silver Fern*, this Court rejected an effort to exclude testimony from the plaintiff's Chief Executive Officer about the "very substantial investments" Silver Fern made in its alleged trade secret, even though he did not provide a "quantifiable number" or a specific dollar amount of that investment. *Id.* at *6.

The evidence here confirms RealD's substantial investment effort and expense to develop its trade secrets:

- "We invested [redacted] dollars in this technology and know-how and trade secret." Mauri Decl. Ex. 5 at 63:13–14; *see also* Terwilliger Decl. Ex. 37 at 68:15–17.

---

[5] "Although Washington has adopted the UTSA, courts look at the Restatement (Third) of Unfair Competition for guidance on trade secret." *Nat'l Football Scouting, Inc. v. Rang*, 912 F. Supp. 2d 985, 996 (W.D. Wash. 2012) (citing *Ed Nowogroski Ins., Inc.*, 137 Wn.2d at 442–43).


McNaul Ebel PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-4151
(206) 467-1816

- "Q. What is your understanding of the amount of costs that RealD had invested in the SocialEyes product as of this date? THE WITNESS: [redacted] Mauri Decl. Ex. 5 at 83–84.
- "Q. [redacted] Mauri Decl. Ex. 16 at 140–141.
- Q. So is there an overall dollar figure you can attach as an estimate to RealD's development of SocialEyes? A. . . . it was [redacted] dollars . . . ." *Id.* at 205:4–16.
- "As shown by, for example, . . . by the materials produced for inspection on RealD's Source Code Computer, [redacted], RealD invested heavily in developing its eye gaze correction software." Mauri Decl. Ex. 17 at 38:10–14.
- "Beginning no later than 2013 through at least October 2018, RealD invested

[6] Referring to an internal RealD document. Mauri Decl. Ex. 18 at RDSPARK_0122801.



McNaul Ebel PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-4151
(206) 467-1816

substantial amounts of time and resources to the technical development of its eye gaze correction technology. . . [providing several pages of elaboration on the investment].” *Id.* at 38-43.

In addition, RealD has ample evidence of the “precautions taken by the plaintiff to protect the secrecy of the information”—further evidence that trade secrets have independent economic value. *See* Restatement (Third) of Unfair Competition § 39. Microsoft does not address this and thus, it is conceded.

Microsoft asserts the factually and legally incorrect ground that RealD has “no evidence” that its trade secrets possess independent economic value. Mot. at 23. Microsoft ignores the applicable standard and instead creates its own, against which Microsoft argues that RealD fails to measure up by providing no “witness testimony,” no “interrogatory support” and no “expert testimony.” Microsoft argues that there is no economic value because [redacted] (Mot. at 24), no “analysis of revenues” (*id.* at 25), and [redacted] (*id.* at 26). Microsoft’s expert confirms that Microsoft seeks to apply the wrong standard, by opining (impermissibly) that RealD [redacted]. . . .” Mauri Decl. Ex. 19 at ¶¶ 18, 311–16. And at his deposition, Dr. Marks could not identify any other factors relevant to determining independent economic value. *Id.* Ex. 20 at 98–99.[7] This is not the standard.

None of the cited cases support Microsoft. *Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1012 (1984) contains no discussion of the factors to establish “independent economic value,” (and does not even contain the phrase)—unsurprisingly, because *Ruckelshaus* predates the enactment of the DTSA and does not analyze the WUTSA. *Genasys Inc. v. Vector Acoustics,*

---

[7] Dr. Mark’s application of the incorrect legal standard is addressed in Plaintiff’s Motion to Exclude Dr. Mark’s Opinions and Testimony. (*See* ECF No. 201 at 9–11).

*Ltd. Liab. Co.*, No. 22-CV-152 TWR (BLM), 2023 WL 4414222, at *18 (S.D. Cal. July 7, 2023) analyzes California law—and *denied* the defendant's motion to dismiss the plaintiff's trade secret claims. *Genasys* confirms that "[c]ircumstantial evidence of the resources invested in producing the information, the precautions taken to protect its secrecy, and the willingness of others to pay for its access all can sufficiently **meet the low standard to show trade secrets derive economic value**." (internal quotation omitted). *Gensys* also confirms that Microsoft's imagined standard of actual monetization is incorrect: "information can have independent economic value even if there is no actual product on the market utilizing the information" *Id.* (internal quotations omitted). *Synopsys, Inc. v. Risk Based Sec., Inc.*, 70 F.4th 759, 772 (4th Cir. 2023) is an out of circuit case wherein the plaintiff relied on the "value for the entire company" as a stand in for the value of the trade secrets—but RealD has not done that. Microsoft's remaining cases are similarly out of this district and easily distinguishable. *See Providence Title Co. v. Truly Title, Inc.*, 732 F. Supp. 3d 656, 664–66 (E.D. Tex. 2024) (unlike RealD's trade secrets, Providence's "compensation and branch-specific financial information are the types of generic business information kept by companies that, while often considered confidential, do not provide any independent economic value that is derived from being kept secret"); *Cisco Sys. v. Wilson Chung*, 462 F. Supp. 3d 1024, 1052 (N.D. Cal. 2020) (dismissing trade secret claims where the allegations of economic value "sa[id] nothing about the economic value **of the categories of information purportedly misappropriated**"); *Yield Dynamics, Inc. v. TEA Sys. Corp.*, 154 Cal. App. 4th 547, 565, 572 (2007) (finding insufficient evidence of independent economic value where there was no "sense of *how* useful the information is," and "in the absence of persuasive testimony from a qualified witness that the particular routines at issue were so distinctly advantageous to a competitor that their secrecy itself was economically valuable"); *Chung v. Intellectsoft Grp. Corp.*, No. 21-cv-03074-JST, 2024 WL 813445, at *8 (N.D. Cal. Feb. 12, 2024) (finding insufficient evidence of independent economic value where "Plaintiffs' evidence does not concern the cost of developing an alleged trade secret *itself*; rather, it shows

the cost of developing something that was intended to *use* the trade secret."). None of the cases cited by Defendant support the standard it attempts to create: that a trade secret can have independent economic value only if the plaintiff can establish that it has a dollar amount of value attributable to it. While that is *one* factor the jury may consider, it is not the only one. *See* Wash. Pattern Jury Instruction 351.05 (providing that, in determining whether the information has "independent economic value," the jury may consider "among other factors, . . . the amount of effort or money that the plaintiff expended in developing the information" and "the ease or difficulty of acquiring or duplicating the information by proper means."). RealD has substantial, credible evidence for the jury to consider regarding the amount of money and effort that it used to develop this information.

As to Microsoft's argument that RealD's experts did not provide an analysis of "competitive advantage" or of the "market value"—and thus, "RealD gained no economic advantage" because [redacted]—this argument fails for at least two reasons. Mot. at 25, 26. First, Microsoft's argument is again based on the erroneous standard that licensing and monetization are requisites to establish independent economic value. Second, Microsoft's argument is based on the erroneous belief that RealD was required to have its expert opine as to the legal conclusion that RealD's trade secrets have independent economic value—an argument that Microsoft fails to support. This is likely because expert testimony is not required to establish independent economic value. *See, e.g.*, *Workplace Techs. Research, Inc. v. Project Mgmt. Inst., Inc.*, No. 18cv1927 JM (MSB), 2021 WL 4895977, at *23 (S.D. Cal. Oct. 20, 2021) ("The court is not persuaded there are no triable issues . . . WTRI cites no legal authority that PMI is *required* to provide expert opinion on the quantifiable value of its trade secrets. Instead, '[t]he value of information claimed as a trade secret may be established by direct or circumstantial evidence.'") (quoting *Altavion, Inc. v. Konica Minolta Sys. Lab., Inc.*, 226 Cal. App. 4th 26, 62 (2014)); *see also Spring Design, Inc. v. Barnesandnoble.com, LLC*, No. C 09-05185 JW, 2010 WL 5422556, at *6 (N.D. Cal. Dec. 27, 2010) (finding issues of fact where


MCNAUL EBEL PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-4151
(206) 467-1816

"Plaintiff submit[ted] evidence to show that its trade secrets have independent economic value" but where plaintiff's expert "assigned no value to any specific portion of Plaintiff's trade secret" and denying summary judgment).

Finally, Microsoft ignores what is perhaps the strongest confirmation that RealD's trade secrets have independent economic value: Microsoft's admissions and actions. Microsoft's expert opined that [redacted] Mauri Decl. Ex. 21 at ¶ 11. While RealD disagrees with that amount, the point is that Microsoft's own expert put a [redacted] value on the asserted trade secrets. Microsoft cannot, on one hand, admit that the trade secrets have [redacted] value, but then on the other claim that there is no genuine issue of material fact that the trade secrets have no independent economic value. Microsoft's behavior further confirms economic value. Microsoft spent three years negotiating with RealD for a license to use RealD's technology that exists only because of, and necessarily incorporates, RealD's trade secrets and only ended those negotiations after RealD's former employees had started working for Microsoft and wrongfully began utilizing RealD's trade secrets to develop Eye Contact.

RealD has evidence that its asserted trade secrets have economic value, and summary judgment is inappropriate.

**C. RealD Was Damaged as A Result of Microsoft's Breach of the NDA.**

Via the NDA, Microsoft and RealD agreed: "We will **use** and disclose the other's confidential information only for purposes of our business relationship with each other." Terwilliger Decl. Ex. 53 (emphasis added). RealD alleges that Microsoft breached the NDA by "**using** or disclosing RealD's confidential information . . . ." ECF No.1 at ¶ 34, 36 (emphasis added). Rather than address the allegation of **use**, Microsoft omits it and instead argues that RealD has not proven the quantifiable amount of damages based on Microsoft "<u>disclos[ing]</u> [RealD's] confidential information to third parties.'" Mot. at 28. This argument is fatally flawed on at least three grounds. First, Microsoft premises its argument on the inaccurate assertion that



MCNAUL EBEL PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-4151
(206) 467-1816

RealD must quantify damages based on **disclosure** to third parties. Second, RealD presented evidence of the fact of damages. Third, Microsoft impermissibly conflates the fact of damages with the quantifiable measure of damages.

**1. RealD Alleges Breach Arising from "Use" Not Only "Disclosure."**

RealD alleges that Microsoft beached the NDA by **use** of RealD's confidential information, but Microsoft does not seek summary judgment based on use. Instead, Microsoft's argument is that there is no evidence of "economic loss as a result of Microsoft 'disclos[ing] [its] confidential information to third parties.'" Mot. at 28 (emphasis added). Microsoft's failure to address RealD's allegations of breach based on "use" are fatal.

**2. RealD Presented Evidence of the Fact of Damage.**

Even if the Court ignored the failure addressed above and considers an argument that Microsoft did not make, RealD still presents evidence of the fact of damage. The third element[8] to establish breach of contract is that "the breach proximately causes damage to the claimant." *P.E.L. v. Premera Blue Cross*, 2. Wn.3d 460, 481 (2023) (quoting *Nw. Indep. Forest Mfrs. v. Dep't of Lab. & Indus.*, 78 Wn. App. 707, 712 (1995)).[9] The **fact** of damages—that the breach proximately caused damage—is different from the quantifiable **amount** of damages. *Dunseath v. Hallauer*, 41 Wn.2d 895, 902 (1953) ("The difficulty of ascertainment of the amount of damage is not to be confused with the right of recovery."); *Transpac Dev., Inc. v. Young Suk Oh*,

[8] Microsoft does not address the other elements of breach of contract, and thus, those are not addressed herein.

[9] Microsoft relies on *Myers v. State*, 152 Wn. App. 823, 827–28 (2009), but that case contains no analysis of how a plaintiff may establish "economic loss," nor does it hold that a plaintiff must prove up its quantifiable damages in order to meet the "economic loss" element of breach of contract. Further, *Myers* recitation of "economic loss" as a required element of breach of contract is dubious. *Myers* cites to *Nw. Indep. Forest Mfrs. v. Dep't of Labor & Indus.*, 78 Wn. App. 707, 712 (1995) as the source for the "economic loss" element, but *Nw. Indep. Forest.* does not state that "economic loss" is required, and rather, only "damage" is required. *Id.*


MCNAUL EBEL PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-4151
(206) 467-1816

132 Wn. App. 212, 221 (2006) ("[A] party who has established the fact of damage will not be denied recovery on the basis that the amount of damage cannot be exactly ascertained."); *Eagle Point Condo. Owners Ass'n v. Coy*, 102 Wn. App. 697, 703 (2000) (same); *see, e.g.*, *C 1031 Props., Inc. v. First Am. Title Ins. Co.*, 175 Wn. App. 27, 34 (2013) ("[O]nce it is reasonably certain that the breach caused damages, the fact finder may determine the amount of the damage award by drawing reasonable inferences from reasonably convincing evidence.").

Most discovery in this case was dedicated to establishing that Microsoft used RealD's confidential trade secret information and the harm resulting therefrom. There are many hours of deposition testimony, extensive discovery responses, and multiple expert reports addressing Microsoft's use. *See, e.g.*, Terwilliger Decl. Ex. 5 at ¶ 258.[10] And, that RealD was damaged by Microsoft's use—RealD's damages expert's report is dedicated to establishing the damages caused by Microsoft's wrongful use of RealD's trade secret and confidential information. *See, e.g.*, Mauri Decl. Ex. 22 at ¶ 60 (stating that he assessed [redacted]; *id.* at ¶136. Microsoft's Motion confirms that RealD [redacted] Mot. at 29 (emphasis added). Further, Microsoft agreed in the terms of the NDA that "economic damages may not be sufficient compensation for a breach of this agreement"—an admission that a breach of the NDA would cause damage to RealD. At worst—a result RealD does not concede is appropriate—RealD would be entitled to nominal monetary damages. *Ford v. Trendwest Resorts, Inc.*, 146 Wn.2d 146, 158 (2002) (holding that the defendant breached its contract with plaintiff, despite plaintiff's inability to establish actual damages, and remanding for an award of nominal damages). RealD has presented evidence of the fact of damage.

---

[10] This confirms that Microsoft's Motion is based on the inaccurate "disclosure" claim, because it is inaccurate that "there has never been an articulated theory of breach" related to use and that "none of RealD's experts presented evidence of breach of the NDA." Mot. at 28.


MCNAUL EBEL PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-4151
(206) 467-1816

**3. Microsoft Conflates the Fact of Damage with The Measure of Damage, the Latter being a Question of Fact.**

Rather than challenging the fact of damage, Microsoft instead argues that RealD's expert report lacks a "viable damages theory." Mot. at 4; *see also id.* at 28 ("RealD Failed to Quantify Damages . . . "); *id.* at 28 ("[RealD's] damages expert had a full and fair opportunity to . . . quantify the resulting damages . . . ."); *id.* at 30 ("The first measure of damages that Mr. Lindsay utilized to quantify damages . . . ."). Setting aside RealD's belief in the viability of those theories, Microsoft's criticisms of damages theories asserted in an expert report are not enough to support summary judgment.

Fundamentally, RealD is not required to use an expert to establish its damages and has the right to present its damages calculations to the jury without expert testimony. The use of percipient party testimony to establish the amount of damages is routinely done in contract cases where parties best understand the contract expectations and losses. To avoid this, Microsoft misstates the record by stating that [redacted] Mot. at 29. But the statement by Mr. Lindsay that Microsoft quotes as his confirmation that [redacted] is actually this exchange: Q: [redacted] *Compare* Mot. at 29 *to* Terwilliger Decl. Ex. 52 at 147. Again, the measure of damages is not an element of breach of contract. Microsoft's other citations also contain no statements by Mr. Lindsay that **RealD** has not [redacted] and instead that **Mr. Lindsay** [redacted] (*id.* at 146-147) and [redacted] for breach of contract and trade secret misappropriation (*id.* at 145–146). And, as this Court knows, there would be no legal impediment to the jury awarding the same amount of damages for trade secret misappropriation as for breach of contract—RealD would just be barred from collecting



MCNAUL EBEL PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-4151
(206) 467-1816

those damages twice. *Silver Fern v. Lyons*, Case No. 23-cv-00775-TL, ECF No. 316 (Special Verdict Form) (finding "No Difference" in the amount of damages attributable to plaintiff's trade secret and breach of contract claims); ECF No. 320 (entering judgment on those damages).

Even if Mr. Lindsay's theories are flawed, which RealD disputes, it is well established that the ultimate measure of damages are "**questions of fact** left for the jury to decide unless reasonable minds could not differ." *C 1031 Props., Inc.*, 175 Wn. App. at 34; *Columbia Park Golf Course, Inc. v. City of Kennewick*, 160 Wn. App. 66, 87 (2001) ("The constitution consigns to the jury the ultimate power to weigh the evidence and determine the facts, and the amount of damages in a particular case is an ultimate fact."); *Jacob's Meadow Owners Ass'n v. Plateau 44 II, LLC,* 139 Wn. App. 743, 760 (2007) ("A party has a constitutional right to a jury determination of the amount of damages to which the plaintiff is entitled.").

Not only does Microsoft fail to meet its burden to show the absence of a genuine material fact, RealD presents evidence establishing the existence of the fact of damages, and summary judgment is inappropriate.

## CONCLUSION

For the foregoing reasons, RealD requests that the Court deny Microsoft's Motion.

* * *

I certify that this memorandum contains 10,385 words, in compliance with the Local Civil Rules.

Dated: April 29, 2026

McNAUL EBEL PLLC

*s/ Kaleigh N. Boyd*
Kaleigh N. Boyd, WSBA No. 52684
600 University Street, Suite 2700
Seattle, Washington 98101
Phone: (206) 467-181
Fax: (206) 624-5128
kboyd@mcnaul.com

ONE LLP

Jennifer A. Mauri (admitted *Pro Hac Vice*)
Nathaniel L. Dilger (admitted *Pro Hac Vice*)
Taylor C. Foss (admitted *Pro Hac Vice*)
23 Corporate Plaza, Suite 150-105
Newport Beach, CA 92660
Phone: (949) 502-2870
ndilger@onellp.com
tfoss@onellp.com

*Attorneys for Plaintiff RealD Spark, LLC*